```
 1  SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF KINGS:  CRIMINAL TERM:  PART 2
 2  -------------------------------------------X
    THE PEOPLE OF THE STATE OF NEW YORK,
 3                                      Indictment No.:
              -against-                 6615/2012
 4                                      (Trial)
    ATARA WISDOM,
 5
                    Defendant.
 6  -------------------------------------------X

 7
                         Supreme Courthouse
 8                       320 Jay Street
                         Brooklyn, New York 11201
 9                       June 26, 2014

10
    B E F O R E:
11
                 THE HONORABLE ALBERT TOMEI, JUSTICE
12

13  A P P E A R A N C E S:

14           HON. KENNETH P. THOMPSON, ESQ.
                  District Attorney - Kings County
15                350 Jay Street
                  Brooklyn, New York  11201
16           BY:  PHYLLIS CHU, ESQ.
                  Assistant District Attorney
17

18           DAVID WALENSKY, ESQ.
                  Attorney for Defendant
19                910 Stuart Avenue
                  Mamaroneck, New York
20           BY:  DAVID WALENSKY, ESQ.
                       - and -
21                JOSHUA POVILL, ESQ.

22

23

24                       MARLIN CASSIDY
25                       Senior Court Reporter
```

Voir Dire

1              (Whereupon, the following took place in open

2        court:)

3              THE CLERK:  Your Honor, this is calendar

4        number one, case on trial, Indictment 6615 of 2012,

5        People versus Atara Wisdom.  Defendant is incarcerated,

6        produced before the Court, present with attorney.

7              Appearances are the same.

8              THE COURT:  All right, bring in the jury.

9              MR. POVILL:  Your Honor, is it okay if I

10       approach the water?

11             THE COURT:  Yes,

12              (Whereupon, there was a brief pause in the

13       proceedings.)

14             COURT OFFICER:  Panel entering.

15             (Whereupon, the panel of prospective jurors

16       entered the courtroom.)

17             THE COURT:  All the way down.  Move all the

18       way down, sir, all the way down.

19             THE CLERK:  All rise, please, and raise your

20       right hand.

21             Do you and each of you sincerely and solemnly

22       swear or affirm that you will answer truthfully all

23       questions asked of you relating to your qualifications

24       to serve as jurors in this action?

25             What is your response?

mc

Voir Dire

1          (Whereupon, the prospective jurors responded.)

2          THE CLERK:  Please be seated.

3          THE COURT:  Good morning, ladies and

4   gentlemen.  I want to welcome you to Part 2 of the State

5   Supreme Court, the Criminal Term.  I am Supreme Court

6   Justice Albert Tomei and I will be presiding over the

7   case of the People of the State of New York against Ms.

8   Atara Wisdom.

9          Ms. Wisdom has been charged in an indictment

10  with the crime of murder in the second degree, which

11  allegedly occurred on or between November 29th, 2011 and

12  January 3rd, 2012 inside of 832 Bushwick Avenue in the

13  Bushwick section of Brooklyn.

14          I would say now that that charge is merely an

15  allegation, an accusation.  It is evidence of nothing.

16  A little later on I will explain to you exactly what an

17  indictment is.

18          But before we proceed, what I would like to do

19  is introduce you to the principal parties involved in

20  this matter.

21          First of all, I'd like to introduce you to the

22  defendant, Ms. Atara Wisdom.  Would you please stand,

23  turn around and introduce yourself.

24          THE DEFENDANT:  Hi everyone.

25          THE COURT:  She's represented by her

Voir Dire

1    attorneys, Mr. Joshua Povill and Mr. David Walensky.

2              MR. WALENSKY:  Good morning, ladies and

3    gentlemen.

4              THE COURT:  And representing the District

5    Attorney of Kings County is Ms. Phyllis Chu, Assistant

6    District Attorney.

7              MS. CHU:  Good morning, ladies and gentlemen.

8    Good morning.

9              THE COURT:  This process that we're going to

10   engage in is called the voir dire, it's the jury

11   selection process, and it has a French name, voir dire,

12   which means to see them say.  So, basically, what I'm

13   going to do, and the attorneys are going to do, is ask

14   you various questions regarding your background,

15   backgrounds, and your ability to be fair and impartial

16   in this matter.

17             A lot of these questions are very personal in

18   nature.  You should not be offended if we do ask these

19   questions because we're not asking them for a frivolous

20   reason.  It's very important that those who sit as

21   jurors be free of any biases or prejudices and make

22   their decision solely on the evidence or lack of

23   evidence.

24             So, if you do not wish to reveal your answer

25   to a particular question, or if you have something that

mc

Voir Dire

1    you feel should not be made public, just let the Court

2    know and you will be able to make your statement at the

3    bench in the presence of the attorneys and myself.

4           The first part of the selection process, with

5    respect to the first part of the selection process, I'm

6    going to make a general inquiry of you jurors, which

7    means that I'm going to ask you not to respond to my

8    questions or statements unless I ask you to do so.

9    Okay.

10          I will tell you now that, first of all, I'd

11   like to thank all of you for responding to jury service.

12   Serving on a jury is, I believe, one of the hallmarks of

13   citizenship and it's probably one of the most important

14   civic activities that one can participate in and it's

15   also a service which is highly prized in this country,

16   and outside of military service it's probably the

17   highest service that one can contribute to one's

18   country.

19          I don't suffer excuses very easily or very

20   gladly.  If you have a legitimate reason why you cannot

21   sit, then you will return to the Central Jury Room and

22   become part of another panel.

23          I also will tell you that this process is very

24   repetitious, it's extremely boring, but nevertheless

25   it's probably one of the most important aspects of the

Voir Dire

1    whole trial procedure, so you have to listen very

2    carefully to all of these questions that are being asked

3    of the various jurors.

4           Also, we have a limited amount of time in

5    which to speak to you ladies and gentlemen, so if there

6    is something -- and of course you know yourselves better

7    than we do -- so if there is something that would

8    prevent you from sitting in this matter and we haven't

9    touched on it, please let us know because once you are

10   selected, it will be very difficult for the Court to

11   proceed under those circumstances and I will not be a

12   very happy camper.  Okay?

13          Also, be aware that I know -- I've been

14   doing this for close to thirty-six years, I've been a

15   Judge, so I know every excuse known to man or woman,

16   okay, except the one that you may give me today.  So,

17   please, if you think you're going to scoot out of here

18   because it's inconvenient, that's not going to happen,

19   okay.

20          I don't expect you to do so but I am just

21   telling you, if it's legitimate, you will be excused; if

22   not, you are going to remain.

23          I know you're all here at a great sacrifice

24   because you only get what is it, $40 a day now,

25   something like that.  At one time people used to get

mc

Voir Dire

1    only $12 a day.  But nevertheless, that's still not a

2    substantial amount of money for your service.

3              So what I am going to do is --

4              Oh, what I am going to do right now --

5              By the way, how many of you have actually

6    served on a jury before, criminal jury?

7              About -- a few of you, okay.  So most of

8    you --

9              Do any of you ladies and gentlemen know any of

10   the parties -- I asked them to introduce themselves to

11   you -- or anyone else in the courtroom?

12             I see no hands, all right.

13             So this general inquiry will be limited to

14   questions that I will put to you.  If I ask for a

15   response, give me one but otherwise don't.

16             All right.

17             Once I have concluded my general inquiry, then

18   if you wish to make a statement, you may raise your

19   hand.

20             First of all, I'd like to know if any of you

21   ladies and gentlemen have any physical disabilities or

22   maladies that would prevent you from sitting for a

23   period of up to an hour, an hour and fifteen minutes.

24   If after ten minutes you need a break, it's reasonable,

25   we'll take a break.

mc

Voir Dire

1          I would also like to know if any of you ladies

2     and gentlemen are taking any medication or drugs that

3     would prevent you from listening or cause you to be

4     upset and distract you from the proceedings themselves.

5          And I will be perfectly honest, ladies and

6     gentlemen, unless you're in horrible physical condition,

7     I'm not going to excuse you.  All right?

8          I would also like to know if any of you ladies

9     and gentlemen have any difficulty hearing or seeing or

10    communicating in the English language or understanding

11    the English language.  In order to be a juror you need

12    not have any particular education.  Basically what you

13    need is just your common sense and your lifetime of

14    experience.  So, if you're eighteen years or older and

15    you have common sense, you have no other issues, you

16    would probably be able to sit on this jury.

17          Are there any --

18          Are there any individuals here in this group

19    right now of potential jurors who do not understand the

20    English language or have or has difficulty communicating

21    or understanding the English language?

22          Just raise your hand if you do.

23          Ma'am, stand, give your name.

24          PROSPECTIVE JUROR:  My name is Irina Slobod.

25          THE CLERK:  Last name?

mc

Voir Dire

```
1              PROSPECTIVE JUROR:  Slobod.

2              THE CLERK:  Spell it.

3              PROSPECTIVE JUROR:  S-L-O-B-O-D.

4              THE COURT:  Slobod?

5              PROSPECTIVE JUROR:  Yes.

6              THE COURT:  You have a problem understanding

7       the language?

8              PROSPECTIVE JUROR:  Maybe some terminologies.

9              THE COURT:  How long have you been in the

10      country?

11             PROSPECTIVE JUROR:  It's a long time.

12             THE COURT:  Where are you from?

13             PROSPECTIVE JUROR:  From Ukraine.

14             THE COURT:  You will be able to sit,

15      understand?

16             Are there any students in the audience who are

17      now attending school?

18             Yes, ma'am?

19             Stand, give me your name.

20             PROSPECTIVE JUROR:  Isabell.

21             THE COURT:  I'm sorry?

22             PROSPECTIVE JUROR:  Isabell.

23             THE COURT:  That is your last name?

24             PROSPECTIVE JUROR:  My first name.  My first

25      name.
```

Voir Dire

1           THE COURT:  What is your last name, ma'am?

2           PROSPECTIVE JUROR:  Isbell.

3           THE COURT:  Isbell?

4           PROSPECTIVE JUROR:  I-S-B-E-L-L.

5           THE COURT:  Oh, Isbell, I'm sorry.

6           What school do you attend?

7           PROSPECTIVE JUROR:  Queens Transition Center.

8           THE COURT:  When do you go to school?

9           PROSPECTIVE JUROR:  Every day.

10          THE COURT:  Every day?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  What kind of school is it?

13          PROSPECTIVE JUROR:  It's a high school.

14          THE COURT:  You are going to high school now?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Okay.  All right.

17          So it's summer school that you are going to,

18   is that what it is?

19          Why are you going in the summer to school?

20          PROSPECTIVE JUROR:  Because I need it.

21          THE COURT:  Huh?

22          PROSPECTIVE JUROR:  Because I need it.

23          THE COURT:  Okay.

24          So you will be excused.  You go downstairs to

25   the second floor.

Voir Dire

1                THE CLERK:  Back to the second floor, Central

2     Jury.

3                Who else raised their hand?

4                Yes, ma'am?

5                Your name?

6                PROSPECTIVE JUROR:  Samantha Walker.

7                THE COURT:  Yes, Ms. Walker?

8                PROSPECTIVE JUROR:  I am no in the summer

9     classes, but I do, like, go to school.

10                THE COURT:  Are you in school right now?

11                PROSPECTIVE JUROR:  Not in summer.

12                THE COURT:  Sit down.

13                Somebody on my left raised their hand.

14                Now, I would also like to know if any of you

15     ladies and gentlemen have any religious, moral or

16     ethical reasons why you cannot sit in judgment of Ms.

17     Wisdom.

18                I would also like to know if any of you were

19     called to jury service between the dates of June --

20     today is the 26th -- June 26th, 2012 and June 26th of

21     this year.

22                If you were called to serve either in the

23     state or federal court systems, be it the Federal

24     District Court or the state Supreme Court or you were

25     called to sit in the state or city courts or you were

Voir Dire

 1   called to serve either in the federal -- on a federal

 2   Grand Jury or a state Grand Jury, let me know.

 3              You didn't have to -- actually, with respect

 4   to jury service, a petit jury is a jury of twelve and a

 5   number of alternates.

 6              It doesn't mean that you had to actually

 7   deliberate on a case, just that you were called to

 8   serve.

 9              All right.

10              I would like to also inform you, ladies and

11   gentlemen, that this trial should be completed in a

12   rather short period of time.  It's not a very

13   extensive matter.  We won't be meeting tomorrow, we

14   will meet on Monday, Tuesday and Wednesday, you will be

15   off for Thursday and Friday, and then we will return on

16   the...

17              MR. WALENSKY:  The 8th.

18              THE COURT:  The 8th, Tuesday the 8th, if it

19   goes that far.

20              Also, I will tell you that once this case goes

21   to the jury and the jury -- if the jury is unable to

22   reach a verdict, then the jury will be excused, you will

23   be allowed to go home and then return the next day.  In

24   the past what we used to do, if jurors could not reach a

25   verdict on a particular date, on that particular date,

mc

Voir Dire

1   we would sequester them in a hotel.  We don't do that

2   any longer.

3           All right.

4           So, I'm going to --

5           Oh, I don't think I told you this, but maybe I

6   did, I'll indicate it again, as to where this allegedly

7   occurred.  The allegation here is that the defendant

8   stabbed to death the victim in this matter and it

9   occurred allegedly inside of 832 Bushwick Avenue in the

10  Bushwick section of Brooklyn.

11          All right.

12          So now if you have a question of the Court

13  regarding what I've said or something that is not known

14  to the Court or the attorneys, let me know, regarding

15  service.

16          I am going to start from my right.

17          Yes, ma'am?

18          PROSPECTIVE JUROR:  Sir, your Honor.

19          THE COURT:  Stand up, give your name.

20          PROSPECTIVE JUROR:  Tara.

21          THE CLERK:  Last name?

22          PROSPECTIVE JUROR:  Young.

23          My husband is scheduled for surgery on

24  Tuesday, July 1st, and we don't have anyone else to look

25  after our children so it would be a hardship for me to

Voir Dire

1      serve on that particular day.

2              THE COURT:  What kind of surgery?

3              PROSPECTIVE JUROR:  Foot surgery, your Honor.

4              THE COURT:  All right.

5              July 1st is what?

6              PROSPECTIVE JUROR:  It's Monday -- it's a

7      Tuesday.

8              THE COURT:  Oh, Tuesday.

9              All right, you are excused.  Go down to the

10     second floor.

11             Thank you.

12             THE CLERK:  Tara is your first name?

13             PROSPECTIVE JUROR:  Yes, sir.

14             THE COURT:  Yes, ma'am?

15             PROSPECTIVE JUROR:  My name Anita McCray

16     (phonetic).

17             THE COURT:  Yes?

18             PROSPECTIVE JUROR:  I'm a radical.

19             THE COURT:  Okay.

20             PROSPECTIVE JUROR:  I don't have a lot of

21     respect for the court or the officers.

22             THE COURT:  Okay.  Sit down.

23             Yes, ma'am?

24             Stand up.

25             PROSPECTIVE JUROR:  My name is Patricia Vega

mc

Voir Dire

1          (phonetic).

2                    I think I heard you say I can come to the

3          bench so I need --

4                    THE COURT:  You can.

5                    PROSPECTIVE JUROR:  May I come up?

6                    THE COURT:  Yes, come up with the attorneys,

7          please.

8                    (Whereupon, the following took place at

9          sidebar:)

10                   PROSPECTIVE JUROR:  Yes.  My son, my

11         three-year-old son, was stabbed June 11th of 2000 -- of

12         1982.  To sit here just --

13                   THE COURT:  He was stabbed?

14                   PROSPECTIVE JUROR:  Yes.

15                   THE COURT:  No talking, please.

16                   PROSPECTIVE JUROR:  He was three.  In the

17         Bronx.

18                   THE COURT:  Was the person who did it

19         apprehended?

20                   PROSPECTIVE JUROR:  Yes, last I heard.

21                   THE COURT:  So it would be too upsetting for

22         you to sit?

23                   PROSPECTIVE JUROR:  Yes.

24                   THE COURT:  You are excused.

25                   (Whereupon, the following took place in open

Voir Dire

1    court:)

2              THE COURT:  Yes?

3              THE CLERK:  Your first name is Patricia?

4              PROSPECTIVE JUROR:  Yes.

5              THE CLERK:  Thank you.

6              PROSPECTIVE JUROR:  My name is Harris Edelman.

7              In contrast to my seat neighbor, I have

8    tremendous respect for the court system.  I am a small

9    business owner.  I am not too big to fail.  I am just

10   the right size to fail.  We survived the recession, or

11   just literally come out of the hole.

12             THE COURT:  What kind of business?

13             PROSPECTIVE JUROR:  Refurbish computers.  It's

14   a small business, you know, fifteen people that work

15   there full-time and we are in Sunset Park, Brooklyn.

16   You can come check us out.  But as a business owner we

17   don't have a staff of other responsible parties, for

18   lack of a better word.  I am not saying that I am

19   incapable, in fact I would love to be in the position to

20   be able to perform this civic duty.

21             I also employ fifteen people in Sunset Park,

22   Brooklyn.  I can't really keep both things going at the

23   same time.

24             THE COURT:  You can.

25             Sit down.

Voir Dire

1            PROSPECTIVE JUROR:  Okay.

2            THE COURT:  Thank you.

3            Yes?

4            Stand up.

5            PROSPECTIVE JUROR:  My name is Jawad

6     (phonetic) Ahmed.

7            I have two concerns.  First one, our holy day

8     of fasting begins on Sunday.  And the second concern

9     was, in my workplace I don't have any backups for my

10    work.

11           THE COURT:  What do you do?

12           PROSPECTIVE JUROR:  I'm a dietician.

13           THE COURT:  Sit down.  Sit down.

14           Yes?

15           Stand.

16           PROSPECTIVE JUROR:  My name is Edward Smith.

17           You said if we have a private matter come to

18    the bench.

19           THE COURT:  You want to come to the bench?

20           Come on up.

21           (Whereupon, the following took place at

22    sidebar:)

23           THE CLERK:  What is your name?

24           PROSPECTIVE JUROR:  Edward Smith.

25           THE CLERK:  Thank you.

Voir Dire

1              THE COURT:  Quiet, please.

2              Ma'am, no talking, please.

3              Say it again.

4              PROSPECTIVE JUROR:  I have a parent convicted

5     for murder years ago.  It's coming back.

6              THE COURT:  You are excused.

7              THE CLERK:  Second floor, Central Jury.

8              (Whereupon, the following took place in open

9     court:)

10             THE COURT:  Yes, ma'am?

11             Stand and give your name.

12             No, stand and give your name.

13             PROSPECTIVE JUROR:  My last name is Didino,

14    D-I-D-I-N-O.

15             THE COURT:  What is your problem?

16             PROSPECTIVE JUROR:  I am also a small business

17    owner and I'm in the process of opening a second

18    business that's scheduled to launch in two weeks.

19             THE COURT:  Sit down, ma'am.  Sit down.

20             Okay.

21             Yes?

22             PROSPECTIVE JUROR:  My name is Justin

23    Branstein (phonetic).  I need to provide child care to

24    my kids tomorrow and Monday.  My wife is out of town on

25    business.  The kids are in school for the summer.

Voir Dire

1           THE COURT:  So provide child care.

2           Sit down.

3           PROSPECTIVE JUROR:  I don't have another

4      option.

5           THE COURT:  Sit down, please.

6           Next?

7           Next?  Anybody?

8           Yes?

9           Stand up.

10          PROSPECTIVE JUROR:  Colleen Saul (phonetic).

11          THE CLERK:  Last name?

12          PROSPECTIVE JUROR:  Saul.

13          I had made previous travel plans and I won't

14     be in the state.  I'm leaving Sunday night and not back

15     until Wednesday.

16          THE COURT:  You are going out of town?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  And you have tickets?

19          PROSPECTIVE JUROR:  Yeah.

20          THE COURT:  Where are you going?

21          PROSPECTIVE JUROR:  Pittsburgh.

22          THE COURT:  Do you have the tickets with you

23     or...

24          PROSPECTIVE JUROR:  I mean, it's on my phone.

25          THE COURT:  All right, then you are excused.

Voir Dire

1    Go downstairs.

2              PROSPECTIVE JUROR:  Would you like to see it?

3              THE CLERK:  Second floor, Central Jury Room.

4              THE COURT:  Yes.

5              PROSPECTIVE JUROR:  Lorraine Joseph.

6              I will be starting back my third semester at

7    DeVry University in another week-and-a-half.

8              THE COURT:  It's all right.  You got time.

9    This case will be finished before that.

10             Yes?

11             PROSPECTIVE JUROR:  Shanice (phonetic) Hunter.

12             Monday at eleven o'clock I have an appointment

13   because I have to have iron I.V.

14             THE COURT:  You have to what?

15             PROSPECTIVE JUROR:  Iron I.V.

16             THE COURT:  Sit down, ma'am.

17             You can always reschedule that.

18             Who else?

19             Yes, ma'am?

20             PROSPECTIVE JUROR:  Hi.

21             My name is Sarah (phonetic) Shaffee.

22             THE CLERK:  Last name?

23             PROSPECTIVE JUROR:  Shaffee.

24             THE CLERK:  Spell it.

25             PROSPECTIVE JUROR:  S-H-A-F-F-E-E.

Voir Dire

1              THE COURT:  Yes, ma'am?

2              PROSPECTIVE JUROR:  Yeah.  My fasting starts

3       on Saturday.

4              THE COURT:  Your what?

5              PROSPECTIVE JUROR:  It's fasting, very, very

6       early in the morning and late night also and --

7              THE COURT:  We don't meet on Saturday.

8              PROSPECTIVE JUROR:  Pardon?

9              THE COURT:  We don't meet on Saturday.  We

10      only meet --

11             PROSPECTIVE JUROR:  It's for the whole month,

12      it's not just --

13             THE COURT:  I can't excuse you, ma'am.  Sit

14      down.

15             PROSPECTIVE JUROR:  Pardon me?

16             THE COURT:  I am not going to excuse you.  Sit

17      down.  You are going to be fasting, you are going to be

18      fasting here, you are going to be fasting at home.

19             PROSPECTIVE JUROR:  Yeah, but we get up early

20      in the morning.

21             THE COURT:  Anyone else?

22             All right.

23             Before we proceed with the voir dire I have to

24      to inform you of certain legal principles which, if

25      you're selected as a juror you must comply with, so

Voir Dire

1   listen very carefully to what these are.  And as I

2   indicated earlier, an indictment -- well, the defendant

3   has been indicted and charged with the crime of murder

4   in the second degree, but I did indicate and I will

5   indicate again that it's -- that charge is merely an

6   accusation and merely an allegation, it is not proof

7   of anything or probative of anything, it's not

8   evidence.

9       An indictment is simply a piece of paper that

10  charges someone with a crime.  It is a consequence, that

11  person is brought into court and then the People have

12  the burden of proving each and every element, material

13  element of the crime charged, in this case it's murder

14  in the second degree, and that burden never shifts to

15  the defendant.  The burden always remains with the

16  People.

17      If you are selected as a juror in this

18  matter you will become a judge for a number of days

19  but you will be a judge of a specific area of the law,

20  that is, the facts.  You will determine what the facts

21  are in this case based upon the evidence or lack of

22  evidence.

23      I will be the judge of the law.  I will tell

24  you what the law is and that will be my province, and I

25  will not interfere in any way with your duty or

Voir Dire

1    obligation to find the facts.  I will tell you at the

2    close of this case what the law is and you will take the

3    facts, you will take the facts and the law together, you

4    know, the facts based upon the evidence, and the law and

5    then make a determination, which is called a verdict.

6    Your verdict will be guilty or not guilty, or you may

7    find the defendant guilty of some of the charges, if

8    there is another charge.

9         Now, I have another role at the trial other

10   than telling you what the law is, and that is, I'm

11   going to be listening to the attorneys when they make

12   motions, whether they are making objections and whether

13   they make applications, and I will be ruling on them as

14   a matter of law.  None of my rulings should have any

15   bearing upon the defendant's guilt or non-guilt in

16   this case.  And none of my rulings should be taken by

17   you as any indication as to whether you should believe

18   all or a part of what is offered as evidence or that

19   defendant is guilty or not guilty.  That is solely your

20   function to determine.  But you must accept the law as I

21   give it.

22        The defendant and the people want a fair trial

23   to which they are entitled.  You must follow the law as

24   I give it to you whether you agree with it or whether

25   you like it or not.

Voir Dire

1          You all agree to accept the law as I give it

2    and not substitute your interpretation of the law?  Can

3    you all do that?

4          I gotta hear from all of you in a loud and

5    clear voice.

6          (Whereupon, the prospective jurors responded.)

7          THE COURT:  Now, most of the evidence in any

8    particular case comes in the form of sworn testimony.  I

9    would say about maybe two to three percent of the

10   evidence may come in as scientific or forensic evidence,

11   but basically most cases that come through these halls

12   of justice are decided upon evidence that comes from

13   the mouths of witnesses, and you as a juror are going

14   to make a determination whether that particular witness

15   is:  One, telling you the truth; two, not telling you

16   the truth, that is, lying; or three, is mistaken, okay.

17   And that's going to be your obligation and duty to do

18   that.  And, of course, you're going to have to evaluate

19   any other evidence that comes before you.

20         I'm going to give you a list of names.  Some

21   of these individuals may or may not be witnesses in the

22   case.

23         Anthony Wilson, he is the victim in this case,

24   the individual that was stabbed to death.

25         Victoria Wilson.

Voir Dire

1                Shakeema Fortune.

2                Donet Robinson.

3                Matthew Shepard.

4                Linda Smith-Harris.

5                Detective Deborah Batanjani of the 83rd

6      Precinct.

7                A Police Officer Garrett Marsden of the 83rd

8      Precinct.

9                Police Officer Christian Carlin of the 83rd

10     Precinct.

11               Police Officer Juana Ortiz of the 83rd

12     Precinct.

13               Detective Geoffrey Hernandez of the Brooklyn

14     North Homicide Squad.

15               Detective Christopher Scandole of the Brooklyn

16     North Homicide Squad.

17               Detective Stephen or Stephen (pronunciation)

18     Markoski of the Crime Scene Unit of the N.Y.P.D.

19               Dr. Frede Frederic of the Chief Medical

20     Examiner's Office.

21               Sarah Philipps, also of the Office of the

22     Chief Medical Examiner DNA Lab.

23               Ed Purce, P-U-R-C-E.

24               A Sprint Nextel phone representative.

25               And there will be a 911 representative.

Voir Dire

1          And what is EBT?

2          MS. CHU:  I believe it's the benefits.

3          THE COURT:  Benefits person.

4          Anyone know or familiar with any of the names

5   I mentioned?

6          Just let me know by raising your hand.

7          I don't see any hands being raised so I would

8   assume none of you know any of these individuals.

9          All right.

10          As jurors your verdict must be unanimous.

11   Twelve jurors seldom agree immediately and, therefore,

12   you are going to be called upon to deliberate.  Can you

13   promise the defendant and the People that you're willing

14   to participate in deliberations, express your views

15   based on the evidence in the case, keep an open mind and

16   listen to the views of other jurors?

17          Can you all do that, folks?

18          (Whereupon, the prospective jurors responded.)

19          THE COURT:  Thank you.

20          Now, as Ms. Wisdom sits here she's presumed

21   innocent like anyone else who's been charged with a

22   crime and she remains innocent up until the time a

23   verdict of guilty is rendered, if in fact such a verdict

24   is rendered.  Therefore, the People must rebut this

25   presumption, if they can, by presenting evidence which

mc

Voir Dire

1    convinces you beyond a reasonable doubt of the

2    defendant's guilt.

3            In a criminal case the burden of proof is on

4    the People and always remains on the People throughout

5    the course of the trial.  The defendant is not required

6    to produce any witnesses.  The defendant is not required

7    to produce any evidence.  And very importantly, the

8    defendant is not required to testify in this matter, and

9    if she should not testify, it may not be held against

10   her.

11           As I said, the burden is always on the People,

12   they have to prove her guilt beyond a reasonable doubt.

13           Can you all accord this defendant this

14   presumption of innocence?

15           Can you do that, folks?

16           (Whereupon, the prospective jurors responded.)

17           THE COURT:  Now, a criminal case is different

18   from a civil case in two important respects.  In a

19   criminal case all jurors must agree upon a verdict.  In

20   a civil case only five of the six must agree.  In a

21   criminal case the People must prove guilt their case

22   beyond a reasonable doubt.  In a civil case the

23   plaintiff must only prove his or her case by a fair

24   preponderance of the credible evidence.

25           Now, everybody, I'm sure, has heard the term

mc

Voir Dire

1     "reasonable doubt."  I am not going to go into detail or

2     exact detail regarding it, I will do that at the time I

3     charge the jury.  But nevertheless, you will be required

4     to acquit the defendant if, at the end of the case,

5     because of the evidence or lack of evidence presented to

6     you, you have a reasonable doubt as to her guilt.  If

7     you find guilt beyond a reasonable doubt, then you must

8     return a verdict of guilty.  On the other hand, if guilt

9     is not proven beyond a reasonable doubt, you must find

10    the defendant not guilty.

11            Now, you may be saying, well, I never

12    performed this duty before.  And as I indicated, there

13    is no school for jurors.  The only school for jurors is

14    the school of life, basically.

15            What do I do when I get into the jury room?

16            Well, number one, you are not permitted to

17    consider what the punishment may be with respect to or

18    what the sentence may be with respect to this matter.

19    You may not express any sympathy for the defendant or

20    any of the People's witnesses or the People's position

21    in this matter because they're all extraneous, all

22    right, they're all irrelevant.

23            What's important and what you must focus upon

24    is the evidence or lack of evidence, and if someone

25    should go off the beaten track and get into one of the

Voir Dire

1    irrelevant matters, you must turn to the person very

2    civilly and nicely say, The Judge instructed us that we

3    focus on the evidence or lack of evidence and let's

4    continue on.

5              My next question to you, can you all render

6    your verdict free from sympathy and any of these

7    irrelevant matters?

8              Can you all do that?

9              (Whereupon, the prospective jurors responded.)

10             THE COURT:  Thank you.

11             Now, a number of police officers will be

12   testifying in this matter and they are to be treated

13   like any other witness, they are not to be given any

14   greater believability or less believability because

15   they're police officers.

16             However, if you feel because of your own

17   personal experience, the experience of someone close to

18   you, or because of what you've heard or seen in the

19   media you cannot be fair in evaluating a police

20   officer's testimony, let me know now.

21             Stand up.

22             Want to come up?

23             Please come up.

24             (Whereupon, the following took place at

25   sidebar:)

Voir Dire

1              THE CLERK:  State your name.

2              PROSPECTIVE JUROR:  Anita McCray.

3              THE CLERK:  Thank you.

4              THE COURT:  What is your position?

5              PROSPECTIVE JUROR:  I hate the police.

6              THE COURT:  Okay.  All right.

7              PROSPECTIVE JUROR:  Period.

8              THE COURT:  Okay.  I am going to send you back

9       to the Central Jury Room.

10             Place Ms. McCray on a civil matter.

11             THE CLERK:  You got it.  I'll put "civil."

12             (Whereupon, the following took place in open

13      court:)

14             THE COURT:  Yes, sir?

15             PROSPECTIVE JUROR:  I will have to come up

16      too.

17             THE CLERK:  You can step out.

18             THE COURT:  You have to go around.

19             Yes, sir, come on up.

20             PROSPECTIVE JUROR:  Thanks.

21             (Whereupon, the following took place at

22      sidebar:)

23             THE CLERK:  State your name for the record.

24             PROSPECTIVE JUROR:  Dennis, last name McCoy.

25             THE COURT:  Yes, sir?

Voir Dire

1          PROSPECTIVE JUROR:  I'm an employee for the

2    Police Department and --

3          THE COURT:  What do you do?

4          PROSPECTIVE JUROR:  I am an employee for the

5    N.Y.P.D. and within the department they brought false

6    charges, departmental charges.

7          THE COURT:  What do you do?

8          PROSPECTIVE JUROR:  I am a maintenance

9    supervisor.

10          And our union failed to represent me.  They

11    won.  And I don't have the money to get me a lawyer or

12    I'd be suing the Police Department.  I don't have the

13    money.  Some of the lawyers I did go to didn't want to

14    challenge the Police Department.

15          THE COURT:  Okay.

16          So you can't be fair, then?

17          PROSPECTIVE JUROR:  No, I can't.

18          THE COURT:  I'm just going to put you on a

19    civil matter.

20          You can return to the second floor.

21          THE CLERK:  Second floor, Central Jury.

22          (Whereupon, the following took place in open

23    court:)

24          THE COURT:  Who else?  Who else?

25          Come on up.

Voir Dire

```
 1                    (Whereupon, the following took place at
 2          sidebar:)
 3                    THE COURT:  Give your name.
 4                    PROSPECTIVE JUROR:  Ludmila (phonetic)
 5          Malibayeva.
 6                    THE CLERK:  Spell your last name.
 7                    PROSPECTIVE JUROR:  M-A-L-I-B-A-Y-E-V-A.
 8                    THE COURT:  Yes, ma'am?
 9                    PROSPECTIVE JUROR:  Hello.
10                    Many years ago my relative was killed, nobody
11          find who did it.  And, also, if something to do, my four
12          friends, they were stabbed with a knife but they
13          survived.  And again, it happened in my country.
14                    THE COURT:  Where?
15                    PROSPECTIVE JUROR:  Ukraine.
16                    THE COURT:  That has nothing to do with the
17          police.  What is your problem, though?
18                    PROSPECTIVE JUROR:  I am not sure it has
19          something to do.  Because somebody was killed, nobody
20          find the murderer.
21                    THE COURT:  Where was he killed?
22                    PROSPECTIVE JUROR:  Where?
23                    THE COURT:  Yes.
24                    PROSPECTIVE JUROR:  In my country.
25                    THE COURT:  What happened in your country is
```

Voir Dire

```
 1        one thing.  My question to you is, the fact that a

 2        relative is killed, is that going to prevent you from

 3        being fair and impartial?

 4                  PROSPECTIVE JUROR:  I don't know.

 5                  THE COURT:  All right, you are excused.  Go

 6        downstairs.

 7                  THE CLERK:  What is your first name?

 8                  MS. CHU:  Ludmila Malibayeva.

 9                  THE CLERK:  Second floor.

10                  THE COURT:  Civil.

11                  THE CLERK:  Civil case.

12                  (Whereupon, the following took place in open

13        court:)

14                  THE COURT:  All right, before we go any

15        further we are going to take a ten-minute recess.

16                  Ladies and gentlemen, I am going to ask you

17        not to discuss the case amongst yourselves or with

18        anyone else and, of course, step outside and just remain

19        there for a few minutes.  No more than ten minutes and

20        then we'll call you back in.

21                  COURT OFFICER:  Step outside.  Take all your

22        belongings with you.

23                  Do not leave the floor.

24                  (Whereupon, the panel of prospective jurors

25        exited the courtroom.)
```

mc

Voir Dire

1          THE COURT:  All right, ten minutes.

2          (Whereupon, a brief recess was held.)

3          THE COURT:  Let's get the jury.

4          THE CLERK:  Case back on trial.  Case on trial

5     continues back and trial continues.  Defendant is

6     present with her attorneys.

7          (Whereupon, there was a brief pause in the

8     proceedings.)

9          COURT OFFICER:  Panel entering.

10          (Whereupon, the panel of prospective jurors

11     entered the courtroom.)

12          THE COURT:  Hats off.

13          COURT OFFICER:  Take your hat off, sir.

14          THE COURT:  Hats off.

15          Ladies and gentlemen, do me a favor, move all

16     the way down.  Don't sit at the end.  I mean, there is

17     no reason to do that.

18          Miss, move all the way down.

19          Squeeze in, ma'am.  Move down, all the way

20     down.

21          Hats off, please.

22          We can squeeze in.  Let's go.  Come on.

23          Your name is going to be called, ladies and

24     gentlemen.  Please respond "here" or "present".

25          Also, if we mispronounce your name, tell us

mc

Voir Dire

```
1          what the correct pronunciation is.  You will enter from
2          my right, your left, into the well of the court then
3          take a seat.  There will be twenty potential jurors
4          seated within the jury box.
5                     Proceed.
6                     THE CLERK:  Seat number one will be Avelon
7          Ramnath.
8                     You have to say "here" or "present" when
9          you're called.
10                    PROSPECTIVE JUROR:  I'm sorry.
11                    THE CLERK:  You have to state "here" or
12         "present" when you hear your name.
13                    PROSPECTIVE JUROR:  Present.
14                    THE COURT:  Last name is spelled
15         R-A-M-N-A-T-H.
16                    Seat number one.
17                    THE COURT:  R-A-M...
18                    THE CLERK:  ...N-A-T-H.
19                    MS. CHU:  What is the first name?
20                    THE CLERK:  A-V-E-L-O-N.
21                    Seat number two, Nicholas Derziotis.
22                    How do you pronounce your last name?
23                    PROSPECTIVE JUROR:  Derziotis.
24                    PROSPECTIVE JUROR:  D-E-R-Z-I-O-T-I-S.
25                    THE COURT:  T-E-R --
```

Voir Dire

1            PROSPECTIVE JUROR:  D-E-R-Z-I-O-T-I-S.

2            Seat number three, Jean Lackan.

3            PROSPECTIVE JUROR:  Here.

4            THE CLERK:  L-A-C-K-A-N.

5            Seat number four, Annette Williams.

6            PROSPECTIVE JUROR:  Here.

7            THE CLERK:  W-I-L-L-I-A-M-S.

8            PROSPECTIVE JUROR:  Yes.

9            THE CLERK:  Number five is Lorraine Joseph,

10   J-O-S-E-P-H.

11            PROSPECTIVE JUROR:  Here, yes.

12            THE CLERK:  Seat six, is Shanice (phonetic)

13   Hunter.

14            PROSPECTIVE JUROR:  Here.

15            THE CLERK:  H-U-N-T-E-R.

16            Seat seven is William Dolan.

17            PROSPECTIVE JUROR:  Here.

18            THE CLERK:  D-O-L-A-N.

19            Seat eight is Karen Webster.

20            PROSPECTIVE JUROR:  Here.

21            THE CLERK:  W-E-B-S-T-E-R.

22            Seat number nine is Adriana (phonetic) Didino.

23            PROSPECTIVE JUROR:  Here.

24            THE CLERK:  D-I-D-I-N-O.

25            Seat ten is William Jenkins.

Voir Dire

1      PROSPECTIVE JUROR:  Here.

2      THE CLERK:  J-E-N-K-I-N-S.

3      Seat eleven, Francisco Martinez.

4      PROSPECTIVE JUROR:  Here.

5      THE CLERK:  M-A-R-T-I-N-E-Z.

6      Seat twelve is Lucian Volcy.

7      PROSPECTIVE JUROR:  Yes.

8      THE CLERK:  V-O-L-C-Y.

9      Seat thirteen is Anastasia Vincent,

10     V-I-N-C-E-N-T.

11     Seat fourteen is Samantha Valenzuela.

12     PROSPECTIVE JUROR:  Here.

13     THE CLERK:  V-A-L-E-N-Z-U-E-L-A.

14     Seat fifteen is Maleek (phonetic) Sutton.

15     PROSPECTIVE JUROR:  Here.

16     THE CLERK:  S-U-T-T-O-N.

17     Seat sixteen is Hal Duncan.

18     PROSPECTIVE JUROR:  Here.

19     THE CLERK:  D-U-N-C-A-N.

20     Seat seventeen is Michael Smargiassi.

21     How do you pronounce it?

22     PROSPECTIVE JUROR:  Smargiassi.

23     THE CLERK:  Smargiassi, S-M-A-R-G-I-A-S-S-I.

24     Seat eighteen, Henderson (phonetic) Lynch.

25     You have to say "here" or "present."

Voir Dire

1       PROSPECTIVE JUROR:  Present.

2       THE CLERK:  L-Y-N-C-H.

3       PROSPECTIVE JUROR:  Present.

4       THE CLERK:  Seat nineteen is Samantha Walker.

5       PROSPECTIVE JUROR:  Present.

6       THE CLERK:  W-A-L-K-E-R.

7       Seat twenty is Israel Santiago.

8       PROSPECTIVE JUROR:  Present.

9       THE CLERK:  S-A-N-T-I-A-G-O.

10      THE COURT:  All right.

11      Ms. Ramnath, your neighborhood?

12      PROSPECTIVE JUROR:  Flatbush.

13      THE COURT:  Flatbush.

14      And Mr. Derziotis?

15      PROSPECTIVE JUROR:  Bensonhurst.

16      THE COURT:  Bensonhurst.

17      What's that noise?

18      THE CLERK:  It's the printer.

19      THE COURT:  Why is that going off?

20      Ms. Lackan, your neighborhood?

21      PROSPECTIVE JUROR:  Canarsie.

22      THE COURT:  Canarsie.

23      Ms. Williams.

24      PROSPECTIVE JUROR:  East Flatbush.

25      THE COURT:  East Flatbush.

Voir Dire

1              Ms. Joseph.

2              PROSPECTIVE JUROR:  Canarsie.  Canarsie.

3              THE COURT:  Canarsie.

4              Ms. Hunter?

5              PROSPECTIVE JUROR:  East New York.

6              THE COURT:  Ms. Valenzuela?

7              PROSPECTIVE JUROR:  Mill Basin.

8              THE COURT:  And Mr. Duncan?

9              PROSPECTIVE JUROR:  Flatbush.

10             THE COURT:  Mr. Lynch?

11             PROSPECTIVE JUROR:  East New York.

12             THE COURT:  And Mr. Santiago?

13             PROSPECTIVE JUROR:  East New York.

14             THE COURT:  Ms. Walker or Walkin?

15             PROSPECTIVE JUROR:  Walker.

16             THE COURT:  Walker.

17             Where do you reside, neighborhood?

18             PROSPECTIVE JUROR:  Marine Park.

19             THE COURT:  Marine Park.

20             Mr. Smargiassi?

21             PROSPECTIVE JUROR:  Bay Ridge.

22             THE COURT:  Mr. Sutton?

23             PROSPECTIVE JUROR:  Flatbush.

24             THE COURT:  Ms. Vincent?

25             PROSPECTIVE JUROR:  Bedford-Stuyvesant.

Voir Dire

```
1                THE COURT:  Mr. Volcy?

2                PROSPECTIVE JUROR:  Bed-Stuy.

3                THE COURT:  Bed-Stuy.

4           Mr. Martinez?

5                PROSPECTIVE JUROR:  Bensonhurst.

6                THE COURT:  Mr. Jenkins?

7                PROSPECTIVE JUROR:  Flatbush.

8                THE COURT:  Ms. Didino?

9                PROSPECTIVE JUROR:  Bay Ridge.

10               THE COURT:  Ms. Webster?

11               PROSPECTIVE JUROR:  Crown Heights.

12               THE COURT:  And Mr. Dolan?

13               PROSPECTIVE JUROR:  Flatbush.

14               THE COURT:  All right.

15          First of all, any of you ladies and gentlemen

16     familiar with the crime scene area, which is 832

17     Bushwick Avenue?  Anybody familiar, first row?

18               Second row, anyone familiar with that area?

19               No, okay.

20               Ms. Ramnath, you married, single, separated

21     divorced?

22               PROSPECTIVE JUROR:  Married.

23               THE COURT:  And your occupation?

24               PROSPECTIVE JUROR:  Supervisor.

25               THE COURT:  Of what?
```

Voir Dire

1          PROSPECTIVE JUROR:  Of musicians union, Local

2     802, musician publishing department.

3          THE COURT:  Supervisor musicians union, okay.

4          And your spouse?

5          PROSPECTIVE JUROR:  He's not working right

6     now.

7          THE COURT:  Is he retired?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  What did he do before?

10          PROSPECTIVE JUROR:  He was a paper cutter.

11          THE COURT:  Okay.

12          Thank you.

13          PROSPECTIVE JUROR:  You're welcome.

14          THE COURT:  Mr. Derziotis?

15          PROSPECTIVE JUROR:  Married.

16          THE COURT:  Your occupation?

17          PROSPECTIVE JUROR:  Manager of a restaurant.

18          THE COURT:  And your spouse?

19          PROSPECTIVE JUROR:  She works.  She's a para

20     for a school.

21          THE COURT:  What kind of school?

22          PROSPECTIVE JUROR:  Public school.

23          THE COURT:  Grade school?

24          PROSPECTIVE JUROR:  Elementary school.

25          THE COURT:  Elementary, okay.

Voir Dire

```
 1                         Ms. Lackan, married, single, separated,
 2           divorced?
 3                         PROSPECTIVE JUROR:  Single.
 4                         THE COURT:  Occupation?
 5                         PROSPECTIVE JUROR:  Registered nurse.
 6                         THE COURT:  Okay.
 7                         And Ms. Williams?
 8                         PROSPECTIVE JUROR:  Single, timekeeper for the
 9           N.Y.P.D.
10                         THE COURT:  You're a timekeeper for the
11           N.Y.P.D.?
12                         PROSPECTIVE JUROR:  Yes.
13                         THE COURT:  Where do you work, at One Police
14           Plaza?
15                         PROSPECTIVE JUROR:  No, Internal Affairs
16           Bureau.
17                         THE COURT:  Where?
18                         PROSPECTIVE JUROR:  Internal Affairs Bureau,
19           315 Hudson Street.
20                         MS. CHU:  IAB.
21                         THE COURT:  Oh, Internal Affairs bureau.
22                         THE COURT:  Ms. Joseph?
23                         PROSPECTIVE JUROR:  Single.
24                         THE COURT:  Your occupation?
25                         PROSPECTIVE JUROR:  Customer service for
```

Voir Dire

1      National Grid and --

2                 THE COURT:  And what?

3                 PROSPECTIVE JUROR:  That's it.

4                 THE COURT:  Ms. Hunter?

5                 PROSPECTIVE JUROR:  Single.

6                 THE COURT:  Your occupation?

7                 PROSPECTIVE JUROR:  I'm a home health aide.

8                 THE COURT:  Home health aide.

9                 Ms. Valenzuela?

10                PROSPECTIVE JUROR:  Single.

11                THE COURT:  And your occupation?

12                PROSPECTIVE JUROR:  I am a lifeguard and swim

13     instructor at the YMCA.

14                THE COURT:  At the Y?

15                PROSPECTIVE JUROR:  At the YMCA.

16                THE COURT:  Mr. Duncan?

17                PROSPECTIVE JUROR:  Single.

18                THE COURT:  Your occupation?

19                PROSPECTIVE JUROR:  Custodian for the

20     Department of Education.

21                THE COURT:  I'm sorry, I can't hear.

22                PROSPECTIVE JUROR:  Custodian for the

23     Department of Education and customer rep for

24     Access-A-Ride service.

25                THE COURT:  Mr. Lynch?

Voir Dire

1          PROSPECTIVE JUROR:  Yes, sir.

2          THE COURT:  Married, single, separated,

3     divorced?

4          PROSPECTIVE JUROR:  Married.

5          THE COURT:  Your occupation?

6          PROSPECTIVE JUROR:  Window mechanic.  Window

7     mechanic.

8          THE COURT:  What kind of mechanic?

9          PROSPECTIVE JUROR:  Windows.

10          THE COURT:  Windows?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  And your spouse?

13          PROSPECTIVE JUROR:  She works for the Supreme

14     Court in Manhattan.

15          THE COURT:  Doing what?

16          PROSPECTIVE JUROR:  Data entry.

17          THE COURT:  And Mr. Santiago?

18          PROSPECTIVE JUROR:  Married, retired.

19          THE COURT:  What did you do when you worked?

20          PROSPECTIVE JUROR:  Union rep for 32BJ.

21          THE COURT:  What is 32BJ?

22          PROSPECTIVE JUROR:  32BJ is the service

23     employees union.

24          THE COURT:  And your spouse?

25          PROSPECTIVE JUROR:  She's a seamstress for a

mc

Voir Dire

1      large designer company in Manhattan.

2            THE COURT:  Okay.

3            Ms. Walker?

4            PROSPECTIVE JUROR:  I'm single.

5            I'm a full-time student and I work in a

6      cardiologist's office, file rep.

7            THE COURT:  And Mr. Smargiassi?

8            PROSPECTIVE JUROR:  I'm married ten years

9      today.

10           THE COURT:  Congratulations.

11           PROSPECTIVE JUROR:  Information technology

12     operations and security for a software firm in the

13     city.

14           THE COURT:  An IT person?

15           PROSPECTIVE JUROR:  Information technology,

16     yes.

17           THE COURT:  And your spouse?

18           PROSPECTIVE JUROR:  High school teacher, New

19     York City Department of Ed.

20           THE COURT:  What does she teach?

21           PROSPECTIVE JUROR:  She -- special ed and ELA,

22     English language arts.

23           THE COURT:  Okay.

24           Mr. Sutton?

25           PROSPECTIVE JUROR:  Single.

Voir Dire

1          THE COURT:  And your occupation?

2          PROSPECTIVE JUROR:  Interning at the moment at

3     City & State Magazine.

4          THE COURT:  You're an intern at what?

5          PROSPECTIVE JUROR:  City & State Magazine.

6          THE COURT:  Who puts that out, the state?

7          PROSPECTIVE JUROR:  Yeah.  it's a small,

8     little company.

9          THE COURT:  And Ms. Vincent?

10         PROSPECTIVE JUROR:  Single.

11         THE COURT:  Your occupation?

12         PROSPECTIVE JUROR:  Assistant manager for

13    membership ticketing at a theatre.

14         THE COURT:  What kind of theatre?

15         PROSPECTIVE JUROR:  Off Broadway theatre.

16         THE COURT:  Off Broadway.

17         And Mr. Volcy?

18         PROSPECTIVE JUROR:  Married.

19         THE COURT:  Occupation?

20         PROSPECTIVE JUROR:  Cab driver.

21         THE COURT:  Truck driver, you said?

22         PROSPECTIVE JUROR:  Cab driver.

23         THE COURT:  Cab driver?

24         PROSPECTIVE JUROR:  Cab driver.

25         THE COURT:  Cab driver, I'm sorry.

Voir Dire

1          And your spouse, she work?

2          PROSPECTIVE JUROR:  She's -- we be separated

3     right now.

4          THE COURT:  Oh, you're separated?

5          PROSPECTIVE JUROR:  Yeah, separated.

6          THE COURT:  All right.

7          Mr. Martinez?

8          PROSPECTIVE JUROR:  Single, and server at a

9     restaurant.

10         THE COURT:  And Mr. Jenkins?

11         PROSPECTIVE JUROR:  I'm single and I do direct

12    care work.

13         THE COURT:  What was that?

14         PROSPECTIVE JUROR:  Like with adults with

15    disabilities.

16         THE COURT:  Ms. Didino.

17         PROSPECTIVE JUROR:  I'm single and I have a

18    kickboxing gym in Brooklyn and opening up a second

19    one.

20         THE COURT:  You own a kickboxing gym, okay.

21         And Ms. Webster?

22         PROSPECTIVE JUROR:  Separated.  I am a

23    controller for a hotel.

24         THE COURT:  Is that in Manhattan?

25         PROSPECTIVE JUROR:  Yes.

Voir Dire

1          THE COURT:  And Mr. Dolan?

2          PROSPECTIVE JUROR:  Divorced.

3          Retired structural ironworker.

4          THE COURT:  All right.

5          First row, any of you ladies and gentlemen

6     ever serve on a jury before, at a criminal or civil

7     trial, first row?

8          Mr. Martinez -- I mean, I'm sorry, Santiago.

9          PROSPECTIVE JUROR:  Yes.

10          THE COURT:  What kind of jury were you on?

11          PROSPECTIVE JUROR:  It was a criminal.

12          THE COURT:  And what was the subject matter?

13     What was the crime?

14          PROSPECTIVE JUROR:  It was stabbing of an

15     employee in McDonald's.

16          THE COURT:  Without telling me what the

17     verdict was, was there a verdict?

18          PROSPECTIVE JUROR:  Yes, there was.

19          THE COURT:  How long ago was this?

20          PROSPECTIVE JUROR:  About ten years ago.

21          THE COURT:  Same question for those in the

22     rear, any of you ladies and gentlemen ever sit on a

23     jury, be it a civil or a criminal matter?

24          No, okay.

25          First row, any of you ladies and gentlemen

Voir Dire

```
 1     ever been the victim of a crime?

 2              It could have been a pocketbook snatch or it

 3     could have been a chain snatch, which is not the most

 4     serious crime, or murder or rape.

 5              When I say "victim," I mean if you have been

 6     the victim or someone close to you, doesn't have to

 7     necessarily be you.

 8              Anyone, first row?

 9              None of you?  No one in your families or close

10     to you, friends?

11              Yes, Ms. Hunter?

12              PROSPECTIVE JUROR:  I was the victim of rape.

13              THE COURT:  Sorry to hear that.

14              How long ago was that, ma'am?

15              PROSPECTIVE JUROR:  Last year December.

16              THE COURT:  Huh?

17              PROSPECTIVE JUROR:  Last year December.

18              THE COURT:  Last year summer?

19              PROSPECTIVE JUROR:  December.

20              THE COURT:  And was the perpetrator ever

21     apprehended?

22              PROSPECTIVE JUROR:  No.

23              THE COURT:  Was this reported to the police?

24              PROSPECTIVE JUROR:  Yes.

25              THE COURT:  Were you satisfied or dissatisfied
```

Voir Dire

1   with the police?

2       PROSPECTIVE JUROR:  Nothing happened, so it's

3   like whatever.

4       THE COURT:  Do you hold --

5       Do you have any bad feelings with respect to

6   the police or any authorities?

7       PROSPECTIVE JUROR:  Not really.

8       THE COURT:  Okay.

9       Anyone else?

10      Ms. Lackan?

11      PROSPECTIVE JUROR:  Yeah, my daughter was a

12  victim of rape.

13      THE COURT:  What happened to her?

14      PROSPECTIVE JUROR:  She was raped.

15      THE COURT:  Sorry to hear that.

16      How long ago was that, ma'am?

17      PROSPECTIVE JUROR:  Probably about twelve

18  years ago.

19      THE COURT:  Twelve years ago.

20      Was the perpetrator ever apprehended, the

21  person?

22      PROSPECTIVE JUROR:  It didn't occur here, it

23  occurred elsewhere.

24      THE COURT:  Where?

25      PROSPECTIVE JUROR:  Cayman Islands.

mc

Voir Dire

1            THE COURT:  All right.

2            Was that person ever apprehended, you know,

3       arrested?

4            PROSPECTIVE JUROR:  No.

5            THE COURT:  No, okay.

6            Anyone else, first row?

7            Second row, same question.

8            Ms. Webster?

9            PROSPECTIVE JUROR:  It was a long time ago, I

10      was robbed at knifepoint.

11            THE COURT:  You were robbed at knifepoint?

12            PROSPECTIVE JUROR:  Yeah.

13            THE COURT:  Was that person ever apprehended?

14            PROSPECTIVE JUROR:  No.

15            THE COURT:  Anyone else?

16            Ms. Vincent?

17            PROSPECTIVE JUROR:  I was robbed.

18            THE COURT:  Was a weapon involved?

19            PROSPECTIVE JUROR:  Yes, a gun.

20            THE COURT:  Did you report it?

21            PROSPECTIVE JUROR:  Yes.

22            THE COURT:  One person?

23            PROSPECTIVE JUROR:  One, yes.

24            THE COURT:  Was the perpetrator ever

25      apprehended?

Voir Dire

1           PROSPECTIVE JUROR:  No.

2           THE COURT:  Do you have any feelings with

3     regard to the way the police handled it?

4           PROSPECTIVE JUROR:  No, they handled it very

5     well.

6           THE COURT:  Who else?

7           Mr. Sutton?

8           PROSPECTIVE JUROR:  My cousin was shot.

9           THE COURT:  Cousin was shot?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Was that person ever arrested?

12          PROSPECTIVE JUROR:  No.

13          THE COURT:  Was that in Brooklyn?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Did you report that to the police?

16    Was that reported to the police?

17          PROSPECTIVE JUROR:  It was reported.

18          THE COURT:  Did he survive the shooting?

19          PROSPECTIVE JUROR:  No.

20          THE COURT:  Sorry.

21          Who else?  Anyone else?

22          All right.

23          First row, any of you ladies and gentlemen

24    ever accused of, arrested for, or convicted of a crime,

25    or someone close to you?

mc

Voir Dire

1              First row.

2              PROSPECTIVE JUROR:  My brother.

3              THE COURT:  Ms. Ramnath?

4              PROSPECTIVE JUROR:  Yes, my brother and my

5       sister.

6              THE COURT:  What happened?

7              PROSPECTIVE JUROR:  One for drugs and the

8       other for stealing.  They were deported.

9              THE COURT:  So your brother was arrested for

10      what, drugs?

11             PROSPECTIVE JUROR:  Drugs.

12             THE COURT:  And your sister for stealing?

13             PROSPECTIVE JUROR:  Yes.  Also drugs.

14             THE COURT:  And she was deported also?

15             PROSPECTIVE JUROR:  Both deported.

16             THE COURT:  Both deported?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Where are you from, again?

19             PROSPECTIVE JUROR:  Trinidad.

20             THE COURT:  Anyone else?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Yes?  That is Mr. Lynch?

23             PROSPECTIVE JUROR:  Lynch.

24             I had a DWI twelve years ago.

25             THE COURT:  Excuse me?

Voir Dire

1              PROSPECTIVE JUROR:  I had a DWI twelve years

2      ago.

3              THE COURT:  Okay.

4              Did they give you a program?

5              PROSPECTIVE JUROR:  Yeah.

6              THE COURT:  Do you hold that against the

7      police or the People because you were arrested for a

8      DWI?

9              PROSPECTIVE JUROR:  No.

10              THE COURT:  Anyone else, first row?

11              Second row?

12              Mr. Volcy?

13              PROSPECTIVE JUROR:  Yeah, my house was robbed.

14              THE COURT:  What?

15              PROSPECTIVE JUROR:  I got robbed in my house.

16              THE COURT:  They robbed your house?

17              PROSPECTIVE JUROR:  Yeah.

18              THE COURT:  You mean your house was

19      burglarized?

20              PROSPECTIVE JUROR:  Yeah.

21              THE COURT:  Were you home at the time?

22              PROSPECTIVE JUROR:  Yeah -- no, I wasn't.

23              THE COURT:  All right.

24              Did you report it to the police?

25              PROSPECTIVE JUROR:  I did.

Voir Dire

1                    THE COURT:  Okay.

2                    Anyone else?

3                    Mr. Martinez?

4                    PROSPECTIVE JUROR:  I was arrested, I think

5          like three, four years ago for graffiti.

6                    THE COURT:  For what, graffiti?

7                    PROSPECTIVE JUROR:  Yeah.

8                    THE COURT:  They give you an ACD?

9                    PROSPECTIVE JUROR:  No, I was reprimanded and

10         I was let go.

11                   THE COURT:  You were what?

12                   PROSPECTIVE JUROR:  I was reprimanded and let

13         go.

14                   THE COURT:  You paid a fine?

15                   PROSPECTIVE JUROR:  Yes.

16                   THE COURT:  Who else?

17                   Mr. Sutton?

18                   PROSPECTIVE JUROR:  My cousin was arrested.

19                   THE COURT:  Cousin was arrested.

20                   Your cousin was arrested for what?

21                   PROSPECTIVE JUROR:  I believe it was gang

22         related.

23                   MS. CHU:  I can't hear.

24                   THE COURT:  He was arrested.

25                   PROSPECTIVE JUROR:  I don't know the exact

Voir Dire

1    details but I believe it was gang related.

2                    THE COURT:  Oh, gang related.

3                    Did he do any time?  Do you know?

4                    PROSPECTIVE JUROR:  He went to Rikers.

5                    THE COURT:  He went to Rikers.

6                    Did he go to trial or do you know what

7    happened to the case?

8                    PROSPECTIVE JUROR:  No, I'm not sure.

9                    THE COURT:  Are you close to your cousin?

10                   PROSPECTIVE JUROR:  He's the one that was

11   shot.

12                   THE COURT:  He's the same one that was shot

13   and died, okay.

14                   Anybody else?

15                   All right.

16                   Any of you ladies and gentlemen related to,

17   friendly with, associated with, interact with any law

18   enforcement agents or attorneys?

19                   First row?

20                   That's Mr. Derziotis?

21                   PROSPECTIVE JUROR:  My brother-in-law's an

22   attorney and --

23                   THE COURT:  What kind of law does he practice?

24                   PROSPECTIVE JUROR:  Personal injury.

25                   And I have a lot of friends that are in the

Voir Dire

```
 1    police force.
 2              THE COURT:  You have a lot of friends in the
 3    police force?
 4              PROSPECTIVE JUROR:  Correct.
 5              My other brother-in-law is also.
 6              THE COURT:  Your who?
 7              PROSPECTIVE JUROR:  My brother-in-law is in
 8    the police force also.
 9              THE COURT:  Do you know where he is
10    stationed?
11              PROSPECTIVE JUROR:  62nd Precinct.
12              THE COURT:  Anyone else?
13              Ms. Joseph?
14              PROSPECTIVE JUROR:  Yes.
15              I have a cousin that's a lawyer for criminal
16    justice and also a cousin that's a judge for criminal as
17    well.
18              THE COURT:  Your cousin is a defense lawyer?
19              PROSPECTIVE JUROR:  Yes.
20              THE COURT:  And where's he practice?
21              PROSPECTIVE JUROR:  It's a she.
22              THE COURT:  She, I'm sorry.
23              PROSPECTIVE JUROR:  North Carolina.
24              THE COURT:  And you have another cousin who's
25    a judge?
```

Voir Dire

1          PROSPECTIVE JUROR:  Yeah.  He's male.

2          THE COURT:  Where?

3          PROSPECTIVE JUROR:  North Carolina also.

4          THE COURT:  Who else raised their hand?

5          Ms. Valenzuela?

6          PROSPECTIVE JUROR:  My uncle's a detective.

7          THE COURT:  Where?

8          PROSPECTIVE JUROR:  The 72nd Precinct, I

9    believe.

10         THE COURT:  72nd Precinct?  In Manhattan?

11         PROSPECTIVE JUROR:  Yeah.

12         THE COURT:  Who else raised their hand in the

13   rear?

14         That's Ms. Walker?

15         PROSPECTIVE JUROR:  My uncle's a detective

16   sergeant in Suffolk County.

17         THE COURT:  And that's Mr. Smargiassi?

18         PROSPECTIVE JUROR:  My brother and

19   brother-in-law are attorneys, my father-in-law is a

20   retired attorney.

21         THE COURT:  Your brother and your

22   brother-in-law are attorneys?  What kind of law do they

23   practice?

24         PROSPECTIVE JUROR:  My brother is mostly

25   matrimonial and commercial and my brother-in-law I

Voir Dire

1      believe is labor, labor.

2              THE COURT:  Your father is retired?

3              PROSPECTIVE JUROR:  Father-in-law.  He did

4      lead cases.

5              THE COURT:  What kind of cases?

6              PROSPECTIVE JUROR:  Lead, lead poisoning.

7              THE COURT:  Personal injury.

8              He is retired, though?

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Anyone else?

11             Mr. Martinez?

12             PROSPECTIVE JUROR:  My aunt is an immigration

13     lawyer in Pennsylvania.

14             THE COURT:  Your mother?

15             PROSPECTIVE JUROR:  Aunt.

16             THE COURT:  Your aunt.

17             Who else?  Anyone else?

18             Okay.

19             Ms. Ramnath, can you be fair and impartial in

20     this case?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Your answer, yes or no?

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Thank you.

25             Mr. Derziotis?

Voir Dire

1      PROSPECTIVE JUROR:  Yes.

2      THE COURT:  Ms. Lackan?

3      PROSPECTIVE JUROR:  Yes.

4      THE COURT:  Ms. Williams?

5      PROSPECTIVE JUROR:  Yes.

6      THE COURT:  Ms. Joseph?

7      PROSPECTIVE JUROR:  Yes.

8      THE COURT:  Ms. Hunter?

9      PROSPECTIVE JUROR:  Yes.

10     THE COURT:  Ms. Valenzuela?

11     PROSPECTIVE JUROR:  Yes.

12     THE COURT:  Mr. Duncan?

13     PROSPECTIVE JUROR:  Yes.

14     THE COURT:  And Mr. Lynch?

15     PROSPECTIVE JUROR:  Yes.

16     THE COURT:  Mr. Martinez -- Mr. Santiago?

17     PROSPECTIVE JUROR:  Yes.

18     THE COURT:  Ms. Walker?

19     PROSPECTIVE JUROR:  Yes.

20     THE COURT:  Mr. Smargiassi?

21     PROSPECTIVE JUROR:  Yes.

22     THE COURT:  Mr. Sutton?

23     PROSPECTIVE JUROR:  Yes.

24     THE COURT:  Ms. Vincent?

25     PROSPECTIVE JUROR:  Yes.

Voir Dire

```
1              THE COURT:  Mr. Volcy?

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Mr. Martinez?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Mr. Jenkins?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Ms. Didino?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  Ms. Webster?

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  And Mr. Dolan?

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  All right.

14             Since it's almost the luncheon hour, we are

15      going to adjourn till 2:00 P.M.  You are not to

16      discuss the case amongst yourselves or with anyone

17      else.  You are not to visit the place where the alleged

18      crimes occurred.  You are not to have any contact with

19      any of the parties involved in this matter, including

20      the Court.  If you see us, do not acknowledge us, just

21      pass us by.  We know the drill.  It may be uncomfortable

22      for you, but don't worry about it, I will explain later

23      on why you are not to have any contact, even eye

24      contact.  You may see us, just pass us by, all right.

25             And you are not to resort to utilizing any of
```

Voir Dire

1      your digital devices, electronic devices, for the

2      purpose of obtaining any information about this matter

3      or contacting anyone about this matter, okay.

4                    So, those of you in the jury --

5                    And that applies to you ladies and gentlemen

6      who are out in the audience.

7                    So those who are in the jury box will be

8      excused first and then the rest will follow.

9                    Return back at two o'clock in front of the

10     door, remain out there until you're called in by a Court

11     Officer.  Have a very good lunch.  Take all your

12     belongings with you.

13                   THE CLERK:  Sir.  Sir, have a seat.

14                   SERGEANT:  Exit on your right.

15                   (Whereupon, the panel of prospective jurors

16     exited the courtroom.)

17                   THE COURT:  All right, those in the audience

18     may follow.

19                   Two o'clock.

20                   (Whereupon, the panel of prospective jurors

21     exited the courtroom.)

22                   THE COURT:  All right, 2:00.  The Court's

23     adjourned.

24                   (Whereupon, a lunch recess was held.)

25                        *                *                *

Voir Dire

```
 1              A F T E R N O O N      S E S S I O N

 2              *                *                *

 3              THE CLERK:  Case back on trial continues.  All

 4    parties are present.  Defendant is present with her

 5    attorney.

 6              THE COURT:  Is your assistant here?

 7              MR. WALENSKY:  Yes.  I don't know where he

 8    just went.  He's coming.

 9              THE COURT:  He's coming back.

10              Let's get those in the box first and then the

11    rest.

12              (Whereupon, there was a brief pause in the

13    proceedings.)

14              COURT OFFICER:  Ready for the panel, your

15    Honor?

16              THE COURT:  Yes.

17              COURT OFFICER:  Panel entering.

18              (Whereupon, the panel of prospective jurors

19    entered the courtroom.)

20              COURT OFFICER:  Make sure your electronic

21    phones and electronic devices are turned off, please.

22              THE COURT:  Call the case in.

23              THE CLERK:  All right.

24              Case on trial continues.  All parties present.

25              THE COURT:  All right, Ms. Chu.
```

mc

Voir Dire - People/Ms. Chu

1          MS. CHU:  Thank you.

2          THE COURT:  You may inquire.

3          MS. CHU:  Good afternoon, ladies and

4    gentlemen.

5          As you know, my name is Phyllis Chu.

6          Like the Judge told you, I am going to be the

7    Assistant District Attorney that is going to be in

8    charge in this case.  Should you all be selected as

9    jurors for this matter, there's some things I wanted to

10   kind of talk to you about.  Before I talk about them, I

11   just want you to understand that this process is not

12   about saying what I might want to hear or, you know,

13   anything like that.  The only answer that you can give

14   is the truth, okay, 'cause please don't try and say

15   something that you think I want to hear or you think the

16   other guy wants to hear, just tell us the truth because

17   this is the only time we really get to interact with you

18   at this point.

19          So, one of the things I wanted to ask you

20   about, I know the Judge was asking you a number of

21   questions before lunch about if anybody was the victim

22   of a crime or anybody close to them had been arrested.

23   I know a lot of you raised your hands.

24          Is there anyone here, of the people that

25   have that in their past, that think those experiences

mc

Voir Dire - People/Ms. Chu

1      are going to affect your ability to be fair in this

2      trial?

3              Everybody okay with that?

4              Do you understand what I'm asking you?

5              Yes?

6              Everybody's good?

7              All right.

8              Whatever your experiences are, that you are

9      not going to let it affect you in deciding what the

10     evidence is in this case.

11             Now, talking about evidence, the Judge said in

12     most trials the majority of the evidence that you hear

13     is the spoken word, meaning someone gets up on the stand

14     and says on this particular day I did this, I saw this,

15     and what happened, okay.

16             Now, can everyone understand that the spoken

17     word is evidence, just like if you can hold it in your

18     hand, that someone's testimony is the same as if it were

19     physical evidence, it is considered evidence?  Can you

20     all appreciate that and accept that premise?

21             Okay.

22             Now, I know that at least one of you guys

23     watches some sort of crime show on TV.

24             PROSPECTIVE JUROR:  Yeah, Law & Order.

25             THE COURT:  Law & Order.

1        In these crime shows they never show you this

2   part.  They never show you about the jury selection.

3   They never show it because it's a very tedious process,

4   but it's very important.

5        And what you're going to see in this case is

6   real life, meaning you are not going to have actors get

7   up there and say, oh, on this particular day I saw this.

8   We are not going to have paid actors, nobody's going to

9   be looking at a script, reading from a script.  You're

10  certainly not going to have any commercials.

11        Can you all appreciate that it's not going to

12  be like TV, this is real life?

13        Can you all understand that?

14        Now, I am really bad with names but I think

15  your name is Duncan.

16        Mr. Duncan, how do you feel?  You watch those

17  crime shows, --

18        PROSPECTIVE JUROR:  Yes, I do.

19        MS. CHU:  -- you know, where they see

20  something with the naked eye across the room in the

21  carpet fibers, something different there, right?  They

22  are pretty good at that sometimes.  That's not going to

23  happen here, all right.

24        In fact, a lot of the evidence that you are

25  going to hear with regard to the defendant's guilt is

Voir Dire - People/Ms. Chu

1   going to come from words that she said, meaning she made

2   statements.

3           Now, is there anyone here that thinks that

4   because there was no eyewitness to what actually

5   happened to the victim in this case, it was just her and

6   him, okay, so much of the evidence that you're going to

7   hear has to do with statements that she makes to both

8   the police and to other people, now, how many of you --

9   let me ask you, can you accept the premise that if

10  someone is suspected of a crime, that they might want to

11  talk to the police?

12          Can you accept that?

13          PROSPECTIVE JUROR:  No.

14          MS. CHU:  Who said "no?"

15          PROSPECTIVE JUROR:  Me.

16          MS. CHU:  Ms. Webster, why do you say that?

17          PROSPECTIVE JUROR:  Whether they might want to

18  talk to the police, I don't know that -- I find it

19  difficult to believe that someone suspected of a crime,

20  you're just going --

21          MS. CHU:  That they'll want to talk?

22          PROSPECTIVE JUROR:  Yeah.

23          MS. CHU:  I'm sorry, Mr. Dolan, you raised

24  your hand?

25          PROSPECTIVE JUROR:  Of course.  Sometimes they

mc

Voir Dire - People/Ms. Chu

1   might tell their story first.

2              MS. CHU:  You think --

3              PROSPECTIVE JUROR:  Of course it's possible.

4              MS. CHU:  My question only to you, Ms.

5   Webster, is just that, is that going to prevent you from

6   listening to the evidence, you are going to say, you

7   know, what, I wouldn't have talked to the cops, I'm not

8   going to believe anything the cops say, if she made a

9   statement?

10             PROSPECTIVE JUROR:  You have to take

11  everything based on what's there, the reality in front

12  of you.  I don't think that that would -- I don't think

13  that that would -- I personally don't think it's going

14  to affect my judgment because my judgment is just based

15  on the facts.

16             MS. CHU:  You won't let your opinion about

17  whether or not you would do something affect what might

18  have happened?

19             PROSPECTIVE JUROR:  I don't think so.  I mean,

20  I don't plan to, let's put it that way.

21             MS. CHU:  If somebody is suspected of a crime

22  and talking to the police, do you think it's a

23  possibility they might say what Mr. Dolan says, you want

24  to speak first and say things in the best light for you?

25  You think that's a possibility, if someone is suspected

1     of a crime and speaks to the police?

2            They might say, oh, it happened this way,

3     because it sounds better?  Do you think that's a

4     possibility?  Yes?

5            Anybody here think it's not a possibility?

6            Do you think that sometimes someone, if they

7     are talking to the police and they know they are

8     suspected of a crime, they might say things, some things

9     are true, some things not so true, right, put the best

10    foot forward?  Do you think that's a possibility?

11           Yes?

12           Okay.

13           Now, let me ask you this.  What if the

14    statement was made to someone that's not the police, do

15    you think that that would affect your ability to --

16           MR. WALENSKY:  Objection, your Honor.

17           Can we approach?

18           THE COURT:  Come on up.

19           (Whereupon, a sidebar conference was held off

20    the record.)

21           THE COURT:  Objection sustained.  We'll go on

22    to another subject.

23           MS. CHU:  So the next thing I want to ask you

24    guys, that if you hear that kind of evidence, meaning

25    that the defendant made certain statements to various

mc

Voir Dire - People/Ms. Chu

1    people, do you think you are the kind of people that can

2    listen to what they tell you and make a decision as to

3    whether that statement that the defendant made --

4              MR. WALENSKY:  Objection.  This was just

5    sustained.

6              THE COURT:  Ladies and gentlemen, whatever is

7    stated is in evidence, you will have to evaluate it, all

8    right.  That's going to be your job.

9              Go on.

10             MS. CHU:  You understand everything I am

11   talking to you about now, nothing -- none of the

12   evidence I am talking about, scenarios, these are like

13   hypotheticals.  If you heard from witnesses who tell you

14   that the defendant said something, do you think that you

15   can base your decision on whether or not what they're

16   telling you is reliable, whether that statement is

17   reliable by looking at everything, meaning that you

18   don't have to just look at one person's testimony in a

19   bubble, right?

20             You can use their testimony and compare and

21   contrast it to other evidence that you are going to hear

22   in this case.  Do you think that you are the kind of

23   people that can do that, that can say, you know what, I

24   heard evidence that this person said this but I also

25   heard evidence that, well, this part can be true, but

Voir Dire - People/Ms. Chu

1   this part's definitely not true, this part's true, this

2   part definitely can't be true?

3          Will you look at everything as a whole before

4   you make a decision as to whether or not you can find

5   that to be reliable or not?  Can you do that?

6          Now, we talked about that C.S.I. person who

7   spots something from across the way.  You will have kind

8   of scientific evidence but you're not going to have a

9   videotape of this crime, okay, you are going to have

10   some DNA because there was blood at the scene.  You're

11   not going to have -- in fact, the weapon was never

12   recovered so you are not going to actually see the

13   weapon that was used against the victim, but you'll hear

14   about his injuries from other sources, like a medical

15   examiner, like people who saw the wounds that were

16   inflicted on the victim.

17          So does anyone here think you are the kind of

18   person that, you know what, I need to have a videotape,

19   I need to have solid evidence with my own eyes that this

20   person did this?

21          Does anyone think you're the kind of juror

22   that requires that kind of information?  Because I am

23   telling you right up front we don't have that.  We don't

24   have a videotape, we don't even have the knife.

25          Can anyone here let me know one way or the

Voir Dire - People/Ms. Chu

1   other whether or not you're okay with that?

2              PROSPECTIVE JUROR:  What do you have so --

3              MS. CHU:  Other stuff I have.

4         You're going to hear from witnesses who will

5   tell you about what happened before, sort of during and

6   then after.

7              PROSPECTIVE JUROR:  I am confused.  You said

8   there was no witnesses.

9              MS. CHU:  I told you that most of the evidence

10  that you are going to hear that points to the

11  defendant's guilt is coming from the defendant's own

12  mouth.

13             PROSPECTIVE JUROR:  How do we know that the

14  witnesses that are speaking against her are even

15  credible?

16             THE COURT:  That is your job.

17             PROSPECTIVE JUROR:  Most -- most people --

18             THE COURT:  Excuse me.  Don't say anything.

19        I will tell the jury what to say and not to

20  say and what the law is.

21        You are going to have to evaluate what people

22  say, that's what your job is, and it's clear as day.

23  That's evidence.  That's all.  That is what your job

24  is.

25             Go ahead.

mc

Voir Dire - People/Ms. Chu

1              MS. CHU:  Mr. Jenkins, you work, you said, for

2      direct care, right?

3              PROSPECTIVE JUROR:  Uh-huh.

4              MS. CHU:  In your job you decide whether or

5      not someone talking to you is telling you the truth?

6              PROSPECTIVE JUROR:  Yes, sometimes.

7              MS. CHU:  In your everyday life, I would

8      imagine, that most of you have to do that on a daily

9      basis multiple times, all right.  You guys all came here

10     with the unique benefit of having life experiences,

11     right.  You all have to make those decisions every day.

12     We are just asking you to take that common sense that

13     you have, your life experiences that you have and use

14     that to decide whether or not a witness who testifies

15     before you is telling the truth, if what they say makes

16     sense in light of what you -- everything else you heard,

17     okay, then for you to say, you know, I don't believe

18     they are telling the truth, or they're mistaken.  I am

19     not asking you to accept whatever anybody says is the

20     truth.  You have to determine on your own whether or not

21     you believe them.

22              Do you understand the difference?

23              PROSPECTIVE JUROR:  Uh-huh.

24              MS. CHU:  Are you okay with that?

25              PROSPECTIVE JUROR:  A --

1          MS. CHU:  You look --

2          PROSPECTIVE JUROR:  You say, like, if I do

3     that at my job, but like the most thing might be, yo,

4     somebody ate somebody's sandwich, but the aluminium foil

5     is on his desk, it's like you're guilty.

6          MS. CHU:  I am glad you brought that up.

7          You understand that your job is not to

8     consider anything about punishment or have any type of

9     sympathies in this case?

10         PROSPECTIVE JUROR:  I know.

11         MS. CHU:  You're just deciding what happened.

12    You are not passing judgment on anyone.

13         PROSPECTIVE JUROR:  No, no.

14         MS. CHU:  All you're doing is, you're deciding

15    this is what I think happened based on all the evidence

16    that I have.

17         Do you think you can do that?

18         PROSPECTIVE JUROR:  Sure.

19         MS. CHU:  Like --

20         PROSPECTIVE JUROR:  Fine.  I wanted to clear

21    that up, you know.

22         MS. CHU:  All right.

23         The next thing I want to talk to you about is

24    police witnesses.

25         We are going to have a number of police

Voir Dire - People/Ms. Chu

1    witnesses that testify before you and, you know, you had

2    to have lived under a rock the last ten years not to see

3    all kinds of stuff in the paper about police officers

4    doing wrongdoing and then something like page 40 will be

5    about something that they did right.

6         You understand, there's thirty, forty thousand

7    police officers in New York City alone.  Do you think

8    that it's possible that most of them do try to do their

9    best, some of them better than others, but they are all

10   individuals like you and I?

11        Whether or not you're a direct care worker or

12   you're a nurse, everybody is just trying to do what they

13   do the best that they can do, right, and they put their

14   pants on the same way we do, right, one leg at a time.

15        So, can you promise me that if you hear police

16   officers that testify in this case, that you're not

17   going to say automatically, I can't believe anything

18   they say?  But I also don't want you to say, you know

19   what, because they're police officers, they never lie.

20   I don't want that either.  I want you to wait, wait and

21   listen to what they have to say before you make your

22   judgment as to whether or not they're telling you the

23   truth.

24        Can you all promise me that you can do that?

25        PROSPECTIVE JUROR:  Yes.

Voir Dire - People/Ms. Chu

1           MS. CHU:  All right.

2           Now, the last thing I want to talk about has

3     to do with sympathy.  And I told you, I said sympathy

4     really has no place in what you're deciding in this

5     case.

6           Can you all understand that?

7           Someone is dead, there's some sympathy, it's

8     natural to feel that way.  We wouldn't be human if we

9     don't feel that way.  In fact, some of you might have

10    sympathy for the defendant.  But do you understand, you

11    cannot allow that sympathy, whether you have it or not,

12    to affect what you decide in this case if you're

13    selected as a juror?

14          Ms. Joseph, right?

15          PROSPECTIVE JUROR:  Uh-huh.

16          MS. CHU:  And let's say you're in the jury

17    room, you heard all the evidence, and you believe that

18    I've proved my case that the defendant is guilty beyond

19    a reasonable doubt, are you the kind of person that is

20    going say, you know what, I know Ms. Chu proved her

21    case, she proved it with the evidence beyond a

22    reasonable doubt and I believe it, that that proves that

23    the defendant is guilty, are you going to go back and

24    say, you know, I just -- I feel bad for her and I can't

25    do it, I can't convict?

Voir Dire - People/Ms. Chu

1          Can you understand what I'm getting at here?

2          I want to know now because you understand how

3     it would be unfortunate for us to later, after you're

4     selected, whether or not that might affect your ability

5     to decide this case only on the evidence and that's it?

6          You'd be okay with that?

7          PROSPECTIVE JUROR:  Yeah.

8          MS. CHU:  Do you think you might have some

9     hesitation?

10         PROSPECTIVE JUROR:  No.

11         MS. CHU:  Do you all promise me that if you

12    have any sympathies one way or the other, that you not

13    allow that to affect your decision in this case about

14    what the evidence is?

15         Can you all promise me that?

16         You promise to hold me to my burden of proving

17    what the defendant -- all the things that she's supposed

18    to have done?  You promise to hold me to that burden?

19         And the same on the flip side, there's certain

20    things I don't have to prove, like I don't have to prove

21    what the weather was like for that period of time, I

22    don't have to prove who won the lottery for four, five

23    weeks, all right.

24         Can you all promise me, also, that you are not

25    going to hold me to a higher standard or to more of what

Voir Dire - Defendant/Mr. Walensky

1        the Judge wants me to prove?

2              He says she has to prove four things, you are

3        not going to say I want that fifth one?

4              Is everybody okay with that?

5              Yes?

6              Anybody have any questions for me before I sit

7        down?

8              Okay, thank you very much.

9              THE COURT:  Okay, Mr. Walensky.

10             MR. WALENSKY:  Thank you.

11             Good afternoon, ladies and gentlemen.

12             My name is David Walensky and I'm the attorney

13       for Ms. Wisdom, who's the accused.  Mr. Povill is going

14       to be talking to you at some point.

15             It's interesting that we have this system here

16       where we will take great pains to say a person is

17       innocent until there is a guilty verdict.  And if you

18       notice, juries are asked to provide a verdict of guilty

19       or not guilty, not guilty or innocent.  This is a great

20       mistake people make.

21             Now, I have -- we'll get back to that.  But I

22       have fifteen minutes to do an in-depth psychological

23       profile of twenty of you.  I'm not that smart or

24       perceptive, so we really do rely upon your honesty

25       because this is the one time in your life -- you might

mc

Voir Dire - Defendant/Mr. Walensky

1    have another, but it's a certainty that you have no

2    bosses here over you.  So you can have prejudices, lay

3    them aside, you can recognize I don't like this, I don't

4    like that, whatever, lay it aside.  This is judged

5    solely by evidence.

6           Now, Ms. Chu and I will both have a chance to

7    open.  The People are required to tell you what they

8    have to prove and she will have an opening and tell you

9    how she will prove it.  Voir dire is not the place --

10   that is what we call this, jury selection -- to tell you

11   about the case so that you don't have preconceptions

12   before going in.

13          What we're interested in is people who have --

14   who can look at the evidence and listen to the

15   instructions of the Judge, of the Court, and decide

16   based on the evidence.  We talk about some of the facts.

17          You have preconceived notions, would you agree

18   that that could be true, Ms. Ramnath?

19          PROSPECTIVE JUROR:  Yes.

20          MR. WALENSKY:  So we really don't want that.

21          Now, Mr. Duncan?

22          PROSPECTIVE JUROR:  Yes.

23          MR. WALENSKY:  People want to hear -- the

24   Judge's told you my client doesn't have to testify,

25   but it's normal for people to want to hear someone

mc

1    testify.

2              PROSPECTIVE JUROR:  Yes.

3              MR. WALENSKY:  Because you want to hear both

4    sides.

5              PROSPECTIVE JUROR:  Yes.

6              MR. WALENSKY:  Do you know why we don't do

7    that, Ms. Williams?

8              One reason is, if that were the case, then we

9    don't have a system where the People have to prove their

10   case.  It's like let's see what you have, let's hear

11   what you have to say.  This is a one-sided situation.

12             Do you understand, Mr. Martinez, that it's

13   only about the People, Ms. Chu's ability to prove her

14   case beyond a reasonable doubt?

15             PROSPECTIVE JUROR:  Yes.

16             MR. WALENSKY:  I can sit there and take a nap,

17   say to Josh, let's take a nap and let her go on with

18   this, if they don't prove their case, if they don't have

19   the required evidence, then you must say not guilty.

20   You agree with that Mr. Derziotis?

21             PROSPECTIVE JUROR:  Yes.

22             MR. WALENSKY:  Did I pronounce it correctly?

23             PROSPECTIVE JUROR:  Close enough.

24             MR. WALENSKY:  Now, Mr. Santiago, people

25   testify and you have to decide whether or not they're

Voir Dire - Defendant/Mr. Walensky

1    telling the truth.  Sometimes people will tell the

2    entire truth, correct?

3                PROSPECTIVE JUROR:  Correct.

4                MR. WALENSKY:  Sometimes some of what they say

5    is true and some isn't, right?

6                PROSPECTIVE JUROR:  Yes.

7                MR. WALENSKY:  Sometimes they're not even

8    lying, necessarily, but they are making mistakes.  Would

9    you agree with that, Mr. Smargiassi?

10               PROSPECTIVE JUROR:  Yes.

11               MR. WALENSKY:  And it's a matter of perception

12   also, right?

13               Now, things affect a person's perception,

14   would you agree with that, Ms. Joseph, that something

15   can affect somebody's perception, how you listen to

16   somebody, how --

17               PROSPECTIVE JUROR:  Yes.

18               MR. WALENSKY:  If you had a few drinks, you

19   might not be listening as much.  If you smoked a little

20   crack, a person might be like a bit out of it, right?

21               Sometimes people lie because they have motives

22   to lie, right?

23               Now, I'm sure we all -- Mr. Dolan, you might

24   have had somebody -- I don't know -- you have somebody

25   and it's like, hey, you want to go get a beer?  No, man,

Voir Dire - Defendant/Mr. Walensky

1    I have to do this, and you see them later.  They just

2    lied to you, bold faced lie, not a big lie.

3              Ever have something like that happen?

4              PROSPECTIVE JUROR:  You might mean I tell one

5    thing but they hear another.

6              MR. WALENSKY:  Join the club.  I think we've

7    all had that experience.

8              So the point is, sometimes they're important

9    reasons, sometimes they're unimportant reasons,

10   sometimes you talk about kids, kids will lie, they

11   don't -- often people don't, if they are not mature

12   enough, don't realize the implications if they lie.

13             Would you agree with that, Ms. Didino?

14             PROSPECTIVE JUROR:  Sure.

15             MR. WALENSKY:  Small lies can have great

16   consequences, can we agree?  Then as to big lies, who's

17   to know?  You are going to have to pick up what is true

18   and what is not true.

19             Now, we talked about policemen, police.  When

20   we have police officers -- look, people don't like cops.

21   I do like cops.  But when somebody mugs you, you call a

22   cop, right?

23             And police officers are human like anybody

24   else.  Generally they solve crimes.

25             Would you agree with that, Ms. Lackan?

mc

Voir Dire - Defendant/Mr. Walensky

1          PROSPECTIVE JUROR:  Yes.

2          MR. WALENSKY:  Sometimes they are wrong?

3    People can have a conclusion and an assumption and try

4    to make evidence fit that assumption?

5          Mr. Sutton, you agree with that?

6          PROSPECTIVE JUROR:  Yes.

7          MR. WALENSKY:  You have an assumption, you

8    have a theory, let's make the facts fit the theory.

9    That can happen, right?

10         And it does happen.  We read about the

11   wrongful convictions all the time, not saying that

12   here --

13         MS. CHU:  Objection.

14         THE COURT:  Objection sustained.

15         MR. WALENSKY:  All right.

16         Ms. Wisdom is charged with intentional murder.

17   The Judge will tell you the definition.  He is the

18   arbiter of the law, and the law is written down as to

19   what are the elements.  He will tell you, essentially,

20   it is intending to kill somebody, it's intentional

21   murder.  He will tell you specifically.

22         Now, is there anyone here who would have

23   trouble bringing a verdict of guilty if the evidence

24   were there?

25         Now, the other side of that coin is, as I

mc

Voir Dire - Defendant/Mr. Walensky

1    said, we don't have to prove anything, because one

2    example of it is the same, you're walking down the

3    street and somebody grabs you and tells the police

4    officers, that person robbed me, where you were alone,

5    you live alone, you were in bed asleep, you don't have

6    an explanation, you say I robbed you, you prove it,

7    physical evidence, testimonial evidence, however,

8    whatever legal evidence is necessary.

9            Can you accept that?

10           Do you understand why a person doesn't have to

11   testify and why you don't have to hear both sides?

12           Again, it's all one-sided.

13           Do you understand that, Ms. Valenzuela?  No?

14           PROSPECTIVE JUROR:  Yes.

15           MR. WALENSKY:  That's another thing.

16           Yes?

17           PROSPECTIVE JUROR:  The Judge is going to give

18   us the definition of murder?

19           MR. WALENSKY:  He absolutely will.

20           PROSPECTIVE JUROR:  Okay.

21           MR. WALENSKY:  He will give you what the

22   definition is, but it's killing someone.  He will tell

23   you the elements.

24           PROSPECTIVE JUROR:  Murder is planned killing

25   someone?

Voir Dire - Defendant/Mr. Walensky

1              MR. WALENSKY:  Don't --

2              THE COURT:  No, no.

3              MR. WALENSKY:  The Judge will give you the

4      absolute definition of how you will judge the particular

5      crime.

6              PROSPECTIVE JUROR:  The reason why I'm asking,

7      because there was an article in the paper about some guy

8      who punched some guy after a soccer game and and the guy

9      died.  Is that murder?

10             THE COURT:  Let me just say something, all

11     right.

12             Whatever the attorneys say insofar as what the

13     law is, just disregard that, all right, because I will

14     ultimately tell you what the elements of the crime are,

15     all right.  And whatever you've read about it in the

16     paper or might have read in the paper regarding murder

17     or something akin to murder, just forget about it, put

18     it out of your mind.  You have to take what I say is the

19     law and that will come at the close of the case.

20             MR. WALENSKY:  Every situation is different,

21     every fact situation.

22             As the Judge said, he will tell you, you know,

23     regarding this and whatever charges you must decide.

24     But, again, it's your ability to decide those.

25             Now, I was talking about the People's -- the

Voir Dire - Defendant/Mr. Walensky

1       necessity for the People to prove their case.

2              Now, Mr. Volcy --

3              PROSPECTIVE JUROR:  Volcy (pronunciation).

4              MR. WALENSKY:  I'm sorry, Volcy.

5              You will look at a case and you will hear the

6       evidence and you say, well, I think he did it -- I am

7       not even talking about he did or she did it -- but they

8       haven't proven their case, you'd have to say not guilty,

9       wouldn't you?

10             PROSPECTIVE JUROR:  True.

11             MR. WALENSKY:  You may not be satisfied with

12      this, you may not have an answer.  This isn't about

13      answers, it's about your ability to look at the law and

14      make a decision as given under the law.

15             They might say, well, we think they did it, we

16      think they didn't prove their case, we have to say not

17      guilty.

18             I can't talk more, this isn't an opening, it's

19      not a summation, it's really to try to bring things out.

20      I have a couple of basic questions while they're here.

21      Anyone have a problem while they are serving?  I don't

22      mean the jury service, I mean in terms of your own

23      living.  I mean, these are considerations but, of

24      course, we know if selected you will do your duty.  What

25      we don't want is, if -- I think I can speak for all of

mc

Voir Dire - Defendant/Mr. Walensky

1    us, is that we don't want -- if you're in the room and

2    it's a couple of days, and it's up to the Judge how long

3    a jury sits, if they're having a problem with a

4    decision, but it's been two days, you're looking and

5    saying I gotta get back to work, I am losing time and

6    something else is playing on your mind, I need to know

7    because we don't want someone to say, okay, I'll go

8    whichever way the wind blows, it's eleven to one, you

9    are the one, regardless whether it's an acquittal or

10   conviction, this is a murder case, it should be that way

11   for every case, but you understand we need people who

12   are totally committed.  You may not want to say it, but

13   if you are chosen, can you totally commit?  I need to

14   know that.

15          It's not a contest.  That's the thing, this

16   isn't a contest.  And if you don't think you can do it,

17   I really need to know.  I need to see the hands of the

18   people who can't.

19          Okay, thank you.

20          I am not even going to ask why, if you can't

21   do it.  That is what I mean by honesty, because this is

22   the one time you don't have any bosses.  Again I bring

23   that up.

24          So, there's no shame in it.  If you are not

25   selected for this, you might be selected for something

Voir Dire - Defendant/Mr. Walensky

1    else or may very well be selected for this, but we need

2    to know.

3              So, ladies and gentlemen, do I have your

4    promise, if you're selected you will just do your very

5    best to listen to all the evidence, listen to the law

6    and judge this on the law and the evidence, not your

7    emotion, not your gut feeling, not what you feel is

8    right, but what the law requires?

9              Can you do that?

10             Thank you very, very much.

11             THE COURT:  What's the problem?

12             PROSPECTIVE JUROR:  I start school on the 1st.

13             THE COURT:  What?

14             PROSPECTIVE JUROR:  I start school on the 1st.

15             MR. WALENSKY:  July 1st?

16             PROSPECTIVE JUROR:  July 1st.

17             THE COURT:  What school are you starting?

18             PROSPECTIVE JUROR:  Manhattan GED plus.

19             THE COURT:  I asked that before and you didn't

20    say anything.

21             PROSPECTIVE JUROR:  The officer said I might

22    not be selected so it might not be an issue.

23             THE COURT:  The officer said that to you?

24             PROSPECTIVE JUROR:  Yeah, in the front.

25             THE COURT:  Where?

Voir Dire - Defendant/Mr. Walensky

1          PROSPECTIVE JUROR:  Outside, by the elevators.

2          THE COURT:  All right.

3          I'm going to ask those jurors sitting in the

4     box to vacate their seats, step outside, remain there

5     until we call you back in.  Don't disappear.  Take all

6     of your belongings with you.

7          (Whereupon, the panel of prospective jurors

8     exited the courtroom.)

9          THE COURT:  Those of you in the audience,

10    again, do not discuss the case amongst yourselves or

11    with anyone else.  Remain outside until we call you in.

12    It will be a couple of minutes.

13          (Whereupon, the panel of prospective jurors

14    exited the courtroom.)

15          MS. CHU:  What was the last question you asked

16    with juror number two and juror number sixteen said yes,

17    they couldn't do it?

18          MR. WALENSKY:  I said, is there anyone who,

19    you know, if you're in there for a long time and

20    whatever, you are going to lose too much money, you are

21    going to -- to be afraid you are not getting paid and

22    whatever, basically that would influence what you're

23    doing in the jury room, they said yes.

24          MS. CHU:  That was sixteen, Duncan.

25          MR. WALENSKY:  That was two, and Duncan.

Voir Dire

1           (Whereupon, there was a brief pause in the
2   proceedings.)
3           THE COURT:  All right.
4           First twelve for cause, Ms. Chu?
5           MS. CHU:  I believe defense counsel asked Mr.
6   Derziotis --
7           THE COURT:  Yes.
8           MS. CHU:  -- whether or not they can separate,
9   whatever, he is not making money or whatever and keep
10  that separate from his deliberations.
11          MR. WALENSKY:  I would agree, your Honor.
12          MS. CHU:  He said he thought that would be a
13  factor.
14          I didn't actually hear what he said.
15          MR. WALENSKY:  If I may.
16          I would agree with that because when I was
17  giving the scenario if you're going to be thinking about
18  something else, you can't spend anymore time, would that
19  cause you to maybe change your vote whichever way the
20  wind was blowing.
21          THE COURT:  Call Mr. Derziotis.  Call him in.
22          COURT OFFICER:  Juror entering.
23          (Whereupon, the prospective juror entered the
24  courtroom.)
25          THE CLERK:  State your name for the record,

Voir Dire

1          please.

2                    PROSPECTIVE JUROR:  Nicholas Derziotis.

3                    THE CLERK:  Thank you.

4                    THE COURT:  Mr. Derziotis?

5                    PROSPECTIVE JUROR:  Yes.

6                    THE COURT:  First of all, can you be fair and

7          impartial in this case?

8                    PROSPECTIVE JUROR:  Yes.

9                    THE COURT:  Is there anything that would

10         prevent you from being fair and impartial in this case?

11                   PROSPECTIVE JUROR:  No.

12                   THE COURT:  You sure?

13                   PROSPECTIVE JUROR:  Besides the fact that I

14         have a business to run.

15                   THE COURT:  I know that you have a business to

16         run.  My question is, is that going to prevent you from

17         being fair and impartial?

18                   PROSPECTIVE JUROR:  No.

19                   THE COURT:  Are you going to rush to judgment

20         because of time considerations, in other words, change

21         your mind because --

22                   PROSPECTIVE JUROR:  It's not going to rush me

23         to judgment but I have -- I'm manager of a restaurant.

24                   THE COURT:  I understand that.  My point is,

25         if --

Voir Dire

1          PROSPECTIVE JUROR:  I'm not going to rush to

2     judgment, no.

3          THE COURT:  Would you stick to your

4     convictions notwithstanding, you know, your concerns

5     about the money?

6          PROSPECTIVE JUROR:  Absolutely.

7          THE COURT:  Okay.  Step out.

8          The cause is denied.

9          MR. WALENSKY:  Note my objection, your Honor,

10     because during -- I know -- I don't believe he's been

11     rehabilitated because here, even though he said it's

12     difficult for a person to say, yeah, it wouldn't change

13     my mind, but my business is going to be in my mind, I

14     have a restaurant to run.  So, he is speaking out of

15     both sides of his mouth.

16          I am essentially saying, out of caution, I

17     think he should be excluded at this  point.

18          THE COURT:  I think he said that he may have

19     concerns and he was honest that will, but he said that

20     notwithstanding that he wouldn't change his mind because

21     of it and he wouldn't rush to get back to work.  So,

22     that is denied.

23          MR. WALENSKY:  Note my objection.

24          THE COURT:  Any other cause?

25          MS. CHU:  I want to challenge juror number

mc

Voir Dire

1    six, Shanice Hunter.  I believe that she stood up

2    earlier and said she has to go to the doctor on Monday

3    and I know we have a full day with testimony.  I don't

4    want her to delay how this case progresses because we

5    are already kind of putting --

6              THE COURT:  I think she only needs to get an

7    iron shot, something like that.  That's what she said,

8    although she didn't say --

9              MS. CHU:  She has an appointment.  How are we

10   going to try it, if we can?

11             MS. CHU:  Find out from --

12             THE COURT:  Call Ms. Hunter in.

13             (Whereupon, there was a brief pause in the

14   proceedings.)

15             COURT OFFICER:  Juror entering.

16             (Whereupon, the prospective juror entered the

17   courtroom.)

18             THE COURT:  Ms. Hunter, earlier you mentioned

19   something about an appointment on Monday.

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  What is the appointment?

22             PROSPECTIVE JUROR:  I have to have iron I.V.

23   done.

24             THE COURT:  What?

25             PROSPECTIVE JUROR:  Iron I.V.  My hemoglobin

Voir Dire

1    is low.  Either that, or a blood transfusion.

2              THE COURT:  Is that going -- is it possible

3    to reschedule?  We are not meeting on tomorrow.

4              PROSPECTIVE JUROR:  No.  My appointment is

5    Monday at eleven o'clock.

6              THE COURT:  Is it possible to rearrange the

7    appointment?

8              PROSPECTIVE JUROR:  I don't know.

9              THE COURT:  You don't know.

10             Well, if we could rearrange the appointment,

11   would that be all right?

12             PROSPECTIVE JUROR:  If I can rearrange it,

13   that is okay.

14             THE COURT:  Who's the doctor?

15             PROSPECTIVE JUROR:  I forgot his name.

16             THE COURT:  You forgot his name?

17             PROSPECTIVE JUROR:  I go to Brookdale.

18             THE COURT:  You go to the hospital?

19             PROSPECTIVE JUROR:  Uh-huh.

20             MS. CHU:  May I ask a question?

21             How long does the procedure take?

22             PROSPECTIVE JUROR:  It's an hour.

23             THE COURT:  When would you go?  When can you

24   go?

25             PROSPECTIVE JUROR:  I don't know.

Voir Dire

1          THE COURT:  What do you mean?  Are they going
2     to give you a time or what?
3          PROSPECTIVE JUROR:  They give you a set time.
4          THE COURT:  What's your set time?  What time
5     did they give you?
6          PROSPECTIVE JUROR:  They gave me eleven
7     o'clock Monday morning.
8          THE COURT:  Oh, eleven o'clock.
9          You may step outside.
10          Thank you.
11          PROSPECTIVE JUROR:  Thank you.
12          (Whereupon, there was a brief pause in the
13     proceedings.)
14          THE COURT:  She will be excused for cause.
15          Anything else for cause?
16          MS. CHU:  Not for the rest of the twelve.
17          THE COURT:  Defense, cause, first twelve?
18          MR. WALENSKY:  No, not for the first twelve,
19     your Honor.
20          THE COURT:  Perempt?
21          MS. CHU:  Juror number four -- I'm sorry --
22     five.
23          THE COURT:  Ms. Joseph.
24          MS. CHU:  Lorraine Joseph.
25          Juror number eight, Ms. Webster.

Voir Dire

```
1               Juror number ten, Mr. Jenkins.

2               And juror number twelve, Mr. Volcy.

3               THE COURT:  Defendant, perempt?

4               MR. WALENSKY:  Juror one -- I'm sorry, my

5       mistake.

6               Juror two.

7               THE COURT:  Derziotis?

8               MR. WALENSKY:  Yes.

9               Four.  Four.

10              THE COURT:  Hold on.

11              THE CLERK:  You said juror number four?

12              MR. WALENSKY:  Juror four.

13              Juror seven.

14              Juror nine.

15              Give me one moment, your Honor.

16              (Whereupon, there was a brief pause in the

17      proceedings.)

18              MR. WALENSKY:  All right, your Honor, that's

19      it.

20              THE CLERK:  Juror number one will be Avelon

21      Ramnath.

22              Juror number two will be Jean Lackan.

23              And juror three will be Francisco Martinez.

24              THE COURT:  All right, next up.

25              MR. WALENSKY:  Hold on a second.
```

Voir Dire

1          (Whereupon, there was a brief pause in the

2     proceedings.)

3          MR. WALENSKY:  Your Honor, I am going to

4     perempt number eleven also.

5          THE COURT:  You just --

6          THE CLERK:  It's too late.

7          THE COURT:  You can't do that.

8          MR. WALENSKY:  Fine.

9          I realized he --

10         THE COURT:  You what?

11         MR. WALENSKY:  Well, I was trying to decide

12    because he had said that --

13         THE COURT:  You were deciding, then you made

14    the decision, then the Judge -- the Clerk began to read

15    those who were selected.

16         MR. WALENSKY:  They haven't been sworn, your

17    Honor.  We haven't started the rest.  We haven't started

18    thirteen through twenty.

19         THE COURT:  I understand that, counsel.

20         MR. WALENSKY:  All right.

21         THE COURT:  You know what, defendant --

22         MR. WALENSKY:  My co-counsel likes him.  Keep

23    him.  What the heck.

24         THE COURT:  What is your decision?  Do you

25    want to challenge him or not, or your client?

Voir Dire

1          (Whereupon, there was a brief pause in the

2     proceedings.)

3          MR. WALENSKY:  I am going to perempt him, your

4     Honor.

5          THE COURT:  All right.

6          The next six, for cause.

7          MS. CHU:  Your Honor, I will challenge juror

8     number sixteen.  I believe he starts school on July 1st.

9     That would make him unavailable to actually serve.

10          THE COURT:  Who's that?

11          MS. CHU:  Mr. Duncan.

12          THE COURT:  No, Duncan is -- I thought

13     Duncan's -- oh, Mr. Duncan, for cause, yeah.

14          All right.

15          THE CLERK:  He's out?

16          THE COURT:  He's out.

17          MS. CHU:  Those are all I have for cause.

18          That's thirteen through eighteen, right?

19          THE COURT:  Yes.

20          LAW SECRETARY:  We have two jurors.  It should

21     be the next ten.

22          THE COURT:  We have two jurors?

23          THE CLERK:  Yes.

24          THE COURT:  Yes.

25          LAW SECRETARY:  It should be everybody.

mc

Voir Dire

| | |
|---|---|
| 1 | MS. CHU:  I thought you said the first six. |
| 2 | THE COURT:  It's eight.  You're right, all |
| 3 | right.  I'm sorry. |
| 4 | It's six, that's right. |
| 5 | MS. CHU:  There's eight, more jurors. |
| 6 | THE CLERK:  Eight left. |
| 7 | THE COURT:  All right.  The next eight, all |
| 8 | right. |
| 9 | You challenge Duncan? |
| 10 | MS. CHU:  I challenge Duncan.  I do not have |
| 11 | anymore cause challenges for the remainder. |
| 12 | THE COURT:  Do you have any challenges? |
| 13 | MR. WALENSKY:  No. |
| 14 | THE COURT:  Perempt? |
| 15 | MS. CHU:  Yes.  People challenge juror number |
| 16 | fourteen. |
| 17 | THE COURT:  Fourteen is Valenzuela. |
| 18 | Anyone else? |
| 19 | MS. CHU:  Excuse me, I'm sorry. |
| 20 | (Whereupon, there was a brief pause in the |
| 21 | proceedings.) |
| 22 | MS. CHU:  Juror number thirteen as well. |
| 23 | THE COURT:  Vincent? |
| 24 | MS. CHU:  Yes. |
| 25 | Juror number fifteen. |

mc

Voir Dire

1            THE COURT:  Hold on.

2            Fifteen is Sutton.

3            MS. CHU:  Sutton.

4            THE COURT:  Any others?

5            MS. CHU:  And juror number nineteen, Ms.

6     Walker.

7            THE COURT:  All right.

8            Defense?

9            MR. WALENSKY:  Juror number seventeen.

10           THE COURT:  Smargiassi.

11           MR. WALENSKY:  And juror number --

12           THE COURT:  Hold on a minute.  Hold on.

13           (Whereupon, there was a brief pause in the

14    proceedings.)

15           THE COURT:  Who else?

16           MR. WALENSKY:  Twenty.

17           THE COURT:  Santiago?

18           MR. WALENSKY:  Yes.

19           MS. CHU:  I loved him.

20           THE CLERK:  Is that it, Mr. Walensky?

21           MR. WALENSKY:  That is it.

22           All we have left is Lynch, right?

23           I'm finished.

24           THE CLERK:  Juror number three will be

25    Henderson Lynch.

Voir Dire

```
 1              THE COURT:  People have exercised eight and
 2       defendant...
 3              THE CLERK:  Seven.
 4              THE COURT:  I have six.
 5              MS. SCHWARTZKOPF:  Seven.
 6              THE CLERK:  Seven.
 7              MS. SCHWARTZKOPF:  Two, four, seven, nine,
 8       eleven, seventeen and twenty.
 9              THE COURT:  Wait a minute.
10              Two, that's the first one.
11              MS. SCHWARTZKOPF:  Four.
12              THE COURT:  Four is second.
13              MS. SCHWARTZKOPF:  Seven and nine.
14              THE COURT:  Seven and nine is four.
15              The next one is five.
16              MS. SCHWARTZKOPF:  Yes.
17              THE COURT:  That's six and seven, you're
18       right.
19              Okay.
20              Bring the panel in, please.
21              COURT OFFICER:  Want the twenty in the box or
22       in the front row?
23              THE COURT:  In the front row.
24              COURT OFFICER:  Ready for the panel, your
25       Honor?
```

Voir Dire

1         THE COURT:  Bring them in.

2         COURT OFFICER:  Panel entering.

3         (Whereupon, the panel of prospective jurors

4    entered the courtroom.)

5         THE CLERK:  Hats off, please, in court.

6         Okay, ladies and gentlemen, if you hear your

7    name called, that means you have been selected to serve

8    as a juror.

9         If you do not hear your name called, you are

10   excused, go back to the second floor with the thanks of

11   the Court.

12        Okay, if you hear your name called please say

13   "here" or "present," remain in the courtroom.

14        Juror number one will be Avelon Ramnath.

15        Just say "here" or "present."

16        PROSPECTIVE JUROR:  Present.

17        THE CLERK:  Juror number two, Jean Lackan.

18        PROSPECTIVE JUROR:  Present.

19        THE CLERK:  And juror three, Henderson Lynch.

20        PROSPECTIVE JUROR:  Present.

21        THE CLERK:  The rest of you go back to the

22   second floor, Central Jury.

23        (Whereupon, the panel of prospective jurors

24   exited the courtroom.)

25        THE COURT:  Swear them in, please.

mc

Voir Dire

1          THE CLERK:  Will the three of you rise and

2     raise your right hand.

3               Do you and each of you sincerely and solemnly

4     swear or affirm that you will try this case in a just

5     and impartial manner to the best of your judgment and

6     you will render a verdict according to the law and the

7     evidence?

8               What is your response?

9               Your response?

10              (Whereupon, the jurors responded.)

11         THE COURT:  Wait a minute.

12              Ladies and gentlemen, I'm going to direct you

13    to return on Monday at eleven o'clock in the jury room,

14    all right.  You'll go with the officer now and he will

15    explain to you what you have to do, all right, but you

16    be there on Monday at eleven o'clock.

17         COURT OFFICER:  Follow me.

18         THE COURT:  Do not discuss the case amongst

19    yourselves or with anyone else or visit the place where

20    the alleged crimes occurred.  Do not have any contact

21    with any of the parties involved in this matter.

22              (Whereupon, the sworn jurors exited the

23    courtroom.)

24         THE COURT:  Bring in the rest of the jurors.

25              (Whereupon, there was a brief pause in the

Voir Dire

1      proceedings.)

2                  COURT OFFICER:  Ready for the panel, your

3      Honor?

4                  THE COURT:  Yes.

5                  (Whereupon, the panel of prospective jurors

6      entered the courtroom.)

7                  THE COURT:  Listen for your name.  If your

8      name is called, just say "present" or "here" and take a

9      seat in the jury box.

10                  THE CLERK:  Seat number one, will be Holland

11     Givanchi.

12                  PROSPECTIVE JUROR:  Givanchi (pronunciation),

13     G-I-V-A-N-C-H-I.

14                  THE CLERK:  Givanchi, excuse me.

15                  G-I-V-A-N-C-H-I?

16                  PROSPECTIVE JUROR:  That is correct.

17                  THE CLERK:  Seat two, Cleo Gray.

18                  PROSPECTIVE JUROR:  Here.

19                  THE CLERK:  G-R-A-Y.

20                  Seat three, Irina Slobod.

21                  PROSPECTIVE JUROR:  Present.

22                  THE CLERK:  S-L-O-B-O-D.

23                  Seat four, Sarah Shaffee.

24                  PROSPECTIVE JUROR:  Yes.

25                  THE CLERK:  Can you pronounce that?

Voir Dire

1           PROSPECTIVE JUROR:  Shaffee.

2           THE COURT:  How do you spell the last name?

3           THE CLERK:  S-H-A-F-F-E-E.

4           PROSPECTIVE JUROR:  S-H-A-F-F-E-E, yeah.

5           THE CLERK:  Seat five, Elizabeth Sanchez.

6           PROSPECTIVE JUROR:  Here.

7           THE CLERK:  S-A-N-C-H-E-Z.

8           Seat six is Christian Hatcher.

9           You have to say "here" or "present."

10          PROSPECTIVE JUROR:  Here.

11          THE CLERK:  H-A-T-C-H-E-R.

12          Seat seven, Alexander Nuciforo.

13          PROSPECTIVE JUROR:  Nuciforo, N-U-C-I-F-O-R-O.

14          THE COURT:  What?

15          THE CLERK:  N-U-C-I-F-O-R-O.

16          Seat eight, Nicholas Healey.

17          PROSPECTIVE JUROR:  Here.

18          THE CLERK:  H-E-A-L-E-Y.

19          Seat nine, Rohan (phonetic) O'Connell.

20          PROSPECTIVE JUROR:  It's Rohan

21      (pronunciation).

22          THE CLERK:  Seat ten, Rosa Olibris.

23          PROSPECTIVE JUROR:  Here.

24          THE CLERK:  How do you pronounce it?

25          PROSPECTIVE JUROR:  Olibris.

Voir Dire

1      THE CLERK:  O-L-I-B-R-I-S.

2      THE COURT:  O-L...

3      THE CLERK:  O-L-I-B-R-I-S.

4      Seat eleven, Jay Perrier.

5      PROSPECTIVE JUROR:  Here.

6      THE CLERK:  P-E-R-R-I-E-R.

7      Seat twelve is Samuel Rossi.

8      PROSPECTIVE JUROR:  Here.

9      Rossi (pronunciation).

10     THE CLERK:  Rossi, R-O-S-S-I.

11     Seat thirteen, Joann Prezeau.

12     PROSPECTIVE JUROR:  Present.

13     THE CLERK:  Is it P-R-E-I-E-A-U?

14     PROSPECTIVE JUROR:  P-R-E-Z-E-A-U.

15     THE CLERK:  Z-E-A-U.

16     THE COURT:  P-R-E...

17     PROSPECTIVE JUROR:  Z-E-A-U.

18     THE CLERK:  P-R-E-Z-E-A-U.

19     Seat fourteen, Katie Dixon.

20     PROSPECTIVE JUROR:  Present.

21     THE CLERK:  D-I-X-O-N.

22     Seat fifteen is Shane O'Reilly.

23     PROSPECTIVE JUROR:  Here.

24     THE CLERK:  O-R-E-I-L-L-Y.

25     Seat sixteen, Eva (phonetic) Jablonska.

Voir Dire

```
1              PROSPECTIVE JUROR:  Here.

2              THE CLERK:  Pronounce your last name.

3              PROSPECTIVE JUROR:  Jablonska.

4              THE CLERK:  J-A-B-L-O-N-S-K-A.

5         Seat seventeen, Deanna Clements.

6              PROSPECTIVE JUROR:  Here.

7              THE CLERK:  C-L-E-M-E-N-T-S.

8         Seat eighteen, Desiree Conigliaro.

9              PROSPECTIVE JUROR:  Desiree Conigliaro

10        (pronunciation).

11             THE COURT:  Conigliaro.

12             THE CLERK:  C-O-N-I-G-L-I-A-R-O.

13        Seat nineteen, Blessing Fadaka.

14             PROSPECTIVE JUROR:  Here.

15             THE CLERK:  F-A-D-A-K-A.

16        Thank you.

17             THE COURT:  F-A-D...

18             THE CLERK:  ...A-K-A.

19             THE COURT:  Seat 20 is Justin Feinstein.

20             PROSPECTIVE JUROR:  Feinstein (pronunciation).

21             THE CLERK:  F-E-I-N-S-T-E-I-N.

22             THE COURT:  Mr. Givanchi, neighborhood?

23        You can sit down.

24             PROSPECTIVE JUROR:  Brighton Beach.

25             THE COURT:  Brighton Beach.
```

Voir Dire

1              Ms. Gray?

2              PROSPECTIVE JUROR:  Williamsburg.

3              THE COURT:  Ms. Slobod?

4              PROSPECTIVE JUROR:  Sheepshead Bay.

5              THE COURT:  Sheepshead Bay.

6              Ms. Shaffee?

7              PROSPECTIVE JUROR:  Coney Island.

8              THE COURT:  Ms. Sanchez?

9              PROSPECTIVE JUROR:  Bay Ridge.

10             THE COURT:  Mr. Hatcher?

11             PROSPECTIVE JUROR:  Bedford-Stuyvesant.

12             THE COURT:  Bed-Stuy.

13             Ms. Dixon?

14             PROSPECTIVE JUROR:  East New York.

15             THE COURT:  I'm sorry?

16             PROSPECTIVE JUROR:  East New York.

17             THE COURT:  Okay.

18             Ms. Jablonska?

19             PROSPECTIVE JUROR:  Bay Ridge.

20             THE COURT:  Bay Ridge.

21             Ms. Conigliaro?

22             PROSPECTIVE JUROR:  Bensonhurst.

23             THE COURT:  And Mr. Feinstein?

24             PROSPECTIVE JUROR:  Carroll Gardens.

25             MS. CHU:  I'm sorry?

Voir Dire

```
1              THE COURT:  Carroll Gardens.

2              Ms. Fadaka?

3              PROSPECTIVE JUROR:  Fort Green.

4              THE COURT:  Ms. Clements?

5              PROSPECTIVE JUROR:  Prospect Heights.

6              THE COURT:  Prospect Heights.

7              Mr. O'Reilly.

8              PROSPECTIVE JUROR:  Crown Heights.

9              THE COURT:  Crown Heights.

10             Ms. Prezeau?

11             PROSPECTIVE JUROR:  Flatbush.

12             THE COURT:  Mr. Rossi?

13             PROSPECTIVE JUROR:  Flatbush.

14             THE COURT:  Flatbush.

15             Mr. Perrier?

16             PROSPECTIVE JUROR:  Bay Ridge.

17             THE COURT:  Bay ridge.

18             Ms. Olibris?

19             PROSPECTIVE JUROR:  Crown Heights.

20             THE COURT:  Crown Heights?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Mr. O'Connell?

23             PROSPECTIVE JUROR:  Williamsburg.

24             THE COURT:  Williamsburg.

25             Mr. Healey?
```

Voir Dire

```
 1                   PROSPECTIVE JUROR:  Greenpoint.

 2                   THE COURT:  Greenpoint.

 3                   And Mr. Nuciforo?

 4                   PROSPECTIVE JUROR:  Nuciforo (pronunciation).

 5                   THE COURT:  Spell your last name.

 6                   PROSPECTIVE JUROR:  N-U-C-I-F-O-R-O.

 7                   THE COURT:  Nuciforo.

 8                   PROSPECTIVE JUROR:  Bensonhurst.

 9                   THE COURT:  All right.

10                   First row, any of you ladies and gentlemen

11       familiar with the crime scene area, 832 Bushwick Avenue?

12       First row?

13                   Anyone in the second row?

14                   All right.

15                   Mr. Givanchi, married, single, divorced,

16       separated?

17                   PROSPECTIVE JUROR:  Single.

18                   Transportation.

19                   THE COURT:  What do you do?

20                   PROSPECTIVE JUROR:  Transportation.

21                   THE COURT:  That doesn't mean anything.

22                   PROSPECTIVE JUROR:  Bus driver.

23                   THE COURT:  For New York City?

24                   PROSPECTIVE JUROR:  No, your Honor.  I lived

25       here a year and a half, I am trying to get --
```

Voir Dire

1        THE COURT:  I'm sorry, what?

2        PROSPECTIVE JUROR:  I am here a year and a

3   half, I am trying to get hired by MTA.

4        THE COURT:  Who do you work for now?

5        PROSPECTIVE JUROR:  I'm unemployed.

6        PROSPECTIVE JUROR:  Unemployed.

7        THE COURT:  Oh, you're unemployed?

8        PROSPECTIVE JUROR:  Yes, Judge.

9        THE COURT:  I'm sorry.

10       Presently unemployed, okay.

11       Ms. Gray, married, single, separated,

12   divorced?

13       PROSPECTIVE JUROR:  Single.

14       THE COURT:  And your occupation?

15       PROSPECTIVE JUROR:  I'm an actor.

16       THE COURT:  And Ms. Slobod?

17       PROSPECTIVE JUROR:  I'm married.

18       THE COURT:  Married.

19       PROSPECTIVE JUROR:  Home attendant.

20       THE COURT:  What do you do for a living?

21       PROSPECTIVE JUROR:  I do everything.

22       THE COURT:  You work or --

23       PROSPECTIVE JUROR:  Home attendant.

24       THE COURT:  You're a home attendant.

25       And your husband?

```
1               PROSPECTIVE JUROR:  School bus driver.

2               THE COURT:  Okay.  All right.

3               Ms. Shaffee?

4               PROSPECTIVE JUROR:  Divorced.

5               And retired.

6               THE COURT:  What did you do before you

7      retired?  What kind of work did you?

8               PROSPECTIVE JUROR:  Accountant and

9      administrative duties.

10              THE COURT:  Ms. Sanchez?

11              PROSPECTIVE JUROR:  Married.

12              THE COURT:  Your occupation?

13              PROSPECTIVE JUROR:  Executive assistant for

14     Citibank.

15              THE COURT:  Executive assistant city what?

16              PROSPECTIVE JUROR:  Executive assistant.  The

17     company is Citibank.

18              THE COURT:  Oh, Citibank.

19              Who has -- all devices have to be turned off.

20              And your spouse?

21              PROSPECTIVE JUROR:  Analyst, anti money

22     laundering for the Citibank.

23              THE COURT:  Financial analysis?

24              PROSPECTIVE JUROR:  Yeah, anti money

25     laundering.
```

mc

Voir Dire

```
1                  THE COURT:  All right.

2                  And Mr. Hatcher?

3                  PROSPECTIVE JUROR:  Single.

4                  THE COURT:  Your occupation?

5                  PROSPECTIVE JUROR:  Cashier, security.

6                  THE COURT:  You work as a cashier and also a

7       security guard?

8                  PROSPECTIVE JUROR:  Sometimes.

9                  THE COURT:  Ms. Dixon?

10                 PROSPECTIVE JUROR:  Single.

11                 Home health aide.

12                 Ms. Jablonska?

13                 PROSPECTIVE JUROR:  Divorced.

14                 Housekeeper.

15                 THE COURT:  Ms. Conigliaro?

16                 PROSPECTIVE JUROR:  Divorced.

17                 Finance coordinator for a charter school.

18                 THE COURT:  Mr. Feinstein?

19                 PROSPECTIVE JUROR:  Married.

20                 Advertising creative director.

21                 THE COURT:  And your spouse?

22                 PROSPECTIVE JUROR:  Small business owner.

23                 THE COURT:  What kind of business?

24                 PROSPECTIVE JUROR:  Writing workshops.

25                 THE COURT:  Ms. Fadaka?
```

Voir Dire

1    PROSPECTIVE JUROR:  Single, registered nurse.

2    THE COURT:  Ms. Clements?

3    PROSPECTIVE JUROR:  Digital marketing manager.

4    THE COURT:  You married, single?

5    PROSPECTIVE JUROR:  Divorced.

6    THE COURT:  What do you do?

7    PROSPECTIVE JUROR:  Digital marketing manager.

8    THE COURT:  Mr. O'Reilly?

9    PROSPECTIVE JUROR:  I'm single.

10   And beer salesman.

11   THE COURT:  A beer salesman?

12   PROSPECTIVE JUROR:  Yeah.

13   THE COURT:  And Ms. Prezeau?

14   PROSPECTIVE JUROR:  Divorced.

15   Home attendant.

16   THE COURT:  And Mr. Rossi?

17   PROSPECTIVE JUROR:  Married.

18   Retail manager.

19   THE COURT:  And your spouse?

20   PROSPECTIVE JUROR:  She's unemployed.

21   THE COURT:  What?

22   PROSPECTIVE JUROR:  Unemployed.

23   THE COURT:  Unemployed?

24   PROSPECTIVE JUROR:  Yes.

25   THE COURT:  Did she work before?

Voir Dire

1              PROSPECTIVE JUROR:  A while ago.

2              THE COURT:  Doing what?

3              PROSPECTIVE JUROR:  She was doing secretary

4         work.

5              THE COURT:  Mr. Perrier?

6              PROSPECTIVE JUROR:  Single.

7              Laboratory manager.

8              THE COURT:  What kind of lab?

9              PROSPECTIVE JUROR:  Biological and

10        radiological research.

11             THE COURT:  You're a laboratory assistant, you

12        said?

13             PROSPECTIVE JUROR:  Manager.

14             THE COURT:  Oh, manager, I'm sorry.

15             Ms. Olibris, married, single, separated?

16             PROSPECTIVE JUROR:  Divorced.

17             Social worker.

18             THE COURT:  And Mr. O'Connell?

19             PROSPECTIVE JUROR:  Single.

20             Graphic designer.

21             THE COURT:  And Mr. Healey?

22             PROSPECTIVE JUROR:  Divorced.

23             Law enforcement.

24             THE COURT:  What do you do?

25             PROSPECTIVE JUROR:  I'm a lieutenant at the

Voir Dire

1      New York City Taxi Limousine Commission.

2                  THE COURT:  You're a lieutenant with whom?

3                  PROSPECTIVE JUROR:  New York City Taxi

4      Limousine Commission.

5                  THE COURT:  And Mr. Nuciforo?

6                  PROSPECTIVE JUROR:  Single.

7                  Full-time student and I coach soccer at a day

8      camp.

9                  THE COURT:  What are you studying?

10                 PROSPECTIVE JUROR:  Civil engineering.

11                 THE COURT:  Civil engineering, all right.

12                 First row, any of you ladies and gentlemen

13     ever serve on a jury before?

14                 Just raise your hand if you did.

15                 Ms. Shaffee, what kind of jury was it?  Civil?

16                 PROSPECTIVE JUROR:  Civil.

17                 THE COURT:  Civil, okay.

18                 How long ago?

19                 PROSPECTIVE JUROR:  A little over six years.

20                 THE COURT:  Okay.

21                 And, Mr. Feinstein, how long ago for you?

22     What kind of jury was it?

23                 PROSPECTIVE JUROR:  Criminal, seven years.

24                 THE COURT:  Criminal?

25                 PROSPECTIVE JUROR:  Yes.

Voir Dire

1          THE COURT:  What was the charge?

2          PROSPECTIVE JUROR:  Arson.

3          THE COURT:  Was there a verdict, yes or no?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  How long ago was that?

6          PROSPECTIVE JUROR:  Seven years ago.

7          THE COURT:  Seven years ago.

8          Second row, same question, any of you ever sat

9     on a jury before, civil or criminal?

10          Okay.

11          First row, any of you ladies and gentlemen

12     ever been the victim of a crime, be it a petty crime or

13     a major crime, any crime, you, yourself, been the victim

14     or someone close to you or a relative?  Anyone in the

15     first row?

16          Mr. Feinstein?

17          PROSPECTIVE JUROR:  I've been robbed twice.

18          THE COURT:  Raise your hand then I'll respond

19     to you.

20          All right.

21          Ms. Shaffee, you have been robbed twice?

22          PROSPECTIVE JUROR:  Yeah.

23          THE COURT:  Were weapons involved?

24          PROSPECTIVE JUROR:  Once, at gunpoint, in the

25     office and then another time was in an apartment

Voir Dire

1      building, by the elevator.

2               THE COURT:  Was the office at gunpoint?

3               PROSPECTIVE JUROR:  The office was gunpoint,

4      yes.

5               THE COURT:  And the second one is where?

6               PROSPECTIVE JUROR:  In my building.

7               THE COURT:  In your apartment or in the

8      hallway?

9               PROSPECTIVE JUROR:  No, by the elevator.

10              THE COURT:  By the elevator?

11              PROSPECTIVE JUROR:  By the elevator.

12              THE COURT:  Was there a weapon there?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  Okay.

15              Did you report both?

16              PROSPECTIVE JUROR:  Yeah.  My apartment was

17     robbed once also.

18              THE COURT:  Your what?

19              PROSPECTIVE JUROR:  My apartment was robbed

20     also once.

21              THE COURT:  Also your apartment was

22     burglarized?

23              PROSPECTIVE JUROR:  Also, yeah.

24              THE COURT:  And you reported that?

25              PROSPECTIVE JUROR:  Yeah.

Voir Dire

1          THE COURT:  Okay.

2          Who else?

3          Mr. Feinstein?

4          PROSPECTIVE JUROR:  Mugged at gunpoint.

5          THE COURT:  You were robbed at gunpoint?

6          PROSPECTIVE JUROR:  Robbed.

7          THE COURT:  Where did this occur?

8          PROSPECTIVE JUROR:  Washington, D.C.

9          THE COURT:  On the street?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  You reported that to the police?

12         PROSPECTIVE JUROR:  Yep.

13         THE COURT:  Who else, first row?  Anyone else,

14    first row?

15         It doesn't have to be you, yourself, could be

16    someone very close to you or a relative, all right.

17         Mr. Givanchi?

18         PROSPECTIVE JUROR:  Yes, your Honor.

19         THE COURT:  What?

20         PROSPECTIVE JUROR:  It's kind of hard for me

21    to say this.  Sexual assault.

22         THE COURT:  You were the victim of sexual

23    assault?

24         PROSPECTIVE JUROR:  Yes, sir.

25         THE COURT:  And how long ago was this and

mc

Voir Dire

```
1    where?

2              PROSPECTIVE JUROR:  This is in San Francisco.

3              THE COURT:  Was this reported to the police?

4              PROSPECTIVE JUROR:  No, your Honor.

5              THE COURT:  Okay.

6              Anyone else?

7              All right.

8              Second row, same question?

9              Just raise your hands, I will go down.

10             Mr. O'Reilly.

11             PROSPECTIVE JUROR:  Yes.  My vehicle was shot

12   and no one was injured.

13             THE COURT:  Your vehicle was what?

14             PROSPECTIVE JUROR:  Vehicle was shot.

15             THE COURT:  You mean somebody put a bullet

16   into your vehicle?

17             PROSPECTIVE JUROR:  In the vehicle.

18             No one was injured in that one.

19             My house, my apartment, was burglarized like

20   eight years ago as well.  Both were reported.

21             THE COURT:  Who else?

22             Ms. Prezeau?

23             PROSPECTIVE JUROR:  My nephew was murdered.

24             THE COURT:  Who?

25             PROSPECTIVE JUROR:  Nephew.  My nephew.
```

Voir Dire

```
 1            THE COURT:  Oh, your nephew.  Sorry.

 2            And how did that occur, shooting, stabbing?

 3            PROSPECTIVE JUROR:  Shooting.

 4            THE COURT:  How long ago?

 5            PROSPECTIVE JUROR:  Three years.

 6            THE COURT:  Did they ever find out who did it?

 7            PROSPECTIVE JUROR:  Yes.  His girlfriend --

 8    his wife.

 9            THE COURT:  Which?  Wife?

10            PROSPECTIVE JUROR:  Girlfriend.

11            THE COURT:  Domestic violence?

12            PROSPECTIVE JUROR:  Yes.

13            THE COURT:  Did she go to jail?  Was she

14    convicted?

15            PROSPECTIVE JUROR:  No.  We couldn't -- we

16    didn't have enough money to pursue it.  It was

17    Upstate -- in Connecticut, and we couldn't do anything

18    and they didn't want to do anything for us on our part.

19            THE COURT:  The police didn't want to do

20    anything?

21            PROSPECTIVE JUROR:  Well, the police said he

22    shot himself and when -- when we get somebody to

23    investigate, the bullet was in the back of his head so,

24    you know, then they -- we asked them if there was gun

25    residue on his hand and they couldn't give us an answer.
```

Voir Dire

1           THE COURT:  Sorry to hear that.

2           Anyone else?

3           Mr. Rossi?

4           PROSPECTIVE JUROR:  Robbed at gunpoint.

5           THE COURT:  You were robbed at gunpoint?

6           PROSPECTIVE JUROR:  Yes.

7           THE COURT:  When?  How long ago?

8           PROSPECTIVE JUROR:  Probably about fifteen,

9     sixteen years ago.

10          THE COURT:  Was that reported to the police?

11          PROSPECTIVE JUROR:  It was.

12          THE COURT:  Was the perpetrator ever

13    apprehended?

14          PROSPECTIVE JUROR:  No.

15          And I was also shot in my leg.

16          THE COURT:  You were shot in your leg?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Was that person apprehended?

19          PROSPECTIVE JUROR:  No.

20          THE COURT:  Was it a drive-by or what was it?

21          PROSPECTIVE JUROR:  I was just caught in the

22    middle of, like, a shootout.

23          THE COURT:  Who else?

24          Ms. Olibris?

25          PROSPECTIVE JUROR:  Olibris (pronunciation).

Voir Dire

1          (Whereupon, there was a brief pause in the

2    proceedings.)

3          THE COURT:  Ms. Olibris, you want to come up,

4    you said?

5          PROSPECTIVE JUROR:  My laptop, somebody stole

6    my laptop from my room.

7          THE COURT:  Somebody stole your laptop from

8    your room?

9          PROSPECTIVE JUROR:  My room.

10          THE COURT:  Who else?

11          Mr. O'Connell?

12          PROSPECTIVE JUROR:  My aunt got murdered by --

13    by a boyfriend.

14          THE COURT:  Was a weapon involved?

15          PROSPECTIVE JUROR:  I think just his hands.

16          THE COURT:  How long ago was that?

17          PROSPECTIVE JUROR:  Four years ago.

18          THE COURT:  He was arrested?

19          PROSPECTIVE JUROR:  Yeah.  He killed himself

20    so --

21          THE COURT:  Oh, he killed himself.  Sorry to

22    hear that.

23          Mr. Healey?

24          PROSPECTIVE JUROR:  I worked for a gas station

25    and we were robbed at gunpoint.

Voir Dire

1        THE COURT:  Okay.

2        You were working at the gas station?

3        PROSPECTIVE JUROR:  Yes.

4        THE COURT:  And anyone else?

5        That's it?

6        First row, any of you ladies and gentlemen

7   ever been accused of or arrested for or convicted for a

8   crime, either yourself or someone close to you or a

9   relative?  Anyone?

10       Mr. Hatcher?

11       PROSPECTIVE JUROR:  There was a brawl by the

12  police station, I was coming from the store and I guess

13  cops were everywhere and I was on my way home and I got

14  stopped by the police, you know, thrown to the car and

15  everything.  I wasn't even involved.  And they was

16  searching my pockets, everything, for I guess, like, a

17  gun or a weapon because they said I might have had it.

18       THE COURT:  There was a fight in front of a

19  police station you said?

20       PROSPECTIVE JUROR:  Yeah.

21       THE COURT:  On the street?

22       PROSPECTIVE JUROR:  Yeah.  There was also a

23  store there I was coming from.

24       THE COURT:  So they thought you were part of

25  this fight or brawl, you said?

mc

Voir Dire

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Were you taken in and booked or

3    not?

4          PROSPECTIVE JUROR:  No.  My mother came to get

5    me.

6          THE COURT:  How old were you at the time?

7          PROSPECTIVE JUROR:  It was before I left.  I

8    was about eighteen.

9          THE COURT:  Before you left for what?

10          PROSPECTIVE JUROR:  To Pennsylvania.  I was

11    about seventeen, eighteen.

12          THE COURT:  How long ago was that?

13          PROSPECTIVE JUROR:  About two years ago.

14          THE COURT:  Is that going to affect your

15    judgment in this case?

16          PROSPECTIVE JUROR:  It might 'cause there was

17    another incident that happened.

18          THE COURT:  What happened?

19          PROSPECTIVE JUROR:  I guess somebody called

20    the cops on my mother for something, and I wasn't aware

21    of that, just kind of like walked into it, and police

22    came to the door and there was a problem, and then the

23    cops just stopped me again because they thought I might

24    have been trying to do something.  They had me against

25    the wall, tried to handcuff me.

Voir Dire

1          THE COURT:  Were you booked on that?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  And what happened?

4          PROSPECTIVE JUROR:  They kind of stopped once

5    they found out what was really going on.  There was a

6    big misunderstanding.

7          THE COURT:  It was a misunderstanding, you

8    said?

9          PROSPECTIVE JUROR:  I kind of just walked in.

10   I was in the hallway listening.

11         THE COURT:  So you say it is going to affect

12   you or not?

13         PROSPECTIVE JUROR:  It might, yeah.

14         THE COURT:  You are excused, Mr. Hatcher.

15         PROSPECTIVE JUROR:  Thank you.

16         THE CLERK:  Seat number six will be Margaret

17   Gabriel.

18         PROSPECTIVE JUROR:  Yes.

19         THE CLERK:  G-A-B-R-I-E-L.

20         THE COURT:  Do you have any problems sitting

21   on this, Ms. Gabriel?

22         PROSPECTIVE JUROR:  No, not at all.

23         THE COURT:  Okay.

24         Ms. Gabriel, your neighborhood?

25         PROSPECTIVE JUROR:  East Flatbush.

mc

Voir Dire

1          THE COURT:  East Flatbush.

2          And you're familiar with the crime scene area?

3          PROSPECTIVE JUROR:  No, I'm not.

4          THE COURT:  Married, single, separated,

5     divorced?

6          PROSPECTIVE JUROR:  Divorced.

7          THE COURT:  Have you ever served on a jury

8     before?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  Okay.

11          Have you ever been the victim of a crime?

12          PROSPECTIVE JUROR:  Just recently, in

13     November, I was.  My home was burglarized.

14          THE COURT:  Home burglarized.

15          Have you ever been accused or arrested or

16     convicted of a crime, or someone close to you?

17          PROSPECTIVE JUROR:  No, not that I know of.

18          THE COURT:  Anyone else?

19          Thank you very much.

20          Anyone else?

21          First row?

22          Second row?

23          Anyone accused, arrested, convicted of a

24     crime, or someone close to you?

25          That's Mr. O'Connell?

Voir Dire

1          PROSPECTIVE JUROR:  Last year I --

2          THE COURT:  What?

3          PROSPECTIVE JUROR:  Last year I went into the

4    wrong apartment coming back pretty drunk.

5          THE COURT:  Start over, slowly.

6          PROSPECTIVE JUROR:  Sorry, sorry.

7          It was trespass.  I went into the wrong

8    apartment by accident, so the cops came and started to

9    arrest me then the apartment people realized I wasn't

10   really --

11         THE COURT:  You said you went into another

12   apartment, you thought it was your apartment?

13         PROSPECTIVE JUROR:  Yeah, yeah.  I had a few

14   drinks and I didn't get pressed charges, in the end.

15         THE COURT:  Did they drop the charges?

16         PROSPECTIVE JUROR:  Eventually.

17         THE COURT:  Were you booked on it?

18         PROSPECTIVE JUROR:  They gave me a ticket.  I

19   was handcuffed and stuff.

20         THE COURT:  So you were given a ticket for --

21         PROSPECTIVE JUROR:  Trespassing, but it

22   never --

23         THE COURT:  Where are you from?  Australia?

24         PROSPECTIVE JUROR:  England.

25         THE COURT:  England?

Voir Dire

1              PROSPECTIVE JUROR:  Yeah.

2              THE COURT:  How long ago was this?

3              PROSPECTIVE JUROR:  Last year.

4              THE COURT:  Anybody else?

5              All right.

6              First row, any of you ladies and gentlemen

7    related to, friendly with, interact with any law

8    enforcement agents or attorneys?

9              First row?

10             Ms. Gabriel?

11             PROSPECTIVE JUROR:  My son is a police

12   officer.

13             THE COURT:  Son's a police officer where?

14             PROSPECTIVE JUROR:  I think he just got

15   transferred to a precinct in Queens.  I'm not familiar

16   with it.

17             THE COURT:  Anyone else?

18             Yes, Mr. Feinstein?

19             PROSPECTIVE JUROR:  My father was a

20   prosecuting attorney for the Justice Department.

21             THE COURT:  Father works for the Attorney

22   General?

23             PROSPECTIVE JUROR:  Department of Justice in

24   Washington.

25             THE COURT:  U.S. Attorney.

Voir Dire

1          How long ago did he work there?

2          PROSPECTIVE JUROR:  Fifteen years ago.

3          THE COURT:  Is he retired?

4          PROSPECTIVE JUROR:  He's a musician now as a

5     profession.

6          THE COURT:  He's probably happier.

7          PROSPECTIVE JUROR:  Much.

8          THE COURT:  Okay.

9          Anyone else, first row?

10         No attorneys, no law enforcement agents?

11         Second row, anyone friendly with --

12         Ms. -- let's see, that's Ms. Clements?

13         PROSPECTIVE JUROR:  Yes.

14         My sister is a paralegal.

15         THE COURT:  What?

16         PROSPECTIVE JUROR:  My sister's a paralegal.

17         THE COURT:  Oh, your sister's a paralegal.

18         She works for a law firm?

19         PROSPECTIVE JUROR:  Yes, in Atlanta.  I'm not

20    familiar with the name, I'm sorry.

21         THE COURT:  Paralegal in an Atlanta law firm.

22         Do you know what kind of work they do?

23         PROSPECTIVE JUROR:  I don't know.

24         THE COURT:  Okay.

25         Anyone else?

Voir Dire

1              Mr. O'Connell?

2              PROSPECTIVE JUROR:  My dad is an attorney.  He

3    was a prosecutor for United States defense.

4              THE COURT:  Your dad is an attorney in

5    England?

6              PROSPECTIVE JUROR:  He's over here.

7              THE COURT:  Over here?

8              PROSPECTIVE JUROR:  Yeah.

9              THE COURT:  What kind of attorney?  Criminal

10   defense?

11             PROSPECTIVE JUROR:  Criminal defense.  He was

12   a prosecutor for --

13             THE COURT:  And who else raised their hand?

14             Mr. Healey, you're in law enforcement?

15             PROSPECTIVE JUROR:  I worked for law

16   enforcement.

17             THE COURT:  All right.

18             Anybody else?

19             Oh, yes, Mr. Nuciforo.

20             PROSPECTIVE JUROR:  My uncle was a detective

21   in the N.Y.P.D. and another uncle was a sergeant in the

22   L.A.P.D.

23             THE COURT:  So your uncle was a detective in

24   the N.Y.P.D. and you had another uncle?

25             PROSPECTIVE JUROR:  He was a sergeant in the

Voir Dire

1          L.A.P.D.

2                    THE COURT:  Los Angeles?

3                    PROSPECTIVE JUROR:  Yes.

4                    THE COURT:  All right.

5                    Mr. Givanchi, can you be fair and impartial in

6          this case?

7                    PROSPECTIVE JUROR:  I can, your Honor.

8                    THE COURT:  Thank you.

9                    Ms. Gray?

10                   PROSPECTIVE JUROR:  Yes.

11                   THE COURT:  Ms. Slobod?

12                   PROSPECTIVE JUROR:  Yes.

13                   THE COURT:  What?

14                   PROSPECTIVE JUROR:  Yes.

15                   THE COURT:  Yes.

16                   Ms. Shaffee?

17                   PROSPECTIVE JUROR:  Yes.

18                   THE COURT:  Ms. Sanchez?

19                   PROSPECTIVE JUROR:  Yes.

20                   THE COURT:  Ms. Gabriel?

21                   PROSPECTIVE JUROR:  Yes.

22                   THE COURT:  Ms. Dixon?

23                   PROSPECTIVE JUROR:  Yes.

24                   THE COURT:  And Ms. Jablonska?

25                   PROSPECTIVE JUROR:  Yes.

Voir Dire

1          THE COURT:  Ms. Conigliaro?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Mr. Feinstein?

4          PROSPECTIVE JUROR:  I can't say I could or

5     couldn't.

6          THE COURT:  What's the reason?

7          PROSPECTIVE JUROR:  Experience of serving as a

8     juror last time.

9          THE COURT:  You had some experience when you

10    were a juror last time?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  When was the last time you sat?

13         PROSPECTIVE JUROR:  About seven years ago.

14         THE COURT:  And there were problems with the

15    jury or what?

16         PROSPECTIVE JUROR:  The prosecutor shared

17    information with us after the verdict.

18         THE COURT:  That disturbed you?

19         PROSPECTIVE JUROR:  Yeah.  It made me --

20         THE COURT:  You are excused, Mr. Feinstein.

21         Fill the box.

22         THE CLERK:  Seat twenty will be Charles Curto,

23    C-U-R-T-O.

24         PROSPECTIVE JUROR:  Yes.

25         MR. WALENSKY:  Your Honor, may we approach for

Voir Dire

```
 1        a moment?

 2                    THE COURT:  Come up.

 3                    (Whereupon, a sidebar conference was held off

 4        the record.)

 5                    THE COURT:  Mr. Curto, your neighborhood?

 6                    PROSPECTIVE JUROR:  Bensonhurst.

 7                    THE COURT:  And you're familiar with the crime

 8        scene area?

 9                    PROSPECTIVE JUROR:  No.

10                    THE COURT:  Married, single, separated?

11                    PROSPECTIVE JUROR:  Single.

12                    THE COURT:  Your occupation?

13                    PROSPECTIVE JUROR:  I'm a manager at a Rite

14        Aid Pharmacy.

15                    THE COURT:  Okay.

16                    And have you ever served on a jury before?

17                    PROSPECTIVE JUROR:  No.

18                    THE COURT:  No.

19                    Have you ever been the victim of a crime, or

20        someone close to you?

21                    PROSPECTIVE JUROR:  There was this little hit

22        and run, I was on a bike and a car -- I filled out an

23        incident report, never went to the hospital.  I was

24        okay.  That was last summer.

25                    THE COURT:  You were hit and run?  You were
```

Voir Dire

1    hit on a bike?

2              PROSPECTIVE JUROR:  I was on a bike.

3              THE COURT:  And the car took off?

4              PROSPECTIVE JUROR:  Yeah.

5              THE COURT:  Okay.

6              Have you ever been accused, arrested or

7    convicted of a crime, or someone close to you?

8              PROSPECTIVE JUROR:  No, sir.

9              THE COURT:  And are you related to, interact

10   with, friendly with, any law enforcement agents or

11   attorneys?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  Can you be fair and impartial in

14   this case?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Thank you.

17             All right.

18             Ms. Fadaka, can you be fair and impartial in

19   this case?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Ms. Clements?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Mr. O'Reilly?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Ms. Prezeau?

Voir Dire

```
 1                    PROSPECTIVE JUROR:  I'm not sure.

 2                    THE COURT:  You are not sure?

 3                    PROSPECTIVE JUROR:  No.

 4                    THE COURT:  Why not?

 5                    PROSPECTIVE JUROR:  I will be too emotional.

 6                    THE COURT:  Is this related to your nephew?

 7                    PROSPECTIVE JUROR:  Yeah.

 8                    THE COURT:  You are excused.

 9                    Ms. Prezeau?

10                    I'm sorry.

11                    THE CLERK:  Thirteen, she's excused.

12                    THE COURT:  Fill the box.

13                    THE CLERK:  Seat number thirteen will be

14      Jonathan Crockett.

15                    Say "here" or "present."

16                    C-R-O-C-K-E-T-T.

17                    THE COURT:  Do you have any problem sitting on

18      this matter, Mr. Crockett?

19                    PROSPECTIVE JUROR:  No.

20                    THE COURT:  Mr. Crockett, your neighborhood?

21                    PROSPECTIVE JUROR:  Greenpoint.

22                    THE COURT:  And you are familiar with the

23      crime scene area?

24                    PROSPECTIVE JUROR:  I don't think so.

25                    THE COURT:  Okay.
```

Voir Dire

1          Married, single, separated, divorced?

2          PROSPECTIVE JUROR:  Engaged.

3          THE COURT:  Engaged.

4          And your occupation?

5          PROSPECTIVE JUROR:  Web developer.

6          THE COURT:  A what?

7          PROSPECTIVE JUROR:  Web developer.

8          THE COURT:  Web developer, okay.

9          And your significant other?

10          PROSPECTIVE JUROR:  She's a project manager

11     but currently unemployed.

12          THE COURT:  Okay.

13          Have you ever sat on a jury, another jury?

14          PROSPECTIVE JUROR:  No.

15          THE COURT:  Have you ever been the victim of a

16     crime, or someone close to you?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  What?

19          PROSPECTIVE JUROR:  Burglary.

20          THE COURT:  Your apartment or home?

21          PROSPECTIVE JUROR:  Apartment.  And --

22          THE COURT:  What else?

23          PROSPECTIVE JUROR:  My parents had their car

24     stolen and they had their house burglarized before.

25          THE COURT:  Have you ever been accused of,

Voir Dire

1     arrested for, or convicted of a crime?

2              PROSPECTIVE JUROR:  Yes.  When I was a

3     teenager, like criminal mischief.

4              THE COURT:  Did you go to Family Court?

5              PROSPECTIVE JUROR:  Yes.

6              THE COURT:  What did they do?  What happened

7     after you were arrested?

8              PROSPECTIVE JUROR:  Well, I eventually got an

9     ACD.

10             THE COURT:  Okay.

11             Are you related to, friendly with, interact

12    with any law enforcement agents or attorneys?

13             PROSPECTIVE JUROR:  Well, my uncle and my

14    cousin are both immigration lawyers.

15             I have two second cousins that are both police

16    officers in New Jersey.

17             THE COURT:  In New Jersey, two what?

18             PROSPECTIVE JUROR:  Police officers.

19             THE COURT:  What is their relationship?

20             PROSPECTIVE JUROR:  Second cousins.  Cousins.

21             THE COURT:  Okay.

22             Can you be fair and impartial in this case?

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Thank you.

25             Mr. Rossi?

Voir Dire

1    PROSPECTIVE JUROR:  Yes.

2    THE COURT:  Mr. Perrier?

3    PROSPECTIVE JUROR:  Yes.

4    THE COURT:  Ms. Olibris?

5    PROSPECTIVE JUROR:  My job might be a problem.

6    THE COURT:  What do you do?

7    PROSPECTIVE JUROR:  I am on vacation now.  I

8    am supposed to be returning to my job on the 1st and I

9    haven't told my supervisor.

10   THE COURT:  You don't have to worry about that

11   because they can't do anything.  You are on jury service

12   or participating in jury service, you cannot -- your job

13   cannot be affected.

14   You understand?

15   And we will inform them of that fact, all

16   right?

17   PROSPECTIVE JUROR:  Okay.

18   THE COURT:  Who do you work for?

19   PROSPECTIVE JUROR:  SCO Family Services.  I

20   work with children and families.

21   THE COURT:  My question to you, can you be

22   fair and impartial in this case?

23   PROSPECTIVE JUROR:  Yeah.

24   THE COURT:  Okay.

25   Thank you.

Voir Dire - People/Ms. Chu

1    Mr. O'Connell?

2    PROSPECTIVE JUROR:  Yep.

3    THE COURT:  Mr. Healey?

4    PROSPECTIVE JUROR:  Yes, sir.

5    THE COURT:  And Mr. Nuciforo?

6    PROSPECTIVE JUROR:  Yes.

7    THE COURT:  Okay.

8    All right, proceed.

9    MR. POVILL:  Is this a good time to take a

10   quick break?  Before questioning I just need five

11   minutes, if I could.

12   THE COURT:  Now or --

13   MR. POVILL:  Before I question.  I didn't know

14   if now was a better time.

15   THE COURT:  We'll see.

16   Go ahead.

17   MS. CHU:  Good morning, ladies and

18   gentlemen -- good afternoon.  I'm sorry, good afternoon,

19   ladies and gentlemen.  How are you guys doing?

20   I hope you guys were paying attention because

21   we are kind of going to go over the same things we spoke

22   about with the other panel about now.

23   So, again, no right or wrong answers, I just

24   want honest answers because I don't want you to think,

25   oh, she wants me to say this, then you say something

Voir Dire - People/Ms. Chu

1    that is not actually what you feel, then we will run

2    into a problem.  Okay.

3            Now, we spoke about the different types of

4    evidence, that there's physical evidence, there's

5    pictures, there's stuff you can hold in your hands.  But

6    there is also evidence that comes in the form of

7    testimony, meaning that if someone talks to you about

8    what it is that they saw, the question and answer of

9    that person is considered evidence as well.

10           Can you all accept that proposition?

11           Now, I know with the last panel I was talking

12   about how there is -- there are no eyewitnesses to the

13   actual occurrence.  You are not going to hear from one

14   witness who's going to say that I was there and I saw

15   the defendant stabbing the victim in this case, okay.

16           And I just want to ask you, can you think of a

17   reason why there might not be a witness to see this

18   happen?

19           Anybody think of a reason?

20           Ms. --

21           MR. WALENSKY:  Objection, your Honor.

22           MS. CHU:  Miss Sanchez, --

23           THE COURT:  I will allow it.

24           MS. CHU:  -- can you think of a reason why

25   there might not be a reason to what happened?

Voir Dire - People/Ms. Chu

1    PROSPECTIVE JUROR:  No.  I mean, no one was

2    around and no one was around.

3            MS. CHU:  It was only them two, right?

4            PROSPECTIVE JUROR:  Right.

5            MS. CHU:  So keeping that in mind -- now, I am

6    not saying that you are not going to hear any evidence

7    that shows, that the defendant did it.  In fact, I told

8    the panel before that most of the evidence that's going

9    to prove that the defendant did this crime is going to

10   come from the words that she said to different people.

11   All right.

12           Now, we talked a little bit about the -- you

13   know, someone who would speak to police, someone who was

14   a suspect of a crime speaking to police and the suspect

15   of a crime might be talking to someone else that is not

16   in law enforcement.

17           Do you think the relationship that the person

18   has with who they are talking to would affect the

19   reliability of what they're saying?

20           Do you understand what I am talking about, Mr.

21   Nuciforo?

22           PROSPECTIVE JUROR:  You mean the perception

23   would affect how they see things?

24           MS. CHU:  The relationship that they have with

25   the person they are talking to.

Voir Dire - People/Ms. Chu

1        PROSPECTIVE JUROR:  Potentially.

2        MS. CHU:  Mr. O'Connell, you think that would

3   have something to do with it?

4        PROSPECTIVE JUROR:  Yes.

5        MS. CHU:  Why?

6        PROSPECTIVE JUROR:  Why?

7        MS. CHU:  Why do you think it would have

8   something to do with whether or not they are truthful or

9   not, to the person they're talking to?

10        PROSPECTIVE JUROR:  Because they are separate

11   conversations, usually you're truthful to people that

12   you are conversing with.

13        MS. CHU:  People you're closer with?

14        PROSPECTIVE JUROR:  Yes.

15        MS. CHU:  Now, we had Mr. -- I believe it was

16   Mr. Jenkins on the last panel, he said that, you know --

17   I'm sorry, it was Ms. Webster who said that she would

18   have a problem, she would have a problem accepting the

19   premise that someone who's suspected of a crime would

20   actually want to talk to the police.  I believe other

21   people said I can see why they might want to talk to the

22   police.

23        Anybody here of the opinion that there is no

24   way that someone would want to talk to the police if

25   they are a suspect in a crime?

Voir Dire - People/Ms. Chu

1    Anybody who says, you know what, that can't
2    possibly happen?
3    Can you all accept that that possibly could
4    happen?
5    Yes?
6    We talked about, depending on who you're
7    talking to, the best light for the -- you might say
8    things that may be some half truths, maybe some whole
9    truths, maybe some lies.  Do you think that is a
10   possibility?
11   Now, do you think you are the kind of persons
12   or jurors who would be able to distinguish between when
13   someone's talking and saying something and being able to
14   figure out what part of their statement might be true,
15   what part might be false and you can compare and
16   contrast that to other evidence?
17   Do you think that you can do that if you're
18   selected in this case?
19   Yes?
20   Anybody here think they can't do it?
21   Ms. Jablonska, how do you feel about that?
22   PROSPECTIVE JUROR:  I don't know it.
23   MS. CHU:  You don't know it?
24   PROSPECTIVE JUROR:  I don't know.
25   MS. CHU:  Did you understand?  Do you

Voir Dire - People/Ms. Chu

1    understand what I am asking?

2              PROSPECTIVE JUROR:  Yes.

3              MS. CHU:  You don't know whether you would be

4    able --

5              PROSPECTIVE JUROR:  Yeah.

6              MS. CHU:  -- to distinguish?  You would have a

7    hard time?

8              PROSPECTIVE JUROR:  I don't know if I would

9    know if he is telling the truth, who's telling a lie, so

10   I would have to --

11             MS. CHU:  You would have to be in the

12   situation in order to decide?

13             PROSPECTIVE JUROR:  Yeah.

14             MS. CHU:  The only thing that I am asking you,

15   can you keep an open mind and wait and hear all the

16   evidence?

17             PROSPECTIVE JUROR:  Of course.

18             MS. CHU:  Then you can compare what you learn

19   from this witness proves that what they said here was

20   true, what I learned from this witness says maybe that

21   wasn't so true?  Can you do that in this case?

22             PROSPECTIVE JUROR:  Yes.

23             MS. CHU:  Now, I know, Ms. Slobod --

24             PROSPECTIVE JUROR:  I'm not sure.

25             MS. CHU:  I know you had mentioned earlier

Voir Dire - People/Ms. Chu

1   that you have somewhat of a language issue.  Have you

2   been able to understand what we are talking about here?

3            PROSPECTIVE JUROR:  It's problem.  Sometimes I

4   understand, sometimes no.

5            MS. CHU:  Sometimes no?

6            PROSPECTIVE JUROR:  Depends who's speaking.

7            MS. CHU:  Now, of everything that has been

8   discussed up to this time, that I am talking to you now,

9   what percentage do you think you understood?

10           PROSPECTIVE JUROR:  Depends.

11           MS. CHU:  Everything that you've heard so far?

12           PROSPECTIVE JUROR:  No.

13           MS. CHU:  So would it be like eighty percent,

14  seventy percent, ninety percent?

15           PROSPECTIVE JUROR:  Twenty, maybe, percent.

16           MS. CHU:  Twenty percent?

17           PROSPECTIVE JUROR:  I work with ethnic group.

18  I don't use English in my work.

19           MS. CHU:  So you think that your language

20  issues would make it so you wouldn't be a fair juror in

21  this case?  Is that what you are trying to say?

22           PROSPECTIVE JUROR:  I don't understand.

23           MS. CHU:  You don't understand, okay.

24           Thank you very much for being honest.

25           Is there anyone else here who hasn't

Voir Dire - People/Ms. Chu

1    understood what's been going on up to this point?

2         Okay.

3         Now, Mr. Givanchi, are you the kind of person

4    that you could distinguish or compare and contrast all

5    the evidence you hear in this case to decide what parts

6    might be the truth and what parts might be false?

7         PROSPECTIVE JUROR:  I believe so.

8         MS. CHU:  Ms. Gray, you can do that?

9         PROSPECTIVE JUROR:  Yes.

10        MS. CHU:  Mr. Healey, will you be able to do

11   that?

12        PROSPECTIVE JUROR:  Yes.

13        MS. CHU:  Now, we talked about the fact that

14   there's some sort of scientific evidence that you're

15   going to see in this case, there's DNA in this case.

16   You are not actually going to have a videotape of the

17   crime actually happening.  I know that we get to watch

18   things, so many things on TV, you get so much of a

19   different vantage point than you would in a real trial.

20        Is there anyone here that says I need that

21   kind of evidence, I can't rely on someone else's word?

22        Some people are, if I wasn't there I can't

23   tell you what happened, no one can tell me what

24   happened?

25        Does anyone here feel as though without that

Voir Dire - People/Ms. Chu

1    type of evidence you would not be able to render a

2    decision in this case?

3              Everybody okay with the fact that we don't

4    have fingerprints, there's no knife, no knife was ever

5    recovered and no videotape of the actual crime?

6              With all the surveillance that goes on, you

7    hear about it on TV, we don't have that here, I am being

8    honest with you from the beginning.  I need to know

9    whether or not you would have a problem.  Like if you

10   are convinced from other evidence that the defendant was

11   guilty, would you be able to still vote them guilty even

12   though you might want something else?

13             Do you understand what I'm asking, Ms. Dixon?

14             PROSPECTIVE JUROR:  I understand.

15             MS. CHU:  Are you okay with that?

16             PROSPECTIVE JUROR:  Yes.

17             MS. CHU:  Anybody here have a problem with

18   what types of evidence you're going to see versus what

19   type you are not going to see in this case?

20             Mr. O'Reilly?

21             PROSPECTIVE JUROR:  I mean, it's tough, not

22   having been a juror before, not being in the situation.

23   I mean, I understand everything you are saying.  I guess

24   it's kind of a situational thing.

25             MS. CHU:  I appreciate that.

Voir Dire - People/Ms. Chu

1           What I am asking, I just don't want you to

2      close your mind, you know what, I couldn't, there wasn't

3      a video, there's no way of telling the truth or not.

4      Then or other people say, you know what, I don't need a

5      videotape, if someone tells me what happened there,

6      someone tells me what happens in the middle, someone

7      tells me what happens after, I take all of that into

8      consideration, you can do that, right?

9           Ms. Fadaka, you're nodding your head.  You

10     will be good with that?

11          PROSPECTIVE JUROR:  Yes.

12          MS. CHU:  How about you, Ms. Clements?

13          PROSPECTIVE JUROR:  Yes.

14          MS. CHU:  We talked a little about sympathy,

15     you kind of look at the defendant, she's a young woman.

16     Is there anyone here that feels, let's say you're

17     selected as jurors and you listen to all the evidence

18     and all the evidence in the case convinces you that I've

19     done my job and I've proven to you beyond a reasonable

20     doubt that the defendant is guilty.  Is there anyone

21     here that's going to go back into the jury room and say,

22     you know what, Ms. Chu did her job, she did what the

23     Judge requires her to but something about her, I feel

24     sorry for her, she reminds me of a friend, she reminds

25     me of a family member?

Voir Dire - People/Ms. Chu

1          Anyone here that thinks that kind of feeling

2     would prevent you from rendering a decision, even if

3     you're convinced beyond a reasonable doubt that she is

4     guilty?

5          Is there anyone here that feels that way, that

6     thinks how they feel about the defendant might affect

7     their ability to render a decision according to the

8     evidence only?

9          Everybody.

10         All right.

11         THE COURT:  Thank you, Ms. Chu.

12         MS. CHU:  Okay.

13         THE COURT:  Go ahead.

14         You gotta go.  Come on.

15         MR. POVILL:  Good afternoon, ladies and

16    gentlemen.

17         My name is Josh Povill.

18         I apologize.  I was requesting five minutes

19    just to use the bathroom, but we'll do it.

20         THE COURT:  You want five minutes to go to the

21    bathroom?

22         MR. POVILL:  That was all.

23         THE COURT:  Go to the bathroom.  We'll take a

24    break.

25         MR. POVILL:  That's okay.

Voir Dire - Defendant/Mr. Povill

1            THE COURT:  Yes.

2            Ladies and gentlemen, at this time we are

3    going to take a recess, five minutes.  Step outside.

4    Bring all your belongings with you.

5            MR. POVILL:  Thank you, your Honor.

6            THE COURT:  Do not discuss the case amongst

7    yourselves or with anyone else.

8            (Whereupon, the panel of prospective jurors

9    exited the courtroom.)

10            THE COURT:  All right, same instructions for

11    the other jurors.  Take five minutes and we will be

12    right back, all right.

13            (Whereupon, the panel of prospective jurors

14    exited the courtroom.)

15            THE COURT:  You may leave.  Take your

16    belongings.

17            (Whereupon, a brief recess was held.)

18            COURT OFFICER:  Ready for the panel, your

19    Honor?

20            THE COURT:  Yes.

21            COURT OFFICER:  Panel entering.

22            (Whereupon, the panel of prospective jurors

23    entered the courtroom.)

24            COURT OFFICER:  Take the same seats that you

25    were seated in before.

mc

Voir Dire - Defendant/Mr. Povill

1          THE COURT:  All right, we will proceed at this

2     time.

3          MR. POVILL:  Thank you, your Honor.

4          Good afternoon again, ladies and gentlemen.

5          We've spoken a little bit about burdens,

6     right.  The prosecutor spoke about what her burden is

7     here, that she needs to prove Ms. Wisdom guilty beyond a

8     reasonable doubt, and she asked that you not hold her to

9     any higher burden.  And I want to talk a little bit

10    about the burden, right, what that means, to prove the

11    guilt.

12         Of paramount concern in our system of justice

13    is the protection of the innocent.  That is why the

14    burden is so high.  So, we already talked about the fact

15    that the government always has the burden of proof,

16    right, it never shifts, it never moves.

17         Does everybody understand that?

18         Does anybody have a problem with that?

19         I won't be offended.

20         So you can feel free to speak the truth here,

21    that's the only way we get to the answers that we need.

22         And that burden, again, it's an exceedingly

23    high one.

24         MS. CHU:  Objection to it being exceedingly

25    high, your Honor.

Voir Dire - Defendant/Mr. Povill

1    MR. POVILL:  I won't characterize, your Honor.

2    THE COURT:  Do me a favor, don't.

3    MR. POVILL:  It's not a mere constitutional

4    formality, though.  This is how the system works.  This

5    is how we make sure that the innocent don't get

6    punished, and because we all know that's the greatest

7    travesty that can happen.  So that is why you must be

8    certain it must be beyond a reasonable doubt before you

9    can convict, okay?

10    It's weird, right, you'll be asked at the end

11    of this to render a verdict but you won't be asked is

12    Ms. Wisdom guilty or innocent.  That's not the question

13    that you're going to be asked.  You will be asked, is it

14    guilty or not guilty, meaning anything other than guilty

15    beyond any reasonable doubt.

16    Now, if the government hasn't made its case

17    beyond a reasonable doubt, then the system simply is too

18    concerned that she may be innocent to let you convict

19    her.

20    MS. CHU:  Objection.  Where is this going?

21    THE COURT:  Mr. Povill, go on to something

22    else, all right, because the law is something that I

23    will be instructing them on and this has been aired

24    already, so go on to something else.

25    MR. POVILL:  Yes, your Honor.

Voir Dire - Defendant/Mr. Povill

1          Let's talk about what you'll learn here.

2          We're all human, right?

3          We all want to know exactly what happened in

4     this instance.

5          Now, that's perfectly reasonable.  But know

6     this, you may not know exactly what happened.  You may

7     not know everything that you want to know at the end of

8     this trial.  I am going to apologize right now for that,

9     but there's nothing I can do about it.  It's

10    frustrating, I understand.  It's not my job, it's not

11    defense's job to tell you the whole story and I don't

12    have the ability or the resources to do that.

13          MS. CHU:  Objection, your Honor.  This sounds

14    like an opening.

15          MR. WALENSKY:  Mr. Povill.

16          (Whereupon, there was a brief pause in the

17    proceedings.)

18          THE COURT:  Objection sustained.

19          Proceed.

20          MR. POVILL:  The question that I want to ask

21    you is, can you all appreciate and understand that if

22    you have questions at the end, if you haven't been given

23    all the answers you need to reach your verdict, then you

24    must find the defendant not guilty?

25          MS. CHU:  Objection.  It's not their burden.

Voir Dire - Defendant/Mr. Povill

1          MR. POVILL:  I don't believe I

2     mischaracterized, your Honor.

3          MR. WALENSKY:  Mr. Povill.

4          THE COURT:  The fact is, ladies and gentlemen,

5     if you have a reasonable doubt, I will define for you,

6     as to the defendant's guilt, you must find him not

7     guilty.  If you find that the People have proven his

8     guilt beyond a reasonable doubt, then you must find him

9     guilty.  But the fact is, I'll explain to you at the

10    close of the case what reasonable doubt is, okay.

11          Proceed.

12          The next question I have of you, will you all

13    follow the law as I give it to you respecting reasonable

14    doubt?

15          Go on to something else.

16          MR. POVILL:  Does anybody have a problem

17    holding the People to that burden, knowing that they --

18    the answers don't come from the defense side

19    necessarily, they come from the government?

20          Does anybody have a problem with that or find

21    that difficult, they're troubled by that?

22          PROSPECTIVE JUROR:  I would think my -- I

23    understand it is a one-way system and you have to

24    defend.  I also think to myself that if I was put in

25    that situation and I didn't do something, I would have a

1    lot to say in that sense.  But I understand why you

2    wouldn't because you might say something wrong or

3    something could turn around against you.  But I see -- I

4    wouldn't -- I'm not one hundred percent but I would like

5    to see you saying something, defending yourself.

6              MR. POVILL:  I understand.

7              While you're sitting in this room and sitting

8    in those chairs the burden is on the government.  Ms.

9    Wisdom sits innocent over there, silent and innocent.

10             PROSPECTIVE JUROR:  I can see that.

11             THE COURT:  Mr. Povill, go on to something

12   else.  This has been explored ad nauseam.  Go ahead.  If

13   you got any questions of this jury, ask.

14             MR. POVILL:  Yes.

15             Let's talk about something else.

16             Let's talk about fear.

17             There's going to be a lot of evidence that

18   comes out in this case, I suspect, and one of the things

19   that you'll be asked, likely be asked to consider is

20   whether someone reacts reasonably when they're placed in

21   fear.

22             Now, has everybody in this box been placed in

23   fear at some time in their life?  Has anyone never felt

24   fear, real fear?

25             PROSPECTIVE JUROR:  Yes.

Voir Dire - Defendant/Mr. Povill

1           MR. POVILL:  I know there's a lot of people in

2      this box who have been the victim of crimes and you know

3      that, the fear that I'm talking about.

4           Now, when you feel that -- let's see.  Mr.

5      Rossi?

6           PROSPECTIVE JUROR:  Yes.

7           MR. POVILL:  You were robbed at gunpoint

8      fifteen years ago?

9           PROSPECTIVE JUROR:  Yes.

10          MR. POVILL:  Do you remember that?

11          PROSPECTIVE JUROR:  Yes, I do.

12          MR. POVILL:  I'm quite certain you do, yeah.

13          Do you remember how you felt?  Do you remember

14     the fear?

15          PROSPECTIVE JUROR:  Yes, I do.

16          MR. POVILL:  What I'm going to ask is, the

17     Judge will tell you that what you bring back into the

18     jury room is your common sense, it's your common

19     experience, that fear, that's part of it.  That's how

20     you judge what's reasonable, right?

21          MS. CHU:  Objection, your Honor.

22          THE COURT:  Sustained.

23          MR. POVILL:  Mr. Healey, you were robbed at

24     gunpoint?

25          PROSPECTIVE JUROR:  Yes.

Voir Dire - Defendant/Mr. Povill

1           MR. POVILL:  Do you recall how that felt?

2           PROSPECTIVE JUROR:  Yes, I do.

3           MR. POVILL:  Did you want to react when you

4     were robbed at gunpoint?

5           MS. CHU:  Objection, your Honor.

6           THE COURT:  Sustained.

7           MR. POVILL:  Mr. Givanchi?

8           PROSPECTIVE JUROR:  That is correct.

9           MR. POVILL:  Feel free to tell me that you

10    don't want to talk about it, but I know you mentioned

11    something happened to you and you were a victim of a

12    crime and I -- I would like to know, if you are able, if

13    you can tell me a little bit more about what happened.

14          PROSPECTIVE JUROR:  I was working with another

15    male who was much bigger than I was and that's what --

16    that was what happened.  But it was long enough ago to

17    be able to process it.

18          MR. POVILL:  I appreciate that.

19          If there's discussion of a sexual assault

20    nature in this case, you think that you will be able to

21    sit and listen to that evidence fairly?

22          PROSPECTIVE JUROR:  Absolutely.

23          MR. POVILL:  Thank you, Mr. Givanchi, I

24    appreciate it.

25          PROSPECTIVE JUROR:  You're welcome.

Voir Dire - Defendant/Mr. Povill

1          MR. POVILL:  Ms. Shaffee?

2          PROSPECTIVE JUROR:  Yes, sir.

3          MR. POVILL:  You said you sat on a civil jury

4    previously, is that correct?

5          PROSPECTIVE JUROR:  It was robbery.  I don't

6    know if it's civil or not.  That's not considered civil,

7    right?

8          MR. POVILL:  That is probably a criminal

9    case.

10         PROSPECTIVE JUROR:  I made a mistake there.

11         MR. POVILL:  And did you reach a verdict?

12         PROSPECTIVE JUROR:  Yeah.

13         THE COURT:  Don't tell us what your verdict

14   was.

15         PROSPECTIVE JUROR:  Yeah, we did.

16         MR. POVILL:  Anything about that experience

17   that you feel affects you now today as you sit here?

18         PROSPECTIVE JUROR:  No.

19         MR. POVILL:  You feel okay about how the

20   system works?

21         PROSPECTIVE JUROR:  Sure.

22         MR. POVILL:  Thank you.

23         THE COURT:  Ms. Shaffee, you mentioned

24   something about the Ramadan fast, is that right?

25         PROSPECTIVE JUROR:  Yeah.

mc

Voir Dire - Defendant/Mr. Povill

1              THE COURT:  Let me ask you this.

2              Are you still working now?

3              PROSPECTIVE JUROR:  No, I'm retired.

4              THE COURT:  When you were working, did you

5      fast?

6              PROSPECTIVE JUROR:  Yeah.

7              THE COURT:  For Ramadan?

8              PROSPECTIVE JUROR:  When I was younger.

9              THE COURT:  And did you go to work?

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  So?

12             PROSPECTIVE JUROR:  When I was younger.

13             THE COURT:  So?

14             PROSPECTIVE JUROR:  Much.

15             THE COURT:  Are you saying --

16             PROSPECTIVE JUROR:  It's harder when you get

17     older.

18             THE COURT:  Fasting is hard to begin with.  I

19     understand.

20             The real question is, is the fasting while

21     being on jury going to interfere with your ability to be

22     fair and impartial?

23             That's the question.

24             PROSPECTIVE JUROR:  Well, I don't know.  The

25     reason why I ask, because we have to eat like before

mc

Voir Dire - Defendant/Mr. Povill

1    sunrise.  It's like fourteen or sixteen hours and we

2    break the fast.  We don't eat or drink during the day.

3              THE COURT:  Right.

4              PROSPECTIVE JUROR:  During the day we are

5    supposed to pray.  Also, it's a holy month.

6              THE COURT:  I understand that.

7              PROSPECTIVE JUROR:  This is why.

8              THE COURT:  When you say you have to pray,

9    where would you pray?  Would you have to go to a temple,

10   or not?

11             PROSPECTIVE JUROR:  No, no, at home.  At home.

12             Sometimes you go to the temple but most of the

13   times at home.

14             THE COURT:  You understand that you are not

15   going to be --

16             PROSPECTIVE JUROR:  I can't fast and come

17   here.

18             THE COURT:  You can't fast?

19             PROSPECTIVE JUROR:  I can't do that, no.

20             THE COURT:  Okay.

21             PROSPECTIVE JUROR:  I can't.

22             THE COURT:  Do you have any other questions?

23             MR. POVILL:  Yes, just one, your Honor.

24             THE COURT:  Go ahead.

25             MR. POVILL:  Ms. Gabriel, do I have that

Voir Dire - Defendant/Mr. Povill

1      right?

2              PROSPECTIVE JUROR:  Yes.

3              MR. POVILL:  When you came in a little late, I

4      didn't know what you did for work, ma'am.

5              PROSPECTIVE JUROR:  What I did for work?  I am

6      a medical assistant.

7              MR. POVILL:  Are you still working?

8              PROSPECTIVE JUROR:  Yes, I am.

9              MR. POVILL:  That's wonderful.

10             Thank you.

11             THE COURT:  All right.

12             Thank you.

13             MR. POVILL:  Thank you everybody.

14             THE COURT:  You know what, ladies and

15     gentlemen, we are going to adjourn at this particular

16     time until Monday, all right, so do not discuss the case

17     amongst yourselves or with anyone else.

18             You don't have to appear tomorrow.  Monday be

19     here at ten o'clock, no later, and then at that time

20     we'll finish with the voir dire.  So, be here at ten

21     o'clock and do not discuss the case amongst yourselves

22     or with anyone else.  Do not visit the place where the

23     alleged crimes occurred.  Have no contact with any of

24     the parties involved in this matter.  Do not resort to

25     utilizing any digital electronic devices for the purpose

mc

Proceeding

1    of obtaining any information about this case or talking

2    to anybody about this case.

3              So, you are excused.  Ten o'clock outside the

4    courtroom.  Ten o'clock.

5              Just wait for someone to -- the Court Officer

6    to let you in.

7              You are excused right now, so you can vacate.

8              (Whereupon, the panel of prospective jurors

9    exited the courtroom.)

10             THE COURT:  Now, those ladies and gentlemen

11   who are in the audience, you are to return here on

12   Monday at ten o'clock.

13             Do not discuss the case amongst yourselves or

14   with anyone else.  Do not visit the place where the

15   alleged crimes occurred.  Have no contact with any of

16   the parties involved in this matter.  And, again, do not

17   resort to utilizing any electronic digital devices.

18             Now I am going to tell you, I am going to be

19   quite frank with all of you, if you fail to show up on

20   Monday I'll send a marshal out to bring you in, okay.

21             So the fact that we have this delay should not

22   give you any right or excuse not to come here on Monday.

23             Okay.

24             I hope you enjoy the weekend and I hope you

25   are here on Monday.

mc

Proceeding

1                    You are excused.

2                    COURT OFFICER:  Step out.

3                    THE COURT:  You can step out at this time.

4                    THE CLERK:  She said you can step out.

5                    THE COURT:  You can step out at this time.

6                    THE CLERK:  Step out, sir.

7                    SERGEANT:  Talk to the Officer outside,

8           please.

9                    (Whereupon, the panel of prospective jurors

10          exited the courtroom.)

11                   THE COURT:  All right, Monday, ten o'clock.

12                   MS. CHU:  I should anticipate witnesses for

13          Monday afternoon?

14                   THE COURT:  What?

15                   MS. CHU:  I should anticipate having witnesses

16          available for Monday afternoon?

17                   THE COURT:  If we can get the jury.  We only

18          got three.

19                   (Whereupon, the trial was adjourned to June

20          30, 2014.)
            **********************************
21          CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF
            THE ORIGINAL STENOGRAPHIC MINUTES TAKEN OF THIS
22          PROCEEDING.

23

24

25          _____
            MARLIN CASSIDY
            Senior Court Reporter

                                                              mc

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS:  CRIMINAL TERM:  PART 2
 2   ------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,
 3                                              Indictment No.:
               -against-                        6615/2012
 4                                              (Trial)
     ATARA WISDOM,
 5
                         Defendant.
 6   ------------------------------------------X

 7
                              Supreme Courthouse
 8                            320 Jay Street
                              Brooklyn, New York 11201
 9                            June 30, 2014

10
     B E F O R E:
11
                    THE HONORABLE ALBERT TOMEI, JUSTICE
12

13   A P P E A R A N C E S:

14          HON. KENNETH P. THOMPSON, ESQ.
                 District Attorney - Kings County
15               350 Jay Street
                 Brooklyn, New York  11201
16          BY:  PHYLLIS CHU, ESQ.
                 Assistant District Attorney
17

18          DAVID WALENSKY, ESQ.
                 Attorney for Defendant
19               910 Stuart Avenue
                 Mamaroneck, New York
20          BY:  DAVID WALENSKY, ESQ.
                      - and -
21               JOSHUA POVILL, ESQ.

22

23

24
                         MARLIN CASSIDY
25                       Senior Court Reporter
```

mc

Proceeding

1              (Whereupon, the following took place in open

2       court:)

3              THE CLERK:  Your Honor, this is calendar

4       number one, case on trial, Indictment 6615 of 2012,

5       People versus Atara Wisdom.

6              Defendant is incarcerated, produced, before

7       the Court, present with his attorney, appearances are

8       the same -- with her attorney.

9              THE COURT:  There is an application here?

10             MS. CHU:  Yes, your Honor.

11             There is a 911 call that we have that was

12      placed by our deceased on November the 29th of 2011.

13      We'd like to have that deemed admissible on our direct

14      case to show --

15             THE COURT:  What year was that, 2000 and what?

16             MS. CHU:  2011.  November 29th, 2011.

17             It was about 12:00 something in the morning on

18      November 29th.  I have a memorandum of law that I

19      prepared.

20             THE COURT:  Well, what's the call?

21             MS. CHU:  The call, substance of the call,

22      is --

23             THE COURT:  Who is it from?

24             MS. CHU:  It's from the victim, I got this

25      girl in my house and I don't know what's wrong with her,

                                                           mc

Proceeding

1    she's acting all crazy and I want her out of my house.

2    The phone call gets disconnected.  Because it's not a

3    landline, it's an cellphone, they are not able to get

4    anything as far as location or where to go, so police

5    are unable to investigate it any further.

6         We have this on his phone records, saying he

7    called 911.  At this time we actually have the actual

8    tape, 911 tape, and the People would argue that it is

9    admissible under the present sense impression and the

10   excited utterance exception to the hearsay rule, and we

11   have the memorandum of law that is -- that supports the

12   People's position.

13        THE COURT:  What's the response?

14        MR. WALENSKY:  Your Honor, there are two

15   prongs to this one, is it admissible under the excited

16   utterance, does the prejudice far outweigh the probative

17   value.  During the evening of this call we actually

18   don't know when this man is killed.  Time of death was

19   never set, the date itself was never set.  We don't know

20   what it refers to, whether it refers to this incident or

21   something else, and so absent any background or

22   testimony, it is just this man calling.  We don't know

23   if there's an upsetment, an intervening event, things

24   calm down and something happened.

25        It's significant, there's nothing on the call

mc

Proceeding

1    like look out or ouch or hearing anything, it

2    essentially just cuts off with that and --

3              THE COURT:  Do you have the records?

4              MS. CHU:  I do have the record.

5              THE COURT:  Do the records show --

6              MS. CHU:  The cellphone shows that he makes a

7    911 call at a little bit after midnight on November the

8    29th and subsequently, after he makes that 911 call, the

9    phone numbers that are called by my victim's phone are

10   consistent with the defendant's cellphone numbers that

11   she calls.  So, we know that there's a transition so --

12   'cause we have a witness that she makes third-party

13   admissions to who says she calls from the victim's phone

14   so when he answers the phone he thinks it's the victim,

15   it's actually the defendant calling him.  That is where

16   the third-party admission comes in.

17             We will have --

18             MR. WALENSKY:  No.

19             MS. CHU:  -- phone records that corroborate

20   that his phone called our witness's phone and then

21   subsequent to that the pattern of phones calls that are

22   made by my victim's phone mirror what the defendant's

23   pattern of phone calls are from her cellphone.

24             MR. WALENSKY:  What was said --

25             MS. CHU:  In addition to that, your Honor, I'm

mc

Proceeding

1    sorry, the ME will be able to corroborate that the time

2    of death, although they can't pinpoint an exact time,

3    that it's consistent, that November 29th, 2011 is

4    consistent with the manner of death as far as the amount

5    of decay, that the deceased had been dead for quite some

6    time, there's mummification, part of th head and body,

7    he had maggots.  Everything is consistent.  He had

8    maggots in him.

9         THE COURT:  How long was he in the apartment

10   before they discovered him?

11        If we presume that the 911 call was on

12   November 29th, 2011, was when everything occurred, he

13   wasn't found until January 3rd, 2012, what is her

14   admission?

15        MS. CHU:  She was living with him and that she

16   was giving him money, he also wanted to have sex with

17   her, she wasn't going to do that, so she basically, in

18   her statements to the police, said that he tried to rape

19   her so she had to defend herself and she stabbed him and

20   then left.

21        THE COURT:  Does she give the time or date?

22        MS. CHU:  She doesn't say the time or the

23   date.  But I know we have family members and the last

24   time that they saw him was around Thanksgiving, that the

25   29th would have been right after that Thanksgiving.

170

Proceeding

1            MR. WALENSKY:  She tells the police in the

2       video statement, the Court will see that, she thinks she

3       woke up at about 2:00 or 3:00 and he's grabbing her,

4       he's trying -- this is when he is assaulting her, around

5       2:00 in the morning, she is not really sure, she's not

6       looking at a watch.  We believe that, again, the

7       prejudice far outweighs the probative value of this

8       because we have -- it's just a bald statement, we have

9       nothing else, and there is nothing else on this.

10           As I said, there is no notice of any

11      intervening actions that could have been occurring.  It

12      may have stopped, she may not have been crazy at 12:30,

13      stops, goes to sleep and picks up then.

14           THE COURT:  I am going to allow it under

15      present sense impression.

16           MR. WALENSKY:  Note my exception.

17           THE COURT:  Okay.

18           What else?  Is that it?  Is that it?

19           MS. CHU:  That is all for me.

20           THE CLERK:  I think we are up to the lawyers.

21           THE COURT:  Yes, the lawyers.

22           (Whereupon, there was a brief pause in the

23      proceedings.)

24           MR. WALENSKY:  Your Honor, if we have another

25      panel, could I request that you remind them, if there's

mc

Proceeding

1    something personal, that they can come and talk to you,

2    because we had two people talking about rapes in front

3    of everybody and I think it was very uncomfortable.

4              THE COURT:  I'll tell them, if they have

5    something they don't want to express in front of the

6    other jurors, that they can.

7              What's the story?

8              THE CLERK:  Two out of the three are here.

9              THE COURT:  Who's missing?

10             THE CLERK:  Number one.

11             THE COURT:  Givanchi?

12             THE CLERK:  Yes.

13             THE COURT:  He's missing?

14             THE CLERK:  Yes.

15             THE COURT:  Bring them in.

16             I'll fill the box, if he doesn't come in.

17             MS. CHU:  We are up to challenges.

18             THE COURT:  We didn't do challenges?

19             MS. CHU:  We already did the questioning.  We

20   already spoke to them.

21             THE COURT:  You spoke to them already?

22             MS. CHU:  We spoke to them.

23             MR. WALENSKY:  Yes.

24             THE COURT:  I don't think so.

25             MR. POVILL:  Yes, your Honor.

Voir Dire

1          MS. SCHWARTZKOPF:  Yes, I have notes from the

2     attorneys.

3               THE CLERK:  We are up to the challenges.

4               MS. CHU:  I believe co-counsel did the voir

5     dire.

6               THE COURT:  I know he did.

7               MS. CHU:  That was the second time.

8               MS. SCHWARTZKOPF:  He was the last person.

9               We have to do the challenges.

10              THE COURT:  What do we have, three?

11              First nine, cause?

12              MS. CHU:  Yes, your Honor.  Juror number

13     three, Ms. Slobod, I don't believe that she has a full

14     grasp of the English language such that she would be a

15     juror for this case.

16              MR. WALENSKY:  I would agree with that, your

17     Honor.

18              THE COURT:  She's out for cause.

19              All right, any others?

20              MS. CHU:  You said up to nine, right?

21              THE COURT:  Yes.

22              MS. CHU:  No, I have no others.

23              THE COURT:  Cause, defense?

24              MR. WALENSKY:  Number one, Mr. Givanchi.

25              THE COURT:  What is the cause?

Voir Dire

1              MR. WALENSKY:  Sexual assault, and his

2      difficulties with it, and the nature of this case, I

3      mean, he said he was raped by another man.  I think he

4      said it was very traumatic.

5              MS. CHU:  I would consent to that, your

6      Honor.

7              MR. WALENSKY:  Consent.

8              THE COURT:  All right, he is out for cause.

9              THE CLERK:  Is that on consent?

10             MR. WALENSKY:  Consent.

11             MS. CHU:  Yes.

12             THE COURT:  Any others?

13             MR. WALENSKY:  Number four, Ms. Shaffee, she

14     couldn't fast and sit, she is getting old, it's hard for

15     her to concentrate and do it.

16             MS. CHU:  I would consent.

17             MR. WALENSKY:  Number four.

18             She was quite clear, she wouldn't be able to

19     do it.

20             THE COURT:  She said she's Muslim, right?

21             MS. SCHWARTZKOPF:  Cannot fast and come to

22     court.

23             THE COURT:  She is out for cause.

24             Any others?

25             MR. WALENSKY:  No, your Honor.

Voir Dire

```
 1              THE COURT:  All right.

 2              Perempt?

 3              MS. CHU:  Up to nine?

 4              THE COURT:  Well, it's not up to nine.

 5    It's --

 6              MS. SCHWARTZKOPF:  Yes.

 7              THE COURT:  I'm sorry, yes.

 8              MS. CHU:  No perempts by the People.

 9              THE COURT:  Defense?

10              MR. WALENSKY:  Number seven.

11              THE COURT:  Nuciforo?

12              MR. WALENSKY:  Nuciforo, yes.

13              THE COURT:  Who else?

14              MR. WALENSKY:  Number eight, Mr. Healey.

15              And number nine, Mr. O'Connell.

16              THE CLERK:  Your Honor, juror number four is

17    Cleo Gray.

18              Juror five is Elizabeth Sanchez.

19              THE COURT:  Hold on one minute.  Hold on.

20              (Whereupon, there was a brief pause in the

21    proceedings.)

22              THE COURT:  Sanchez is five?

23              THE CLERK:  Yes.

24              THE COURT:  Okay.                           .

25              Is that it?
```

Voir Dire

1           THE CLERK:  Juror number six is Margaret

2      Gabriel.

3           THE COURT:  She's number twelve.

4           THE CLERK:  Seat six is now juror six, Judge.

5           MS. SCHWARTZKOPF:  Margaret Gabriel is in seat

6      six.

7           THE CLERK:  She's also juror six.

8           THE COURT:  So she's selected.

9           THE CLERK:  So the next six, Olibris, Perrier,

10     Rossi, Crockett.

11          MS. CHU:  Dixon and O'Reilly.

12          THE COURT:  Dixon and O'Reilly.

13          Cause?

14          MS. CHU:  Your Honor, I would challenge number

15     ten for cause.  She said something about she's on

16     vacation right now, she has to return on the 1st.  She

17     said that she didn't -- she says she thought it would be

18     a problem for her to be out of work.

19          THE COURT:  Denied.

20          Cause?

21          MR. WALENSKY:  We're through sixteen?

22          MS. SCHWARTZKOPF:  Fifteen.

23          MR. WALENSKY:  Nothing for cause.

24          THE COURT:  Perempt?

25          MS. CHU:  People challenge juror number ten.

Voir Dire

1          Juror number fourteen.

2          THE COURT:  Dixon?

3          MS. CHU:  Yes.

4          And that's it.

5          THE COURT:  Defendant?

6          MR. WALENSKY:  Number eleven.

7          Number --

8          THE CLERK:  Whoa.

9          THE COURT:  Go ahead.

10         MR. WALENSKY:  Number fifteen.

11         THE COURT:  Is that it?

12         MR. WALENSKY:  One moment.

13         (Whereupon, there was a brief pause in the

14   proceedings.)

15         MR. WALENSKY:  That's it, your Honor.

16         THE CLERK:  Juror number seven is Samuel

17   Rossi.

18         Juror number eight is Jonathan Crockett.

19         THE COURT:  All right.

20         Sixteen -- sixteen, seventeen and nineteen,

21   cause?

22         MS. CHU:  None for the People.

23         THE COURT:  Cause?

24         MR. WALENSKY:  I'm not sure about Ms.

25   Jablonska, language.

mc

Voir Dire

1              THE COURT:  Not sure why?

2              MR. WALENSKY:  I don't know that she has a

3     good enough facility of language.

4              THE COURT:  Denied.

5              Perempt?

6              MS. CHU:  People challenge juror number

7     twenty.

8              MS. SCHWARTZKOPF:  We are not up to twenty.

9              THE CLERK:  We are not up to twenty.

10             MS. CHU:  Oops.

11             THE CLERK:  Sixteen to nineteen.

12             MS. CHU:  Up to nineteen, no.

13             THE COURT:  Perempt?

14             MR. WALENSKY:  Number sixteen.

15             Number --

16             THE COURT:  Who?  Number sixteen?

17             MR. WALENSKY:  Yes.

18             Number eighteen.

19             That's all.

20             THE CLERK:  Juror number nine is Deanna

21     Clements.

22             Juror ten is Blessing Fadaka.

23             THE COURT:  Twenty, cause?

24             MS. CHU:  No.

25             THE COURT:  Cause?

mc

Voir Dire

1          MR. WALENSKY:  No.

2          THE COURT:  Perempt?

3          MS. CHU:  People challenge.

4          THE CLERK:  So far the People have used a

5     total of eleven perempts, the defense fourteen.

6          THE COURT:  How many did the D.A. use?

7          MS. CHU:  Just this round, Judge?

8          MS. SCHWARTZKOPF:  Three for the People, seven

9     for defense.

10         THE CLERK:  I'm doing it cumulatively.

11         THE COURT:  Seven for the defense?

12         MS. SCHWARTZKOPF:  Yes.

13         THE CLERK:  But I do it cumulatively.

14         THE COURT:  I am just asking, that's all.

15    Let's go bring them in.

16              (Whereupon, there was a brief pause in the

17    proceedings.)

18              (Whereupon, the panel of prospective jurors

19    entered the courtroom.)

20         THE COURT:  Have a seat in the first two rows,

21    please.

22         THE CLERK:  Did someone bring a child?

23         What is your name, ma'am?

24         PROSPECTIVE JUROR:  Blessing.

25         THE CLERK:  Is that your child?

Voir Dire

```
 1              PROSPECTIVE JUROR:  My babysitter didn't show
 2      up, she's out of town.
 3              THE COURT:  Only those that were in the box.
 4              Only those who were in the box, please.
 5              (Whereupon, the panel of prospective jurors
 6      exited the courtroom.)
 7              THE CLERK:  Were you seated here?
 8              PROSPECTIVE JUROR:  Cleo Gray.
 9              THE CLERK:  Okay.
10              Ma'am, you can have a seat.
11              Okay, if you hear your name called, ladies and
12      gentlemen, that means you have been selected to serve as
13      a juror.  If do you not hear your name called, you are
14      excused with the thanks of the Court.  Go back down to
15      the second floor, Central Jury, if you don't hear your
16      name called.  If you hear your name called please say
17      "here" or "present."
18              Juror number four will be Cleo Gray.
19              Say "here" or "present."
20              PROSPECTIVE JUROR:  Here.
21              THE CLERK:  Juror number five, Elizabeth
22      Sanchez.
23              PROSPECTIVE JUROR:  Here.
24              THE CLERK:  Juror number six, Margaret
25      Gabriel.
```

Voir Dire

1                  PROSPECTIVE JUROR:  Yes.

2                  THE CLERK:  Juror number seven, Samuel Rossi.

3                  PROSPECTIVE JUROR:  Here.

4                  THE CLERK:  Juror number eight, Jonathan

5      Crockett.

6                  PROSPECTIVE JUROR:  Here.

7                  THE CLERK:  Juror number nine, Deanna

8      Clements.

9                  PROSPECTIVE JUROR:  Here.

10                 THE CLERK:  And juror number ten, Blessing

11     Fadaka.

12                 PROSPECTIVE JUROR:  Here.

13                 THE CLERK:  The rest of you can return to

14     Central Jury, if you didn't hear your name called.

15                 (Whereupon, the panel of prospective jurors

16     exited the courtroom.)

17                 THE COURT:  Come on up.

18                 Ms. Blessing, you are excused.

19                 How many?  We have nine now?

20                 THE CLERK:  Yes.

21                 (Whereupon, the prospective juror exited the

22     courtroom.)

23                 THE CLERK:  All right.

24                 Will the six of you please rise and raise your

25     right hand.

Voir Dire

1              Do you and each of you sincerely and solemnly

2       swear or affirm that you will try this case in a just

3       and impartial manner, to the best of your judgment, and

4       you will render a verdict according to the law and

5       evidence?

6                   What is your response?

7                   (Whereupon, the jurors responded.)

8                   THE CLERK:  Please see the Court Officer.

9                   COURT OFFICER:  Step this way.

10                   (Whereupon, the jurors exited the courtroom.)

11                   THE COURT:  Get the rest of them.  Please have

12       them seated on the right.

13                   COURT OFFICER:  Panel entering.

14                   (Whereupon, the panel of prospective jurors

15       entered the courtroom.)

16                   THE COURT:  Sit on the right side, please.

17                   Thank you.

18                   Who has a child?

19                   What is your name, ma'am?

20                   PROSPECTIVE JUROR:  Ann Osibodu,

21       O-S-I-B-O-D-U.

22                   THE COURT:  Why did you bring your child?

23                   PROSPECTIVE JUROR:  Because I have no

24       babysitter, nobody to watch him for me.

25                   THE CLERK:  First name?

Voir Dire

1                    PROSPECTIVE JUROR:  Ann.

2                    THE COURT:  You are excused, ma'am.  Second

3          floor, Central Jury.

4                    You are excused.  Take your child with you, go

5          down to the second floor.

6                    PROSPECTIVE JUROR:  Thank you, sir.

7                    THE COURT:  Fill the box.

8                    THE CLERK:  Seat number one is Harris Edelman.

9                    PROSPECTIVE JUROR:  Edelman (pronunciation).

10                   THE CLERK:  E-D-E-L-M-A-N.

11                   Seat two, is Tinnel (phonetic) Heraldo.

12                   First name Tinnel, Heraldo, H-E-R-A-L-D-O, is

13         her last name.

14                   Seat three is Adrian (phonetic) Yorker,

15         Y-O-R-K-E-R.

16                   PROSPECTIVE JUROR:  Here.

17                   Seat four is Ilia (phonetic) Yudin.

18                   PROSPECTIVE JUROR:  Here.

19                   THE CLERK:  Y-U-D-I-N.

20                   Seat five is Brady Clark, C-L-A-R-K.

21                   PROSPECTIVE JUROR:  Present.

22                   THE CLERK:  Seat six is Rebecca Mamer.

23                   PROSPECTIVE JUROR:  Here.

24                   THE CLERK:  M-A-M-E-R.

25                   Seat seven is Renee (phonetic) Hernandez.

Voir Dire

1           PROSPECTIVE JUROR:  Here.

2           THE CLERK:  H-E-R-N-A-N-D-E-Z.

3           Seat eight is Olusegun, O-L-U-S-E-G-U-N, last

4      name is Adedeji, A-D-E-D-E-J-I.

5           Seat nine is Elsie Comer, C-O-M-E-R.

6           PROSPECTIVE JUROR:  Here.

7           THE CLERK:  And seat ten is Jaweed (phonetic)

8      Ahmed.

9           PROSPECTIVE JUROR:  Here.

10          THE CLERK:  A-H-M-E-D.

11          THE COURT:  Mr. Edelman, your neighborhood?

12          PROSPECTIVE JUROR:  Edelman (pronunciation).

13          THE COURT:  Edelman, I'm sorry.

14          PROSPECTIVE JUROR:  Greenpoint, Brooklyn.

15          THE COURT:  Ms. Heraldo?

16          PROSPECTIVE JUROR:  East Flatbush.

17          THE COURT:  Mr. Yorker?

18          PROSPECTIVE JUROR:  Bay Ridge.

19          THE COURT:  Mr. Yudin?

20          PROSPECTIVE JUROR:  Homecrest.

21          THE COURT:  Homecrest.

22          And Mr. Clark?

23          PROSPECTIVE JUROR:  Prospect Heights.

24          THE COURT:  Ms. Mamer?

25          PROSPECTIVE JUROR:  Greenpoint.

Voir Dire

```
 1              THE COURT:  Mr. Ahmed?

 2              PROSPECTIVE JUROR:  Sheepshead Bay.

 3              THE COURT:  And Ms. Comer?

 4              PROSPECTIVE JUROR:  East New York.

 5              THE COURT:  And Mr. Adedeji?

 6              PROSPECTIVE JUROR:  Bushwick.

 7              THE COURT:  Bushwick?

 8              PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  And Mr. Hernandez?

10              PROSPECTIVE JUROR:  Bensonhurst.

11              THE COURT:  Bensonhurst, all right.

12              First row, any of you ladies and gentlemen

13    familiar with the crime scene area, 832 Bushwick Avenue?

14              Second row, anyone?

15              Mr. Edelman, married --

16              MS. CHU:  Your Honor, I'm sorry, juror five

17    raised their hand.

18              THE COURT:  Mr. Clark, you are familiar with

19    the area?

20              PROSPECTIVE JUROR:  Some friends lived out

21    that way, Stockholm, Bushwick.

22              THE COURT:  All right.

23              Thank you.

24              Mr. Edelman, married, single, separated,

25    divorced?
```

Voir Dire

1           PROSPECTIVE JUROR:  Unmarried.

2           THE COURT:  You're married?

3           PROSPECTIVE JUROR:  Unmarried.

4           THE COURT:  You are not married?

5           PROSPECTIVE JUROR:  Not married.

6           THE COURT:  Single?

7           PROSPECTIVE JUROR:  Well, I'm not married.  We

8    have --

9           THE COURT:  You have a relationship?

10           PROSPECTIVE JUROR:  I have relations.

11           THE COURT:  Are you in a relationship now?

12    That's my question.

13           PROSPECTIVE JUROR:  How would that affect --

14           THE COURT:  Because if you're in a relation,

15    then I'd like to know what your partner does or doesn't

16    do or whatever.

17           PROSPECTIVE JUROR:  I'm in a relationship.

18           THE COURT:  Thank you.

19           So, okay.

20           And your occupation?

21           PROSPECTIVE JUROR:  Computer science.

22           THE COURT:  And your partner's?

23           PROSPECTIVE JUROR:  Merchandising.

24           THE COURT:  Thank you.

25           Ms. Heraldo?

Voir Dire

1          PROSPECTIVE JUROR:  I'm single.

2          THE COURT:  What kind of work do you do?

3          PROSPECTIVE JUROR:  I'm a file clerk.

4          THE COURT:  You have to speak up.

5          PROSPECTIVE JUROR:  File clerk.

6          THE COURT:  Thank you very much.

7          Mr. Yorker?

8          PROSPECTIVE JUROR:  Married.

9          THE COURT:  Your occupation?

10         PROSPECTIVE JUROR:  Unemployed.  Stay-at-home

11    dad.

12         THE COURT:  What did you do when you worked?

13         PROSPECTIVE JUROR:  I did -- I worked for

14    1-800-Got Junk.  I removed items from businesses and

15    homes.

16         THE COURT:  What exactly?

17         PROSPECTIVE JUROR:  I remove unwanted items.

18         Like a moving person, manual labor.

19         THE COURT:  And your spouse?

20         PROSPECTIVE JUROR:  She's a director for an ad

21    agency.

22         THE COURT:  Okay.

23         Mr. Yudin?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Married, single, separated,

mc

Voir Dire

1          divorced?

2                    PROSPECTIVE JUROR:  Married.

3                    THE COURT:  Your occupation?

4                    PROSPECTIVE JUROR:  I work for the New York

5          Times.  I'm a computer person there.

6                    THE COURT:  Okay.

7                    And your spouse?

8                    PROSPECTIVE JUROR:  She's not employed

9          currently.

10                    THE COURT:  What did she do when she worked?

11                    PROSPECTIVE JUROR:  Several -- various things,

12         including writing, reporting for a local newspaper,

13         doing computers.

14                    THE COURT:  All right, thank you.

15                    Mr. Clark?

16                    PROSPECTIVE JUROR:  I had a relationship but

17         not married.

18                    THE COURT:  And your occupation?

19                    PROSPECTIVE JUROR:  I work in music publishing

20         and licensing.

21                    THE COURT:  What do you do?

22                    PROSPECTIVE JUROR:  AR guy, sign bands, help

23         them with their legal contracts, stuff like that.

24                    THE COURT:  You sign bands, you said?

25                    PROSPECTIVE JUROR:  Yeah, for a publishing

1           company, music publishing.

2                      THE COURT:  Are you an agent?

3                      PROSPECTIVE JUROR:  AR guy.

4                      THE COURT:  Music agent?

5                      PROSPECTIVE JUROR:  Essentially.

6                      THE COURT:  Okay.

7                      And your partner?

8                      PROSPECTIVE JUROR:  She's a director for a

9           digital -- advertising digital media company.

10                     THE COURT:  She's in advertising, you said?

11                     PROSPECTIVE JUROR:  Yes.

12                     THE COURT:  Thank you.

13                     Ms. Mamer?

14                     PROSPECTIVE JUROR:  Engaged.

15                     THE COURT:  Okay.

16                     And your occupation?

17                     PROSPECTIVE JUROR:  I'm a bartender.

18                     THE COURT:  Okay.

19                     And you have a significant other?

20                     PROSPECTIVE JUROR:  He does film related

21          contract work, mainly screenwriting research.  He's

22          associate producing a film right now.

23                     THE COURT:  Indie?

24                     PROSPECTIVE JUROR:  It's an IMAX movie.

25                     THE COURT:  Oh.

Voir Dire

1          Thank you.

2          Mr. Ahmed?

3          PROSPECTIVE JUROR:  Married.

4          THE COURT:  Occupation?

5          PROSPECTIVE JUROR:  Dietician.

6          THE COURT:  And your spouse?

7          PROSPECTIVE JUROR:  She's a stay-at-home mom

8    at this time.

9          THE COURT:  Okay.

10         Did she work at all?

11         PROSPECTIVE JUROR:  Yes, but not in this

12   country.  She just came a few years ago.

13         THE COURT:  Ms. Comer?

14         PROSPECTIVE JUROR:  I'm a nurse.

15         THE COURT:  Married, single?

16         PROSPECTIVE JUROR:  Single.

17         THE COURT:  Single.

18         You're an R.N.?

19         PROSPECTIVE JUROR:  LPN.

20         THE COURT:  Thank you very much.

21         And Mr. Adedeji.

22         PROSPECTIVE JUROR:  Adedeji (pronunciation.)

23         THE COURT:  Adedeji, okay.

24         Are you married?

25         PROSPECTIVE JUROR:  Married.

mc

Voir Dire

```
 1          THE COURT:  And your occupation?

 2          PROSPECTIVE JUROR:  Attorney.

 3          THE COURT:  Excuse me?

 4          PROSPECTIVE JUROR:  Attorney.

 5          THE COURT:  You're an attorney?

 6          PROSPECTIVE JUROR:  Yes, your Honor.

 7          THE COURT:  What kind of law do you practice?

 8          PROSPECTIVE JUROR:  Essentially, civil.

 9          THE COURT:  Civil?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  And your spouse?

12          PROSPECTIVE JUROR:  Physical therapist.

13          MS. CHU:  I'm sorry?

14          PROSPECTIVE JUROR:  Physical therapist.

15          MS. CHU:  Physical therapist.

16          THE COURT:  Physical therapist, I'm sorry.

17          Mr. Hernandez?

18          PROSPECTIVE JUROR:  Engaged.

19          THE COURT:  Okay.

20          And your occupation?

21          PROSPECTIVE JUROR:  Handyman.

22          THE COURT:  All right.

23          And your significant other?

24          PROSPECTIVE JUROR:  Customer service.

25          THE COURT:  What?
```

Voir Dire

1           PROSPECTIVE JUROR:  She's customer service.

2           THE COURT:  Customer service.

3           First row, any of you ladies and gentlemen

4    ever serve on a jury before?

5           Second row, anyone?

6           Yes, Ms. Comer?

7           PROSPECTIVE JUROR:  Yes.

8           THE COURT:  What kind of jury were you on?

9           PROSPECTIVE JUROR:  Civil.  I sat on a civil

10   case.

11          THE COURT:  Okay.

12          First row, any of you ladies and gentlemen

13   ever been the victim of a crime, or someone close to

14   you?

15          All right, I will start with Mr. Edelman.

16          PROSPECTIVE JUROR:  I was mugged at

17   knifepoint.

18          THE COURT:  You were robbed when?

19          PROSPECTIVE JUROR:  1985, late '80s, New York

20   City.

21          THE COURT:  You were robbed at knifepoint?

22          PROSPECTIVE JUROR:  My motorcycle has been

23   stolen twice.  Different motorcycles, not the same one.

24   Twice.

25          THE COURT:  So you had two --

Voir Dire

1    PROSPECTIVE JUROR:  Two motorcycles, two

2    different motorcycles, two different occasions.

3    THE COURT:  Okay.

4    Anything else?

5    PROSPECTIVE JUROR:  My brother was mugged.

6    THE COURT:  Your mother was robbed?

7    PROSPECTIVE JUROR:  Robbed.

8    THE COURT:  Was that at knifepoint?

9    PROSPECTIVE JUROR:  I should differentiate.  I

10   don't know the difference between mugged and robbed.

11   THE COURT:  There is no such legal term as

12   "mugged."

13   PROSPECTIVE JUROR:  I'm not a lawyer.

14   THE COURT:  Property taken by force?

15   PROSPECTIVE JUROR:  Yes.

16   THE COURT:  Then it's robbery.

17   PROSPECTIVE JUROR:  Then a robbery.  Property

18   taken from me by force, from my brother as well,

19   skateboard, I think, and bicycle.

20   THE COURT:  Was a weapon involved?

21   PROSPECTIVE JUROR:  Yes, knife.  In every

22   occasion.

23   THE COURT:  Anything else?

24   PROSPECTIVE JUROR:  My uncle was burglarized

25   for sure twice, as were my parents.

mc

Voir Dire

1              THE COURT:  They were home?

2              PROSPECTIVE JUROR:  They weren't home.  And

3      stuff was taken.

4              THE COURT:  Were all of these reported?

5              Were yours reported?

6              PROSPECTIVE JUROR:  Mine, the motorcycle

7      thefts, for sure.  It's the last five, ten years.  I was

8      robbed as a kid growing up in New York City.  I don't

9      even know, I mean --

10             THE COURT:  You were a kid?

11             PROSPECTIVE JUROR:  Yeah, yeah.

12             THE COURT:  How old?

13             PROSPECTIVE JUROR:  Like ten to thirteen.

14             THE COURT:  Probably didn't report it.

15             PROSPECTIVE JUROR:  I mean, I don't recall.

16     But for sure, I mean, it was in the '80s in New York

17     City.

18             THE COURT:  All right, thank you.

19             PROSPECTIVE JUROR:  You're welcome.

20             THE COURT:  Anyone else?

21             Just raise your hand.

22             Mr. Yorker?

23             PROSPECTIVE JUROR:  My stepbrother's son was

24     shaken to death by a non-family member.

25             THE COURT:  It's called shaken baby syndrome?

Voir Dire

```
 1              PROSPECTIVE JUROR:  Yeah.

 2              THE COURT:  What happened to your

 3     stepbrother?

 4              PROSPECTIVE JUROR:  The person who did it is

 5     still in jail.

 6              THE COURT:  I mean, the --

 7              So he went to trial or pled guilty?

 8              PROSPECTIVE JUROR:  My stepbrother didn't do

 9     it.  He had broken up with the --

10              THE COURT:  The person that did.

11              PROSPECTIVE JUROR:  The person that did it is

12     currently in jail.

13              THE COURT:  Okay.

14              Who else raised their hand?

15              Mr. Clark?

16              PROSPECTIVE JUROR:  My father was robbed at

17     gunpoint in New York, late '80s.

18              THE COURT:  Anything else?

19              PROSPECTIVE JUROR:  And I had a close friend

20     who was a victim of a hate crime in Bushwick, actually.

21              THE COURT:  Assaulted or what?

22              PROSPECTIVE JUROR:  He was beaten close to

23     death.

24              THE COURT:  Was a weapon involved?

25              PROSPECTIVE JUROR:  Just hands.
```

Voir Dire

1      THE COURT:  Fists?

2      PROSPECTIVE JUROR:  Yes.

3      THE COURT:  More than one person?

4      PROSPECTIVE JUROR:  Yes.

5      THE COURT:  Okay.

6      Who else?

7      Ms. Mamer?

8      PROSPECTIVE JUROR:  My brother was jumped and

9   beaten pretty badly.

10      It was part of like a string of incidents in

11   Seattle.  I think they caught some of the guys but not

12   all of them.

13      THE COURT:  Was he injured seriously?

14      PROSPECTIVE JUROR:  Yeah.  They broke his eye

15   socket.  He was kind of unrecognizable.

16      THE COURT:  Sorry about that.

17      PROSPECTIVE JUROR:  Also, I was assaulted by

18   an ex-boyfriend about five years ago.

19      THE COURT:  Was he arrested?

20      PROSPECTIVE JUROR:  No.  I didn't report it.

21      THE COURT:  Why?

22      PROSPECTIVE JUROR:  We were alone in his

23   apartment, I didn't have proof, I didn't want to go

24   through it.

25      THE COURT:  Were you injured?

Voir Dire

1      PROSPECTIVE JUROR:  Not seriously.  Pretty

2  bruised.  I fought him off before it got pretty bad.

3      THE COURT:  Did the police come?

4      PROSPECTIVE JUROR:  I'm sorry?

5      THE COURT:  Did the police come?

6      PROSPECTIVE JUROR:  No.

7      THE COURT:  Anyone else?

8      Second row, been the victim of a crime or

9  someone close to you?

10      Yes, Mr. Adedeji?

11      PROSPECTIVE JUROR:  Close family friend was

12  just recently the victim of a carjacking.

13      THE COURT:  Close friend of yours?

14      PROSPECTIVE JUROR:  Yes.

15      THE COURT:  He was the victim of a carjacking?

16      PROSPECTIVE JUROR:  Yes.

17      THE COURT:  Was he injured, or she?

18      PROSPECTIVE JUROR:  She wasn't injured.  She

19  managed to escape the perpetrator.

20      THE COURT:  Anyone else?

21      First row, any of you ladies and gentlemen

22  ever accused of, arrested for, or convicted of a crime,

23  or someone close to you?

24      Mr. Yorker?

25      PROSPECTIVE JUROR:  I was smoking weed on the

mc

Voir Dire

1      Lower East Side and I was arrested.

2              THE COURT:  So you were arrested or were you

3      given a summons?

4              PROSPECTIVE JUROR:  I was arrested.  I did one

5      day community service.

6              THE COURT:  Thank you.

7              Anyone else?

8              Mr. Clark?

9              PROSPECTIVE JUROR:  I got an open container

10     and paid the ticket.

11             THE COURT:  Was that beer?

12             PROSPECTIVE JUROR:  Yeah.

13             THE COURT:  Anyone else?

14             Mr. Hernandez?

15             PROSPECTIVE JUROR:  My ex-wife sent me to

16     jail.

17             THE COURT:  Your ex-wife is what?

18             PROSPECTIVE JUROR:  Sent me to jail.

19             THE COURT:  She is in jail?

20             PROSPECTIVE JUROR:  No, she sent me to jail.

21             THE COURT:  Sent you to jail?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Was it domestic violence?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  What happened?

Voir Dire

1              I mean, when she reported this to the police.

2              PROSPECTIVE JUROR:  She reported to the police

3      but --

4              THE COURT:  Then what happened?

5              PROSPECTIVE JUROR:  Obviously they believed

6      her, not me.

7              THE COURT:  So then what happened?  Did you --

8              PROSPECTIVE JUROR:  I went to court.

9              THE COURT:  How long did you go to jail for?

10             PROSPECTIVE JUROR:  Two days.  Then I did

11     anger management.

12             THE COURT:  Community service, anger

13     management?

14             PROSPECTIVE JUROR:  Yes, pay a fine.

15             THE COURT:  Okay.

16             You going to hold it against anybody in this

17     case, the police, D.A.?

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  Okay.

20             First row, any of you ladies and gentlemen

21     related to, friendly, interact with any attorneys or law

22     enforcement agents?

23             Mr. Edelman?

24             PROSPECTIVE JUROR:  I have close friends and

25     family that are attorneys, including a U.S. attorney,

                                                            mc

Voir Dire

1      A.D.A. in Suffolk County, married to a police officer,

2      married to an attorney in New York City.  My cousin is

3      an attorney.  My uncle was a New York City police

4      officer, he's eighty-four years old now so he's retired

5      almost forty years but he was a New York City officer in

6      Brooklyn.  And I have friends, of course, that are

7      attorneys as well.

8                  THE COURT:  Who else?

9                  Ms. Heraldo?

10                 PROSPECTIVE JUROR:  I work for a law firm.

11                 THE COURT:  What kind of law firm?

12                 PROSPECTIVE JUROR:  Corporate law.

13                 THE COURT:  Okay.

14                 Who else?

15                 Mr. Yorker.

16                 PROSPECTIVE JUROR:  I have a bunch of friends

17     that are either lawyers or police officers through the

18     dart leagues that I play in the City and Brooklyn, an

19     acquaintances that actually works right here on the

20     floor.

21                 THE COURT:  As a Court Officer?

22                 PROSPECTIVE JUROR:  Yeah.

23                 THE COURT:  Okay.

24                 Who else?

25                 Mr. Clark?

Voir Dire

1          PROSPECTIVE JUROR:  I have various members of

2     my family in the Armed Forces.

3          THE COURT:  In the Armed Forces?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  I am talking about law

6     enforcement.

7          PROSPECTIVE JUROR:  As part of my job I work

8     with our legal team, contract law, licensing agreements,

9     signing bands.

10          THE COURT:  You socialize with any of these

11     attorneys?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Who else?

14          Ms. Mamer?

15          PROSPECTIVE JUROR:  I have a good friend who

16     was working with the 7th Precinct.  He is in Manhattan,

17     the detective squad.

18          My fiancee used to share an apartment with him

19     and --

20          THE COURT:  A good friend is in the Manhattan

21     detective squad and what was the last thing?

22          PROSPECTIVE JUROR:  My fiancee used to share

23     an apartment with him.

24          THE COURT:  Who?  Your fiancee?

25          PROSPECTIVE JUROR:  Yes.

mc

Voir Dire

1          THE COURT:  Okay.

2          Who else?  Anyone else?

3          Mr. Adedeji?

4          PROSPECTIVE JUROR:  Aside from myself, I have

5     a close relationship with an attorney in general

6     practice.

7          THE COURT:  You have a general practice?

8          PROSPECTIVE JUROR:  I work with somebody also

9     in general practice.

10          THE COURT:  Okay.

11          Do you have a partner or you share an office?

12          PROSPECTIVE JUROR:  Personally I'm by myself,

13     solo.

14          THE COURT:  But you have a friend who's an

15     attorney?

16          PROSPECTIVE JUROR:  Yes.  General

17     practitioner.

18          THE COURT:  Okay.

19          First row, can you be fair and impartial in

20     this case?

21          Mr. Edelman?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Ms. Heraldo?

24          PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Mr. Yorker?

Voir Dire

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Mr. Yudin?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Mr. Clark?

5          PROSPECTIVE JUROR:  I'm not sure.

6          THE COURT:  Why not?

7          PROSPECTIVE JUROR:  I have some -- well, after

8    seeing last week, I have some issues with the lack of

9    evidence that the People talked about.  We can talk

10   about that later.

11         THE COURT:  You have to talk about it now.

12         There is no evidence yet.

13         PROSPECTIVE JUROR:  Right.

14         THE COURT:  There is no evidence in the sense

15   that you haven't heard anything.

16         PROSPECTIVE JUROR:  Well, they -- they have

17   kind of been mentioning that there's no evidence.

18         THE COURT:  There is evidence going to be

19   presented by the People but it's not necessarily in the

20   form that you might want.  Like I don't know what you're

21   looking for, but the fact is that you don't know

22   anything about this case right now.

23         PROSPECTIVE JUROR:  Okay.

24         THE COURT:  Other than not knowing anything

25   about this case, how have you arrived at an opinion?

Voir Dire

1          PROSPECTIVE JUROR:  From viewing the

2    interviews last week.

3          THE COURT:  What are you expecting?  What

4    would you be expecting, scientific evidence, forensic

5    evidence?  What?

6          PROSPECTIVE JUROR:  As part of my work I do a

7    lot of disputes between publishing companies and, you

8    know, there's always contracts involved, signed

9    documents, and there's always proof of who's --

10         THE COURT:  That's something that -- and you

11   have to determine whether those documents meet your

12   requirements, is that right?

13         PROSPECTIVE JUROR:  That's correct.

14         THE COURT:  So that is what you would have to

15   do here in the same respect, you would have to determine

16   whether the People have proven beyond a reasonable doubt

17   the evidence that they presented.

18         PROSPECTIVE JUROR:  Okay.

19         THE COURT:  Can you do that?

20         PROSPECTIVE JUROR:  I think so, yes.

21         THE COURT:  Can you do it fairly and

22   impartially?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  That's the question.

25         Okay.

Voir Dire - People/Ms. Chu

1           Ms. Mamer?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Mr. Ahmed?

4           PROSPECTIVE JUROR:  Yes.

5           THE COURT:  And Ms. Comer?

6           PROSPECTIVE JUROR:  Yes.

7           THE COURT:  And Mr. Audige?

8           PROSPECTIVE JUROR:  Yes.

9           THE COURT:  And Mr. Hernandez?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Go ahead, Ms. Chu.

12          MS. CHU:  Thank you.

13          Good morning, ladies and gentlemen.

14          I see that at least Mr. Clark was paying

15   attention last week when we were talking up here.  I

16   hope you kind of remember the things we spoke about.

17   The Judge said it perfectly, there is going to be other

18   kinds of evidence.  You are going to hear, for example,

19   Ms. Mamer, you said you had an incident with an

20   ex-boyfriend.  You said you didn't press charges because

21   you didn't have anybody that was there besides you and

22   the other person.

23          In this case there are other things, you just

24   won't have someone that says I saw this person do this

25   to this other person, okay.

Voir Dire - People/Ms. Chu

1          I know that, Mr. Clark, you said that you have

2     somewhat of a problem with that.

3          Let's say, for example, you're selected as a

4     juror, you heard all the evidence and the evidence that

5     I have, although there is no eyewitness, you have

6     evidence that proves that in fact the defendant is

7     guilty of what she's charged with.

8          Are you going to be, when you go back in the

9     jury room, you know, Ms. Chu proved her case and I

10    believe that she's proven beyond a reasonable doubt that

11    the defendant is guilty, but because I didn't have a

12    witness, I don't know if I can do that?

13          PROSPECTIVE JUROR:  Yeah.  I don't think I can

14    do that.

15          THE COURT:  That would be a problem for you?

16          PROSPECTIVE JUROR:  Yeah.

17          MS. CHU:  Anybody here think that might be a

18    problem?

19          There is really no right or wrong answer.  I

20    appreciate you being honest with me.  You realize how,

21    unfortunate it would be if you were selected as jurors,

22    you think you're not going to say, now you don't say

23    anything, we will pick you, then it will be too late,

24    then you're in the jury room, you might have some

25    issues.

Voir Dire - People/Ms. Chu

1          Yes, sir?

2          PROSPECTIVE JUROR:  I believe I can be

3    impartial.  My problem is, as a business owner I get

4    distracted.  It's almost like my employees are part of

5    the family.  They work for me.  A dysfunctional family,

6    but a family.

7          MS. CHU:  They are not all dysfunctional.

8          PROSPECTIVE JUROR:  I want to be honest and

9    tell you, even when I'm out to dinner with friends, I

10   get distracted and my mind is somewhere else, I come

11   back because someone will bring me back to the

12   conversation.  But that really happens.  I don't

13   intentionally let my mind wander.  Physically I am here

14   and other things that could distract me that may

15   preclude me from being effective.  It might be, if I

16   didn't have the economic situation that I have.

17         MS. CHU:  Basically you're saying, because

18   what you do and your job, you would be distracted from

19   perhaps paying one hundred percent attention to what the

20   evidence would be?

21         PROSPECTIVE JUROR:  That is one hundred

22   percent accurate.

23         MS. CHU:  Thank you very much.

24         Anyone else that their work might consume

25   their thoughts, make them become distracted and not be

mc

Voir Dire - People/Ms. Chu

1    able to listen to the evidence?

2            You raised your hand for another reason.

3            PROSPECTIVE JUROR:  I was thinking of

4    something else.

5            MS. CHU:  Okay.

6            PROSPECTIVE JUROR:  From what you were saying

7    Thursday, I fear that it will mostly be for us to decide

8    if a witness to this or that, to this or that statement

9    or behavior or whatever, is telling the truth or not.  I

10   have a serious problem with deciding if a person is

11   telling the truth, beyond my level of my personal --

12           MS. CHU:  You are saying that your level of

13   being convinced is higher than what you think the law

14   might be?

15           PROSPECTIVE JUROR:  I don't know what the law

16   might be but --

17           THE COURT:  The law is they have to prove the

18   defendant's guilt of the charge or charges beyond a

19   reasonable doubt.  That's the standard.  And it's not

20   beyond all possible doubt, but beyond a reasonable

21   doubt, and I will explain to you what a reasonable doubt

22   is and then you have to determine whether the People

23   have met their burden of proof.

24           Can you do that?

25           PROSPECTIVE JUROR:  I really doubt --

mc

Voir Dire - People/Ms. Chu

1          THE COURT:  Excuse me?

2          PROSPECTIVE JUROR:  I really doubt that, your

3    Honor, 'cause for myself, I cannot understand what the

4    level of reasonable doubt might be.  If I know that I am

5    a bad judge of persons and I have to decide if that

6    person said the truth or lied to me and it affects --

7          THE COURT:  It's not only that person.  You

8    take everything together, including that person, and

9    you'll have to determine, taking everything together,

10   all the evidence, whether that person is telling the

11   truth or not, or whether the People have met their

12   burden.

13          It's not, you know, rocket science.  It's

14   very, very -- I can't think of the word right now, but

15   it's like we said, what you bring to this is your common

16   sense and your lifetime experience, that's all.

17          PROSPECTIVE JUROR:  I'm sorry, your Honor.  My

18   lifetime experience was twenty years of being a

19   scientist before I switched here to being a computer

20   programmer and I'm trained to doubt those things.

21          THE COURT:  Well, but I don't want --

22          PROSPECTIVE JUROR:  I really don't understand

23   how you can establish anything beyond a reasonable doubt

24   because there's always doubt.

25          THE COURT:  It's not what -- I am going to say

mc

Voir Dire - People/Ms. Chu

1   this to everybody.  It's not whether he's possibly

2   guilty, that's not the standard.  All right?  Because if

3   it was just possible guilt, then he's not guilty, but if

4   he is guilty beyond a reasonable doubt.  And you're a

5   scientist, you use reason to determine equations and

6   scientific problems, you should be, really, one of the

7   better jurors in the sense that you have -- you think

8   rationally and reasonably.  That is what you are going

9   to have to do here.  But if you think you are going to

10  be prejudiced in some way or not, that's the question.

11          Can you be fair and impartial, yes or no?

12          PROSPECTIVE JUROR:  Certainly.  I can be fair

13  and impartial.  I am just saying right away that in this

14  case I already know that I will have to say not guilty.

15          THE COURT:  Let me just say something, with

16  people that say that, in this case no one knows

17  absolutely anything about this case, absolutely nothing

18  because you have not heard a shred of evidence, not a

19  shred.  Okay?

20          PROSPECTIVE JUROR:  Yes, sir.

21          THE COURT:  So all I'm saying is, when you do

22  hear the evidence, then you will have to ultimately, at

23  the close of the case, make a determination.  If you

24  can't do that because of your particular profession or

25  whatever, then you say that.  Can you do that or not?

mc

Voir Dire - People/Ms. Chu

1          PROSPECTIVE JUROR:  Yes, I can.

2          THE COURT:  Okay.

3          MS. CHU:  Mr. Yudin, let me ask you, I know

4     you said you were twenty years a scientist before you

5     became a computer programmer for the New York Times,

6     right?

7          PROSPECTIVE JUROR:  Correct.

8          MS. CHU:  I am assuming that when you're doing

9     computers, there's programs and they have to be exact,

10    everything has to match perfectly, am I correct?

11         PROSPECTIVE JUROR:  Yes.

12         MS. CHU:  And do you understand that that

13    standard that you use in order to become a computer

14    technology person is different than the standard that

15    you have to use in this case?

16         Do you think that?

17         My question to you, only you will be able to

18    answer that, do you think that if you heard this case

19    you are going to hold to whatever standards you usually

20    use in your line of work or are you going to be able to

21    accept what the Judge tells you as far as that it's

22    beyond a reasonable doubt?  Are you even able to think

23    that way?

24         PROSPECTIVE JUROR:  I don't know until I try.

25         MS. CHU:  You seem to have some reservations

mc

Voir Dire - People/Ms. Chu

1    as to whether or not you will be able to do that.

2             You understand it's not -- the proof is not

3    proof to a mathematical certainty, it doesn't plug into

4    a program and everything spits out exactly what the

5    answer is.

6             PROSPECTIVE JUROR:  I understand that, but it

7    doesn't mean that I for myself accept that.

8             MS. CHU:  It doesn't mean you accept that?

9             THE COURT:  Go on to something.

10            MS. CHU:  We talked about that most of the

11   evidence was from something defendant said.  Defendant

12   made certain statements to police, also made certain

13   statements to friends of hers, and I want to ask, are

14   you the kind of jurors that can analyze and determine

15   whether or not, from all the other evidence you are

16   going to hear in this case, whether or not what she said

17   at a particular time was maybe truthful, not so true?

18            You understand what I'm asking you?

19            Do you think that you are the kind of juror

20   that was able to process that type of information, to

21   make a determination as to whether or not maybe parts of

22   the statement are true, parts might be false?

23            Ms. Comer, how do you feel about that?

24            PROSPECTIVE JUROR:  I'm fine.

25            MS. CHU:  You fine with it?

Voir Dire - People/Ms. Chu

1                  Ms. Heraldo?

2            PROSPECTIVE JUROR:  Yes.

3            MS. CHU:  Mr. Hernandez?

4            PROSPECTIVE JUROR:  Yes.

5            MS. CHU:  Mr. Adedeji, I wanted to ask you, I

6      know you're an attorney and I don't know the last time

7      you thought about the criminal law, probably not since

8      law school.

9            PROSPECTIVE JUROR:  I been working with

10     somebody in general practice so she does both civil and

11     criminal.

12           MS. CHU:  As far as you --

13           PROSPECTIVE JUROR:  Personally, no, I don't

14     really do criminal.

15           MS. CHU:  My question to you, because you're

16     an attorney, do you think that you have more or less

17     expertise in the law compared to the other members of

18     the jury?

19           PROSPECTIVE JUROR:  Sometimes lay people know

20     better than we do.

21           MS. CHU:  That is true.

22           Can you promise me -- can you all promise me

23     no matter what you think the law might be, that the

24     law -- that the only law that pertains to this case is

25     what this Judge tells you?

mc

Voir Dire - Defendant/Mr. Walensky

1           So you might think it's a certain way before

2   you start this trial and then when the Judge tells you

3   what the law is, can you all promise me that you are

4   going to follow what he says despite what you might have

5   thought before, no matter what?

6           Can you all promise me you can do that?

7           THE COURT:  Thank you.  All right, thank you.

8           Defense.

9           MR. WALENSKY:  Your Honor, would you tell me

10   about a minute before you are going to cut me off, just

11   so I have an idea?

12           THE COURT:  Go ahead.

13           MR. WALENSKY:  I don't expect to be

14   longwinded.

15           Hello.

16           Hope you all remember me from last week.  I'm

17   David Walensky.  I'm the attorney for the accused.  And

18   if you recall, I said the person is accused because we

19   don't have to defend each other -- we don't have to

20   defend ourselves, I'm sorry.

21           Do you understand that?

22           And that everything has to be done by the

23   People?

24           Now, Mr. Clark, you had said from what you

25   heard you really don't know anything about the case,

Voir Dire - Defendant/Mr. Walensky

1     right?

2                 PROSPECTIVE JUROR:  Of course not.

3                 MR. WALENSKY:  There's a defense attorney, it

4     sounds as though I should be able to convict if I hear

5     the evidence, but that's the People's problem.  You

6     understand?

7                 PROSPECTIVE JUROR:  Yes.

8                 MR. WALENSKY:  Your problem is just hearing

9     the evidence, and if the Judge says, can you follow my

10    directions, following his directions, right?

11                PROSPECTIVE JUROR:  Yes.

12                MR. WALENSKY:  That's fair enough, isn't it?

13                If they prove their case, so be it, beyond a

14    reasonable doubt.

15                And the Judge will give you the legal

16    definition, Mr. Yudin, of what "beyond a reasonable

17    doubt" is.  That's why they talk about analyzing it

18    within that criteria.  We will look and see if they have

19    proven their case.  If they haven't proven their case

20    beyond a reasonable doubt, you must say not guilty.

21                You understand?

22                It's not even innocent.  It's not guilty or

23    innocent, it's guilty or not guilty.

24                It's all laid in their lap and maybe they have

25    enough evidence and maybe they don't.

                                                          mc

Voir Dire - Defendant/Mr. Walensky

1          You don't have to say I'm going to believe

2     everything they say.  Understand?

3          It becomes their problem.

4          As I said, I worry about it because, you can

5     understand, Ms. Tinnel, because, heck, if they don't

6     prove their case, fine, it's not guilty.  But you don't

7     have to go in saying -- you have to go in and I can find

8     guilty, not I must find a person guilty.  You understand

9     that?  The Judge will tell you that in this case.

10          Ms. Mamer, you had a bad experience five years

11     ago and you fought somebody off, right?  That wasn't

12     about rape or anything, was it?

13          PROSPECTIVE JUROR:  It was attempted.

14          I'm sorry.

15          MR. WALENSKY:  But this is -- you can use your

16     personal experiences in judging things, you understand

17     that?

18          PROSPECTIVE JUROR:  Yeah.

19          MR. WALENSKY:  This isn't a contest that

20     brings this up again.  Sometimes people say I can do

21     this, I can do this.  This is a bad case, this

22     particular case.

23          PROSPECTIVE JUROR:  I thought I was okay, I'm

24     sorry.

25          MR. WALENSKY:  That is what I mean.  This is

mc

Voir Dire - Defendant/Mr. Walensky

1    the time to tell us.  People too often feel like they're

2    failing.  Another case might be perfectly fine, civil

3    case, another kind of criminal case, but it doesn't help

4    anyone if we're trying to do this.

5             Now, Mr. Edelman, intellectually I like to say

6    I can be fair.  You're a fair guy?

7             PROSPECTIVE JUROR:  I believe that.

8             MR. WALENSKY:  But on the other side you said

9    you are going to be distracted.

10            PROSPECTIVE JUROR:  For sure.

11            MR. WALENSKY:  It would really -- you couldn't

12   be the kind of juror you want to be?

13            PROSPECTIVE JUROR:  Correct.

14            MR. WALENSKY:  You might miss things if your

15   mind starts to wander.  It wanders all the time, right?

16   This is a very serious case.  My client's charged with

17   murder.  Is there anything more serious?  So --

18            PROSPECTIVE JUROR:  I am not suggesting that

19   it's not less than serious.  I'm not.

20            MR. WALENSKY:  You are being honest, you

21   wouldn't be able to give it the attention that you think

22   it deserves.

23            PROSPECTIVE JUROR:  I can be here and I

24   respect the Court, I listened to everything everyone

25   said.

Voir Dire - Defendant/Mr. Walensky

1      MR. WALENSKY:  You can't give it one hundred

2  percent?

3      PROSPECTIVE JUROR:  I don't believe that's the

4  case.

5      MR. WALENSKY:  Thank you.  That's fine.

6      Again, this isn't pass/fail.  This is an

7  expression of our citizenship, why everybody fights for

8  everything.  This is what it's about.  And you hate

9  getting this notice.  On the other hand, if you're here

10  and you can do it, fine.  If you can't do it, you're

11  doing a disservice to everything behind that.  I don't

12  mean that in a negative way.

13      You understand that?

14      Mr. Hernandez, you got arrested, it was a

15  domestic problem, an argument.  Were you treated fairly?

16      PROSPECTIVE JUROR:  Yes.

17      MR. WALENSKY:  Were you treated fairly?

18      PROSPECTIVE JUROR:  By the case?

19      MR. WALENSKY:  Yes.

20      PROSPECTIVE JUROR:  I guess.

21      MR. WALENSKY:  It doesn't sound like you think

22  you should have been arrested.

23      PROSPECTIVE JUROR:  No, sir.

24      MR. WALENSKY:  But police reacted because

25  somebody said something.  That is what the evidence is.

Voir Dire - Defendant/Mr. Walensky

1    Sometimes you can believe people, sometimes you don't

2    believe people.  You have to weigh everything.

3              Will you be able to do that, Mr. Ahmed?

4              PROSPECTIVE JUROR:  Yes.

5              MR. WALENSKY:  Ms. Comer, as an LPN you've

6    probably seen a lot of facets of life.

7              Is there anyone here who believes -- does

8    someone have a problem with the concept of defending

9    themselves?

10             Now, will you all be able to --

11             Mr. Yorker, will be you be able to accept the

12   Judge's definition of how far somebody can go -- rape

13   has its own -- attempted rape has its own set of

14   standards as to how someone can defend themselves.

15             THE COURT:  What?

16             I'm sorry.

17             That's not the law, all right.

18             The law of justification I will define for

19   you, all right, and please, whatever the attorneys say

20   is the law just disregard it, okay.

21             Thank you.

22             MR. WALENSKY:  You will be able to listen to

23   the Judge's instructions?  That's all we want.

24             So, I want to thank you for your attention.

25   If you're selected, please give it your all.  You have

mc

Voir Dire

1    no bosses here.

2              Thank you very much.

3              THE COURT:  All right.

4              Ladies and gentlemen, will you step outside

5    for a moment, I'll call you back in a few minutes.  Take

6    all your belongings.

7              (Whereupon, the panel of prospective jurors

8    exited the courtroom.)

9              COURT OFFICER:  Judge, one of the jurors has a

10   question she needs to ask you.

11             (Whereupon, the following took place at

12   sidebar:)

13             PROSPECTIVE JUROR:  Thank you.

14             I just want to make sure that there is no

15   problem because I am a nurse, I work in a women's house.

16             THE COURT:  Of detention?

17             PROSPECTIVE JUROR:  Yes, sir.

18             I want to make sure that's not an issue.

19             MS. CHU:  Do you know the defendant?

20             PROSPECTIVE JUROR:  I'm sure.  I have been in

21   Rikers for twenty-one years.  If she's passed through --

22             THE COURT:  When you say you're sure, are you

23   sure now?

24             PROSPECTIVE JUROR:  I don't have a problem

25   sitting on the case but I just wanted to share that.

Voir Dire

1    Just in case it was any type of conflict, I want you to

2    know.

3              THE COURT:  That's understandable.

4              My point is, is that going to affect your

5    ability to be fair and impartial?

6              PROSPECTIVE JUROR:  No, sir.

7              THE COURT:  All right.

8              PROSPECTIVE JUROR:  Thank you.

9              (Whereupon, the prospective juror exited the

10   courtroom.)

11             (Whereupon, the following took place in open

12   court:)

13             THE COURT:  First three, cause?

14             MS. CHU:  Yes, your Honor.

15             Juror number one.

16             THE COURT:  Challenged for cause?

17             MS. CHU:  You said the first three?

18             THE COURT:  Just the next three.

19             MS. CHU:  Okay.

20             THE COURT:  That is just cause.

21             MS. CHU:  Yes.

22             THE COURT:  Defense, cause?

23             MR. WALENSKY:  No.

24             THE COURT:  Perempt?

25             MS. CHU:  No.

Voir Dire

1          THE COURT:  Perempt?

2          MR. WALENSKY:  Number three.

3          THE COURT:  Okay.

4          How many jurors do we have now?

5          MR. POVILL:  That should be ten, your Honor.

6          THE CLERK:  You perempted number three?

7          MR. WALENSKY:  Yes, number three.

8          THE COURT:  Next two, cause?

9          MS. CHU:  Yes.  Mr. Yudin, I believe he stated

10   that because of the nature of how he does his work,

11   being a scientist as well as computers, it would be

12   extremely difficult for him to even try and figure out

13   what "beyond a reasonable doubt" is and I think that

14   would prevent him from being a fair juror.  Computers

15   and being a scientist, the way the fields are very

16   exact, I believe that he was very honest in his opinion

17   as to whether or not he'd be able to decide according to

18   what your standards would be, as far as beyond a

19   reasonable doubt.

20          THE COURT:  What is your position on that?

21          MR. WALENSKY:  I'll leave it up to the Court.

22   I think I will agree with that.

23          THE COURT:  He's out for cause.

24          THE CLERK:  Let me seat the juror.

25          Juror number ten is Tinnel Heraldo.

Voir Dire

1        THE COURT:  I haven't finished.

2        Perempt?

3        MS. CHU:  I'm sorry, what numbers are we up

4    to?

5        THE COURT:  Four and five.

6        MS. CHU:  I'm sorry.

7        THE COURT:  You said cause for Yudin and --

8        MS. CHU:  I also want to challenge Mr. Clark

9    for cause, I believe.

10        THE COURT:  He's out.

11        MR. WALENSKY:  Your Honor, I thought I

12    rehabilitated him.

13        THE COURT:  Yeah, you did?

14        He's out for cause.

15        MS. CHU:  People also challenge Ms. Mamer.

16        THE COURT:  Wait a minute.  Wait a minute.

17        MS. CHU:  I'm sorry.  I thought we were

18    looking at the next three.

19        THE COURT:  The next two, Yudin and Clark.

20        MS. CHU:  Okay.  Sorry about that.

21        THE COURT:  You challenged Yudin and Clark for

22    cause.  I've granted them.

23        MS. CHU:  Yes.

24        THE COURT:  Next, Mamer and Hernandez.  Yeah,

25    Mamer and Hernandez.

Voir Dire

| | |
|---|---|
| 1 | MS. CHU:  I challenge Ms. Mamer for cause. |
| 2 | MR. WALENSKY:  I agree. |
| 3 | THE COURT:  She's out for cause. |
| 4 | Hernandez, cause? |
| 5 | MS. CHU:  No. |
| 6 | THE COURT:  Cause? |
| 7 | MR. WALENSKY:  No. |
| 8 | THE COURT:  Perempt? |
| 9 | MS. CHU:  No. |
| 10 | THE COURT:  Perempt? |
| 11 | MR. WALENSKY:  Yes. |
| 12 | THE CLERK:  That is Hernandez. |
| 13 | MR. WALENSKY:  Yes, that's Hernandez. |
| 14 | THE COURT:  Adedeji? |
| 15 | MS. SCHWARTZKOPF:  Eight and nine. |
| 16 | THE COURT:  Eight and nine, yes. |
| 17 | MS. CHU:  None for cause. |
| 18 | THE COURT:  Cause? |
| 19 | MR. WALENSKY:  No. |
| 20 | THE COURT:  Perempt? |
| 21 | MS. CHU:  People challenge juror number nine. |
| 22 | THE COURT:  Comer? |
| 23 | MS. CHU:  Yes. |
| 24 | THE COURT:  Defense? |
| 25 | MR. WALENSKY:  Number eight. |

mc

Voir Dire

1          THE COURT:  All right.

2          Ahmed, cause?

3          MS. CHU:  None for cause.

4          THE COURT:  Cause?

5          MR. WALENSKY:  No.

6          THE COURT:  Perempt?

7          MS. CHU:  No.

8          THE COURT:  Perempt?

9          MR. WALENSKY:  Yes.

10          THE CLERK:  Defense used four.

11          MS. SCHWARTZKOPF:  Yes.

12          And People used one.

13          THE COURT:  What is the total?

14          THE CLERK:  People used twelve, defense

15     eighteen.

16          THE COURT:  All right.

17          Get the jurors in, please.

18          MS. CHU:  How many challenges do I have left?

19     Eight?

20          MS. SCHWARTZKOPF:  Eight.

21          MS. CHU:  How many does the defense have?

22          MS. SCHWARTZKOPF:  Two.

23          COURT OFFICER:  Panel entering.

24          (Whereupon, the panel of prospective jurors

25     entered the courtroom.)

Voir Dire

1           THE CLERK:  Okay, ladies and gentlemen, if you

2     hear your name called that means you have been selected

3     to serve as a juror.  If you do not hear your name

4     called, you are excused, go back to the second floor,

5     Central Jury, with the thanks of the Court.

6           Juror number ten will be Tinnel Heraldo.

7           The rest of you go back to the second floor.

8           THE COURT:  Ms. Heraldo, sit down.  The rest

9     of you go back to the second floor, Central Jury.

10          Thank you.

11          (Whereupon, the panel of prospective jurors

12    exited the courtroom.)

13          THE COURT:  Swear her in.

14          THE CLERK:  Please rise, raise your right

15    hand.

16          Do you sincerely and solemnly swear or affirm

17    you will try this case in a just and impartial manner to

18    the best of your judgment and you will render a verdict

19    according to the law and the evidence?

20          Your response?

21          PROSPECTIVE JUROR:  Yes.

22          THE CLERK:  You may see the Court Officer.

23          (Whereupon, the sworn juror exited the

24    courtroom.)

25          THE COURT:  We have ten and --

Voir Dire

1          THE CLERK:  Ten sworn.

2          THE COURT:  And they're bringing up the

3   supplemental panel?

4          THE CLERK:  Yes.

5          (Whereupon, there was a brief pause in the

6   proceedings.)

7          THE COURT:  All right, we'll take a break.  We

8   will be back at a quarter after -- I mean, ten to.

9          (Whereupon, a brief recess was held.)

10          THE CLERK:  Case back on trial continues.  All

11   parties present.  Defendant is present with her

12   attorney.

13          THE COURT:  Where are we now?

14          MS. SCHWARTZKOPF:  We have the supplemental

15   panel.

16          THE COURT:  Bring in the supplemental panel.

17          (Whereupon, there was a brief pause in the

18   proceedings.)

19          COURT OFFICER:  Jury panel entering.

20          (Whereupon, the panel of prospective jurors

21   entered the courtroom.)

22          THE CLERK:  All rise, please, and raise your

23   right hand.

24          Do you and each of you sincerely and solemnly

25   swear or affirm that you will answer truthfully all

Voir Dire

1      questions asked of you relating to your qualifications

2      to serve as jurors in this action?

3                  What is your response?

4                  (Whereupon, the prospective jurors responded.)

5                  THE CLERK:  Please be seated.

6                  THE COURT:  All right.

7                  Good afternoon, ladies and gentlemen.  I am

8      Supreme Court Justice Albert Tomei and I want to welcome

9      you to Part 2 of the State Supreme Court, the County of

10     Kings, the Criminal Term.

11                 I will be presiding over the case of the

12     People of the State of New York against Ms. Atara

13     Wisdom.  She has been charged with the crime of murder

14     in the second degree and she's alleged to have stabbed

15     to death Mr. Anthony Wilson on -- sometime between

16     November 29th, 2011, and January 3rd of 2012 inside of

17     832 Bushwick Avenue in the Bushwick section of

18     Brooklyn.

19                 I will tell you now, those charges -- that

20     charge is merely an allegation, merely an accusation,

21     it's not proof or evidence of anything.  A little later

22     on I will explain to you exactly what an indictment

23     represents.  However, before we proceed, what I'd like

24     to do is introduce the principal parties involved in

25     this matter.

mc

Voir Dire

1          First of all I'd like to introduce you to

2     Atara Wisdom, the defendant in this case.

3          Please stand, turn around and introduce

4     yourself.

5          THE DEFENDANT:  Hi everyone.

6          THE COURT:  She is being represented by an

7     attorney, Mr. Joshua Povill.

8          MR. POVILL:  Good morning.

9          THE COURT:  And her principal attorney, Mr.

10    David Walensky.

11         MR. WALENSKY:  Good afternoon.

12         THE COURT:  And representing the People, the

13    District Attorney of Kings County, Assistant District

14    Attorney Phyllis Chu will be trying this matter.

15         MS. CHU:  Good morning, ladies and gentlemen.

16         THE COURT:  Do any of you ladies and gentlemen

17    know any of the parties I have introduced or anyone else

18    in the courtroom, including myself?

19         I don't see any hands so I would assume all of

20    you do not know any of the participants.

21         We are in the process of selecting a jury

22    right now.  Ladies and gentlemen, we have ten jurors, we

23    need two more to complete the petit jury -- a jury of

24    twelve plus alternates is called a petit jury -- and we

25    need a couple of alternates, so we should finish the

Voir Dire

1    jury selection process hopefully if not by the end of

2    the morning session, certainly by the afternoon

3    session.

4             This jury selection process is known as the

5    voir dire.  It's a French term, to see them say.

6             Basically what we are concerned about is

7    getting, not only the Court, but the attorneys, both

8    defense and the people, they want jurors who are fair

9    and impartial and will make their determination solely

10   on the evidence or lack of evidence in the case.

11            So the process that we are engaging in is a

12   process which includes questioning you about your

13   background and your ability to be fair and to determine

14   whether you have any predisposition regarding this

15   matter and whether you can sit in this matter.

16            Fair and impartial, that is the hallmark of

17   jury selection and the selection of jurors.  So, please

18   do not be offended if we do ask some personal questions.

19   It's impossible to know all of you the way you know

20   yourselves, but we try to -- we try to eliminate any

21   infection, that is called prejudice, from the trial

22   process, so please indulge us while we do that.

23            The process is as follows:  I will make a

24   general inquiry of all of you jurors.  Do not respond

25   unless I ask for the response.  At the end of my general

Voir Dire

1    inquiry I will ask if any of the questions I've posed

2    affect you and you wish to make a statement.

3            Also, as I already stated, only you know

4    yourselves, not only you, you know yourselves better

5    than anyone else.  If there is something that would

6    prevent you from sitting, whatever it be or might be,

7    let the Court know because to have you selected as a

8    juror and then you come back after selection and say you

9    forgot this, you forgot that, I'm going to hear I got a

10   ticket for this, I can't do this, only makes me very

11   unhappy, and I don't like to be unhappy because it

12   really throws a wrench in the proceedings, all right.

13           And a lot of people come in here with the idea

14   I am not going to be selected.  You don't know if you're

15   going to be selected or not.  You may not, you may, but

16   to say later on, I forgot this just to get off jury

17   service -- not even to get off -- you gotta listen.

18           Now, this process is not an easy one to

19   participate in because it's very tedious, it's very

20   repetitious but very important.

21           So first I am going to do the general

22   inquiries.

23           Secondly, after I do that I am going to inform

24   you of certain principles of law that you must follow if

25   you're selected as a juror.

Voir Dire

1          And thirdly, there will be an individual voir

2     dire where I will ask you personally certain questions,

3     then following my individual voir dire, the individual

4     voir dire or jury selection process by the attorneys.

5     That's how it goes.

6          First of all, I'd like to know if any of you

7     ladies and gentlemen have any physical disabilities or

8     maladies that would prevent you from sitting for an

9     hour, an hour and fifteen minutes, it's not fixed in

10     stone, after an hour and ten minutes if you need a

11     break, we will take a break, if it's legitimate.

12          Any of you ladies and gentlemen taking any

13     medication or drugs that would disorient you to the

14     extent that you could not follow these proceedings, you

15     become dizzy, or disoriented?

16          And you really have to be in horrible physical

17     shape for me to excuse you, ladies and gentlemen.  So,

18     you know, everybody has a little ailment here.  We all

19     take drugs today for anything.  You have a headache, you

20     take something, whatever.  It has to be real serious.

21          I would also like to know if any of you ladies

22     and gentlemen have any difficulty understanding the

23     English language or communicating in the English

24     language.  If you do, please let me know.

25          I also would like to know if any of you ladies

mc

Voir Dire

1    and gentlemen have difficulty seeing or hearing, because

2    obviously there's going to be evidence in the case and

3    you're going to have to observe and read it, see it,

4    whatever, hear it.

5            I would also like to know if there are any

6    students attending school right now.  Are there any

7    students attending school right now?

8            Give your name.

9            PROSPECTIVE JUROR:  Thomas Lay (phonetic).

10           THE COURT:  What do you do?

11           PROSPECTIVE JUROR:  I am a part-time student,

12   part-time graduate student.  I have an obligation for

13   class over the summer.

14           THE COURT:  Are you taking class now?

15           PROSPECTIVE JUROR:  I am not enrolled at the

16   moment but I have an incomplete class that I am working

17   on finishing.

18           THE COURT:  This case -- let me just say, this

19   case should be over by next week, the latest Tuesday.

20   That's my guesstimate, all right.  Okay.

21           Is that all right with you?

22           PROSPECTIVE JUROR:  Yes.

23           THE COURT:  Sit down.

24           I would also like to know, is there anyone

25   here who doesn't understand English or has difficulty

Voir Dire

1    with the English language?

2              Just raise your hand.

3              No?  Okay.

4              We are only going to meet, if you're selected,

5    we are going to meet today, tomorrow and Wednesday and

6    then we'll return on -- what is it? -- the 8th.  You

7    don't have to worry about the holiday, you will be able

8    to buy firecrackers, do whatever you want, watch the

9    Macy's parade or whatever it is.

10             Anyway, what else was I going to say?

11             Oh, I would like to know if any of you ladies

12   and gentlemen have any religious, moral or ethical

13   reason why you cannot sit in judgment of Ms. Wilson.

14             I would also like to know if any of you ladies

15   and gentlemen were called to jury service, whether it be

16   in the federal court system, state court system or city

17   court system, or called to serve on the Grand Jury,

18   which is an entirely different legal entity, within this

19   period of time.

20             What's today's date?

21             THE CLERK:  Today is June 30th.

22             THE COURT:  Between the date of June 30th,

23   2012 and June 30th, 2014, if you were called, you didn't

24   have to sit, if you were called, they sent you a notice

25   to come in and you go in, that is all I want to know.

Voir Dire

1          What else?

2          MS. CHU:  Somebody raised their hand before.

3          THE COURT:  Who raised their hand?

4          Yes, ma'am?

5          PROSPECTIVE JUROR:  I am a Jehovah's Witness.

6          THE COURT:  That's okay.  I haven't gotten to

7     that part yet.

8               So right now I am going to go down row by row,

9     and if any of the questions I've posed affect you and

10    you want to speak to the Court, just stand and make your

11    statement.  Or if you have information that is known

12    only to you and it would prevent you from sitting, let

13    us know.

14              Also, like I said before, I don't suffer

15    excuses very easily or very gladly, ladies and

16    gentlemen, because if I accepted everybody's excuse, you

17    could never sit and listen to all the hundreds and

18    hundreds and hundreds of cases that go through the halls

19    of justice, so be aware of that.

20              All right.

21              So we are going row by row, and if you wish to

22    address the Court, just stand, give your name.  If it's

23    something very personal that you do not wish to reveal

24    before the rest of the jurors, let me know, you will be

25    able to make your statement at the bench.

Voir Dire

```
 1              First row, anyone?

 2              Second row?

 3              Third row?

 4              Fourth row?

 5              Fifth row?

 6              No one.

 7              Miss, you said you were Jehovah's Witness?

 8              PROSPECTIVE JUROR:  My name is Charlotte

 9    Lindsay-Gibson (phonetic).

10              THE CLERK:  Last name?

11              PROSPECTIVE JUROR:  Gibson.  Lindsay-Gibson.

12    I have two last names.

13              THE CLERK:  What is the other one?

14              PROSPECTIVE JUROR:  Lindsay.

15              THE COURT:  You know what, Ms. Gibson, you can

16    go downstairs and go to -- can I see your card?

17              All right.

18              So I don't see any other hands so we're going

19    to proceed.  I am going to proceed and inform you with

20    respect to the legal principles that apply to this

21    criminal trial and all criminal trials.

22              First of all, as I indicated, the mere fact

23    that Ms. Wisdom has been charged in the indictment with

24    this crime of murder in the second degree means -- I

25    will start all over again.
```

Voir Dire

1          The fact that she's been charged with these

2     crimes doesn't mean that there is any evidence that

3     she's committed these crimes or this crime.

4          The indictment really is a piece of paper that

5     reflects the charge and as a consequence that person is

6     brought into court and then the People have to prove

7     each and every material element of the crime charged

8     beyond a reasonable doubt.  That burden always remains

9     on the People, never shifts to the defendant.

10          It's merely an accusation, merely an

11     allegation and not proof of anything.

12          If you're selected as a juror, you are going

13     to be determining what the facts are in this case, and

14     after determining what the facts are, you will determine

15     what the evidence shows.  In other words, you'll

16     determine what the evidence is in this matter, or lack

17     of evidence, and then I will -- that will be your

18     province, you will be the judges, you are going to be

19     judges for a couple of days and you will determine what

20     the facts are in this matter.  I will not be able to

21     tell you what the facts are in this matter or what the

22     evidence is, all right.  But I will tell you at the

23     close of the case what the law is because that's my

24     province.

25          I am not allowed to interfere in your province

Voir Dire

1    and you are not allowed to interfere in mine.  You have

2    to take the law as I give it to you.

3            So once the case is concluded, you will take

4    the evidence or the facts in the matter, determine what

5    the evidence is and then I will give you the law and

6    then you will make a determination, which is called a

7    verdict.  Your verdict may be guilty or not guilty.  You

8    may find defendant guilty of some charges and not guilty

9    of others.

10           During the course of the trial the attorneys

11   are going to be making motions, applications and

12   objections.  I am going to be ruling on them as a matter

13   of law.  None of my rulings should be taken by you as

14   any indication whether you should believe all or part of

15   what is offered in evidence or that the defendant is

16   guilty or not guilty.  That is solely your function to

17   determine but you must accept the law as I give it to

18   you.

19           If the defendant and the People are to have a

20   fair trial to which they are entitled, you must follow

21   the law as I give it to you, whether you agree with it

22   or not, whether you like it or not.  You will agree not

23   to substitute your interpretation of the law.

24           Can you all do that, folks?

25           Will you all agree?

Voir Dire

1        You didn't have your coffee this morning?

2        I gotta hear in a loud and clear voice, yes or

3   no.

4        (Whereupon, the prospective jurors responded.)

5        THE COURT:  Thank you.

6        The reason I say that is because if I don't

7   hear from you, I don't know what you're thinking, I

8   don't know what you're feeling, all right.

9        Now, how many of you watch all these Law &

10  Order ridiculous shows?

11       Come on, everybody.  C.S.I., there's four

12  million of them right now.  How many states do we have,

13  fifty?  We have about fifty C.S.I.

14       You got all these forensic scientists coming

15  in and blah, blah, blah, it's all blah, blah.  By the

16  way, it's all entertainment, forget about them, okay.

17  Forget them.

18       Ninety-seven percent, in my opinion, of all of

19  the evidence comes in the form of what people say.

20  People get on the stand, they swear to tell the truth,

21  nothing but the truth, so help them God and they tell

22  you what they know, all right.

23       It's going to be up to you to determine

24  whether they are, one, telling the truth; two, lying;

25  three, mistaken.

Voir Dire

1          Those are the three options, all right.

2          That's basically most of the evidence.

3          So, you may say, well, what am I supposed to

4     do?

5          What you're supposed to do is take your life

6     experience, which means if you're eighteen or over you

7     have a life experience, and your common sense, which you

8     have not left outside the door, and when you go in the

9     jury room and you take that and you apply it to the

10    facts and the law in this case.  That's what you do,

11    okay.

12         You don't have to be a rocket scientist to be

13    a juror.  You don't have to have any level of education

14    to be a juror.  There is no school for jurors, all

15    right.

16         So what I am going to do, I'm going to give

17    you the names of people that you may hear during the

18    course of the trial or who may be witnesses during the

19    course of the trial, so then you let me know if you know

20    any of them.

21         The alleged victim in this case is Mr. Anthony

22    Wilson.  It's alleged he was stabbed to death by Ms.

23    Wisdom.

24         Victoria Wilson.

25         Shakeema Fortune.

mc

Voir Dire

1               Donet Robinson.

2               Matthew Shepard.

3               Linda Smith-Harris.

4               Detective Deborah Batanjani of the 83rd

5        Precinct.

6               Police Officer Garret Marsden of the 83rd

7        Precinct.

8               Police Officer Christian Carlin of the 83rd

9        Precinct.

10               Police Officer Juana Ortiz of the 83rd

11        Precinct.

12               Detective Geoffrey Hernandez of Brooklyn North

13        Homicide Squad.

14               And Detective Christopher Scandole of the

15        Brooklyn North Homicide Squad.

16               Detective Stephen Markoski of the N.Y.P.D.

17        Crime Scene Unit.

18               Dr. Frede Frederic or Scordi-Bello, it may be,

19        from the Medical Examiner's Office of the State of New

20        York.

21               Sarah Philipps of the Office of the Chief

22        Medical Examiner's DNA lab.

23               Ed Purce, P-U-R-C-E.

24               You will hear from a Sprint Nextel phone

25        representative.

Voir Dire

1    You will hear from a 911 representative and an

2  EBT representative.

3    What is that?

4    MS. CHU:  Welfare.

5    THE COURT:  Welfare representative.

6    Are any of you familiar with any of these

7  people, yes or no?

8    (Whereupon, the jurors responded.)

9    THE COURT:  Now, as jurors your verdict must

10  be unanimous.  Twelve jurors seldom agree immediately,

11  therefore you're called upon to deliberate.

12    Can you promise the defendant and the People

13  that you will be willing to participate in the

14  deliberations, express your views based on the evidence

15  in this case, keep an open mind and listen to the views

16  of other jurors?

17    Can you all do that?

18    Thank you.

19    Now, as Ms. Wisdom sits here she's cloaked

20  with this presumption of innocence.  That cloak can only

21  be removed if the jury finds her guilty beyond a

22  reasonable doubt.  So, she's presumed innocent at this

23  particular time, all right, and the People have the

24  burden of rebutting the presumption, if they can, by

25  presenting evidence which convinces you beyond a

mc

Voir Dire

1    reasonable doubt of the defendant's guilt.

2              In a criminal case the burden of proof is on

3    always on the People and remains with the People

4    throughout the course of the trial, never shifts to the

5    defendant.  The defendant is not required to produce any

6    evidence, is not required to produce witnesses and is

7    not required to testify.  Should she not testify, you

8    cannot hold it against her, okay.

9              Outside of this courtroom, outside of this

10   venue, the laws are different.  Johnny and Joey get into

11   some dispute, you go to Johnny, you go to Joey, you ask

12   Johnny what happened, you ask Joey what happened, then

13   you make up your mind and determine what really

14   happened.

15             Ms. Wisdom doesn't have to do a single,

16   solitary thing.  She doesn't have to testify.  The

17   attorneys, they can go to sleep if they want with

18   respect to her defense.  They are not going to do that,

19   they are going to present a defense, but that's the

20   law.

21             Does anyone have any difficulty accepting that

22   law as I have explained it?

23             Yes or no?

24             (Whereupon, the prospective jurors responded.)

25             THE COURT:  I am losing some of you.

Voir Dire

```
 1              Yes or no?

 2              (Whereupon, the prospective jurors responded.)

 3              THE COURT:  A criminal case is different than

 4      a civil case.  In a criminal case all the jurors must

 5      agree.  In a civil case only five of six need agree.  In

 6      a criminal case the People will prove the case beyond a

 7      reasonable doubt.  In a civil case the plaintiff must

 8      only prove his or her case by a fair preponderance of

 9      the credible evidence.

10              Now, everybody heard the term "reasonable

11      doubt."  I will not tell you what a reasonable doubt is

12      now but I will tell you, if you have a reasonable doubt

13      as to the defendant's guilt, then you must find her not

14      guilty.  In other words, if you are convinced of her

15      guilt beyond a reasonable doubt, then you must find her

16      guilty of the crime or crimes charged.

17              Now, you may say, what do I do when I get into

18      the jury room?

19              What I said is, you take your common sense,

20      your lifetime experience, you go into the jury room and

21      you focus.

22              What do you focus on?

23              The evidence or lack of evidence, not any

24      sympathy for Ms. Wisdom or the People's position in the

25      matter or witnesses.  You don't focus on what the
```

Voir Dire

1    punishment may be or what the sentence may be because

2    that's not your concern, all right.  It's irrelevant.

3    Those are irrelevant matters.

4          So, if someone was to bring up these matters,

5    you would have to say, madam, sir, Judge Tomei said we

6    have to do this, and let's get back on track.

7          Can you all do that, folks?

8          Now, there are going to be a number of police

9    officers testifying in this case.  I will tell you now,

10   they are to be treated like any other witness, they are

11   not to be given any greater believability or less

12   believability because they're police officers.  However,

13   if you feel, because of your own personal experience,

14   the experience of someone who's close to you or because

15   of what you have heard or seen or read in the media,

16   you feel you cannot be fair and impartial when it comes

17   to evaluating police officers' testimony, let me know

18   now.

19         Is there anyone who feels that way?

20         Okay.  All right.

21         So, the next step is, your name is going to be

22   called.  You will take a seat in the jury box.

23         We will seat sixteen jurors, all right, and

24   you will -- after you take a seat -- well, after you're

25   called, you say "present" or "here" so we know you are

mc

Voir Dire

1       here, you'll come, enter from my right, your left, into

2       the well of the courtroom, take a seat, then we'll

3       proceed to fill the rest of the box.

4                   So, we will proceed at this particular time.

5                   Go ahead.

6                   THE CLERK:  Seat number one will be Kingsley

7       McFarlane.

8                   Say "here" or "present," please.

9                   PROSPECTIVE JUROR:  Present.

10                  THE COURT:  Spell the name.

11                  THE CLERK:  M-C-F-A-R-L-A-N-E.

12                  PROSPECTIVE JUROR:  Correct.

13                  THE CLERK:  Seat two, William McNair.

14                  PROSPECTIVE JUROR:  Present.

15                  THE CLERK:  M-C-N-A-I-R.

16                  Seat three, Yung (phonetic) Lee, L-E-E.

17                  PROSPECTIVE JUROR:  Present.

18                  THE CLERK:  Seat four, Marlon (phonetic)

19      Laing.

20                  PROSPECTIVE JUROR:  Here.

21                  THE CLERK:  L-A-I-N-G.

22                  PROSPECTIVE JUROR:  That's correct.

23                  THE CLERK:  That's seat four.

24                  Seat five, Lorenzo Nolberto.

25                  You have to say "here" or "present."

Voir Dire

1        PROSPECTIVE JUROR:  Present.

2        THE CLERK:  Lorenzo N-O-L-B-E-R-T-O.

3        THE COURT:  N-O-L --

4        THE CLERK:  N-O-L-B-E-R-T-O.

5        Seat six Marco (phonetic) Phillips.

6        PROSPECTIVE JUROR:  Here.

7        THE CLERK:  P-H-I-L-L-I-P-S.

8        Seat seven, Leslie Larson.

9        PROSPECTIVE JUROR:  Here.

10       THE CLERK:  L-A-R-S-O-N.

11       Seat eight, Jawan (phonetic) Lamont.

12       PROSPECTIVE JUROR:  Present.

13       THE CLERK:  L-A-M-O-N-T.

14       PROSPECTIVE JUROR:  Yes.

15       THE CLERK:  Seat nine, Jerlanie (phonetic)

16  Roberts.

17       PROSPECTIVE JUROR:  Present.

18       THE CLERK:  R-O-B-E-R-T-S.

19       Seat ten, Renee Scott.

20       PROSPECTIVE JUROR:  Present.

21       THE CLERK:  S-C-O-T-T.

22       THE CLERK:  Seat eleven, Sarah (phonetic)

23  Harris.

24       PROSPECTIVE JUROR:  Here.

25       THE CLERK:  H-A-R-R-I-S.

Voir Dire

1          Seat twelve is Jerry (phonetic) Audige.

2          PROSPECTIVE JUROR:  Present.

3          THE CLERK:  A-U-D-I-G-E.

4          THE COURT:  Just do fourteen.

5          THE CLERK:  Just to fourteen?

6          THE COURT:  Yes.

7          THE CLERK:  Seat thirteen, Salion (phonetic)

8     Seivwright.

9          PROSPECTIVE JUROR:  Seivwright.

10          THE CLERK:  S-E-I-V-W-R-I-G-H-T.

11          And seat fourteen, Denise (phonetic) Chung.

12          PROSPECTIVE JUROR:  Present.

13          THE CLERK:  C-H-U-N-G.

14          THE COURT:  All right.

15          Mr. McFarlane, your neighborhood?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  What is your neighborhood?  Where

18     do you live?

19          PROSPECTIVE JUROR:  Oh, East New York.

20          THE COURT:  Thank you.

21          Mr. McNair?

22          PROSPECTIVE JUROR:  Bed-Stuy.

23          THE COURT:  Mr. Lee?

24          PROSPECTIVE JUROR:  Bay Ridge.

25          THE COURT:  Ms. Laing?

Voir Dire

1     PROSPECTIVE JUROR:  Canarsie.

2     THE COURT:  Mr. Nolberto?

3     PROSPECTIVE JUROR:  Crown Heights.

4     THE COURT:  Where?

5     PROSPECTIVE JUROR:  Crown Heights.

6     THE COURT:  Crown Heights.

7     Mr. Phillips?

8     PROSPECTIVE JUROR:  Bed-Stuy.

9     THE COURT:  Bed-Stuy.

10    Ms. Chung?

11    PROSPECTIVE JUROR:  East Flatbush.

12    THE COURT:  East Flatbush.

13    Ms. Seivwright?

14    PROSPECTIVE JUROR:  Brooklyn.

15    THE COURT:  What part of Brooklyn?

16    PROSPECTIVE JUROR:  Church Avenue.

17    THE COURT:  And where?

18    PROSPECTIVE JUROR:  Linden.

19    THE COURT:  Do you live in East Flatbush?

20    PROSPECTIVE JUROR:  East Flatbush.

21    THE COURT:  Okay.

22    How do you say it, Audige?

23    PROSPECTIVE JUROR:  Audige.

24    THE COURT:  Mr. Audige?

25    PROSPECTIVE JUROR:  Brownsville.

Voir Dire

1                THE COURT:  Ms. Harris?

2                PROSPECTIVE JUROR:  Bed-Stuy.

3                THE COURT:  Bed-Stuy.

4           Ms. Scott?

5                PROSPECTIVE JUROR:  East New York.

6                THE COURT:  Ms. Roberts -- Mr. Roberts, I'm

7      sorry?

8                PROSPECTIVE JUROR:  East Flatbush.

9                THE COURT:  East Flatbush, okay.

10          Mr. Lamont?

11               PROSPECTIVE JUROR:  Canarsie.

12               THE COURT:  Canarsie.

13          And Ms. Larson?

14               PROSPECTIVE JUROR:  Ditmas Park.

15               THE COURT:  Ditmas, all right.

16               First row, any of you ladies and gentlemen

17     familiar with the crime scene area, 832 Bushwick Avenue?

18     Anyone?

19               Second row, anyone?

20               Mr. McFarlane, married, single, separated,

21     divorced?

22               PROSPECTIVE JUROR:  Married.

23               THE COURT:  Your occupation?

24               PROSPECTIVE JUROR:  Nursing assistant.

25               THE COURT:  A what?

Voir Dire

1              PROSPECTIVE JUROR:  A nursing assistant.

2              THE COURT:  Nursing assistant, I'm sorry.

3              And your spouse, your wife?

4              PROSPECTIVE JUROR:  Social worker.

5              THE COURT:  City or private?

6              PROSPECTIVE JUROR:  City.

7              THE COURT:  Okay.

8              Mr. McNair?

9              PROSPECTIVE JUROR:  Single.

10             THE COURT:  Occupation?

11             PROSPECTIVE JUROR:  Executive assistant.

12             THE COURT:  Who do you work for?

13             PROSPECTIVE JUROR:  Ann Taylor Corporation.

14             THE COURT:  Ann Taylor?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Mr. Lee?

17             PROSPECTIVE JUROR:  Single.

18             THE COURT:  Occupation?

19             PROSPECTIVE JUROR:  System admin.  Tech,

20      technician.

21             THE COURT:  IT.

22             Ms. Laing?

23             PROSPECTIVE JUROR:  Care manager, community

24      based.

25             THE COURT:  I'm sorry.

mc

Voir Dire

```
 1                    Married, single?

 2                    PROSPECTIVE JUROR:  Married.

 3                    THE COURT:  You're married?

 4                    PROSPECTIVE JUROR:  Yes.

 5                    THE COURT:  Your occupation?

 6                    PROSPECTIVE JUROR:  Care manager,

 7          community-based organization in Brownsville.

 8                    THE COURT:  You're a care manager, that is for

 9          a not-for-profit organization?

10                    PROSPECTIVE JUROR:  Yeah.

11                    THE COURT:  And your spouse?

12                    PROSPECTIVE JUROR:  Retired.

13                    THE COURT:  What did he do before he retired?

14                    PROSPECTIVE JUROR:  Well, he was a factory

15          supervisor.

16                    THE COURT:  I'm sorry?

17                    PROSPECTIVE JUROR:  Factory supervisor.

18                    THE COURT:  Oh, factory supervisor.

19                    PROSPECTIVE JUROR:  Yes, sir.

20                    THE COURT:  Thank you.

21                    Mr. Nolberto?

22                    PROSPECTIVE JUROR:  Single.

23                    THE COURT:  Your occupation?

24                    PROSPECTIVE JUROR:  Unemployed.

25                    THE COURT:  What did you do before you were
```

Voir Dire

1    unemployed?

2              PROSPECTIVE JUROR:  I used to work at a

3    restaurant.

4              THE COURT:  Doing what?

5              PROSPECTIVE JUROR:  Like dishwashing.

6              THE COURT:  Okay.  Thank you.

7              Mr. Phillips?

8              PROSPECTIVE JUROR:  Single.

9              THE COURT:  Occupation?

10             PROSPECTIVE JUROR:  IT technician.

11             THE COURT:  Ms. Chung?

12             PROSPECTIVE JUROR:  Single.

13             Senior staff assistant.

14             THE COURT:  For what?  For whom?

15             PROSPECTIVE JUROR:  A hospital.  Hospital.

16             THE COURT:  Which hospital?

17             PROSPECTIVE JUROR:  Downstate Medical Center.

18             THE COURT:  Thank you.

19             Ms. Seivwright?

20             PROSPECTIVE JUROR:  Married.

21             THE COURT:  Occupation?

22             PROSPECTIVE JUROR:  Chef.

23             THE COURT:  Chef?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  And your spouse?

mc

Voir Dire

1              PROSPECTIVE JUROR:  Taxi driver.

2              THE COURT:  Taxi driver.

3              You must eat good.

4              PROSPECTIVE JUROR:  My throat is bad.

5              THE COURT:  Mr. Audige?

6              PROSPECTIVE JUROR:  Single.

7              THE COURT:  Occupation?

8              PROSPECTIVE JUROR:  Track worker.

9              THE COURT:  You work for MTA?

10             PROSPECTIVE JUROR:  Correct.

11             THE COURT:  Ms. Harris?

12             PROSPECTIVE JUROR:  Single.

13             THE COURT:  Occupation?

14             PROSPECTIVE JUROR:  Licensed social worker.

15             THE COURT:  Work for the City of New York?

16             PROSPECTIVE JUROR:  I work for a program that

17 is funded by organizations and partially nonprofit

18 funded.

19             THE COURT:  Okay.

20             Ms. Scott?

21             PROSPECTIVE JUROR:  Single.

22             THE COURT:  Occupation?

23             PROSPECTIVE JUROR:  I'm a student.

24             THE COURT:  What are you studying?

25             PROSPECTIVE JUROR:  Social work.

Voir Dire

1          THE COURT:  Okay.

2          Ms. Roberts -- Mr. Roberts, I'm sorry.

3          PROSPECTIVE JUROR:  Single.

4          THE COURT:  Single?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  And your occupation?

7          PROSPECTIVE JUROR:  I'm a teaching artist of

8    music.

9          THE COURT:  Are you doing that now?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  What instrument do you teach?

12   What do you teach?

13         PROSPECTIVE JUROR:  I teach how to play steel

14   band and drums.

15         THE COURT:  Okay.

16         Do you teach at a specific site?

17         PROSPECTIVE JUROR:  Well, it depends on the

18   school that employs me.

19         THE COURT:  Okay.

20         It's like you're an independent contractor, is

21   that what you do?  Are you certified by the Board of

22   Education or what?

23         PROSPECTIVE JUROR:  I have -- not by the Board

24   of Ed.  I work underneath the Department of Health,

25   actually.  I work with a company that is -- I don't

Voir Dire

1      know -- in tandem with the Department of Health.

2                     THE COURT:  You go to different schools?

3                     PROSPECTIVE JUROR:  Yeah.

4                     THE COURT:  Mr. Lamont?

5                     PROSPECTIVE JUROR:  Single.

6                     THE COURT:  And occupation?

7                     PROSPECTIVE JUROR:  I'm a student.

8                     THE COURT:  What are you studying?

9                     PROSPECTIVE JUROR:  Biology.

10                     THE COURT:  Ms. Larson?

11                     PROSPECTIVE JUROR:  Married.

12                     THE COURT:  Occupation?

13                     PROSPECTIVE JUROR:  Flight attendant.

14                     THE COURT:  What?

15                     PROSPECTIVE JUROR:  Flight attendant.

16                     THE COURT:  Flight attendant.

17                     And your spouse?

18                     PROSPECTIVE JUROR:  Insurance agent.

19                     THE COURT:  All right.

20                     Any of you in the first row, any of you ladies

21      and gentlemen ever served on a jury before?

22                     Second row, anyone?

23                     All right.

24                     First row, any of you ladies and gentlemen

25      ever been the victim of a crime, or someone close to

mc

Voir Dire

1    you?  Could have been a very serious crime, murder,

2    rape, whatever it might be, or even a simple chain

3    snatch?

4              Ever been the victim of a crime, anyone, or

5    someone close to you?

6              That is Mr. Phillips?

7              PROSPECTIVE JUROR:  Yes.

8              THE COURT:  What is it?

9              PROSPECTIVE JUROR:  I was hit by a car.

10             THE COURT:  It was a hit and run?

11             PROSPECTIVE JUROR:  It was kind of like -- not

12   hit and run.

13             THE COURT:  Was there an arrest made?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  And why --

16             PROSPECTIVE JUROR:  I was crossing.  I was

17   crossing.

18             THE COURT:  Why did they arrest the person who

19   hit you?

20             PROSPECTIVE JUROR:  Because he hit me and he

21   ran.  Basically, he was driving on the opposite side of

22   the street so --

23             THE COURT:  Reckless driving?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Okay.

mc

Voir Dire

1              Who else?

2              First row, anyone?

3              Mr. McNair?

4              PROSPECTIVE JUROR:  Mugging in Harlem.

5              THE COURT:  You were robbed in Harlem?

6              PROSPECTIVE JUROR:  Uh-huh.

7              THE COURT:  Was there a weapon involved?

8              PROSPECTIVE JUROR:  A knife.

9              THE COURT:  How long ago?

10             PROSPECTIVE JUROR:  Five years ago.

11             THE COURT:  Did you report it to the police?

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Was the perpetrator or

14       perpetrators ever apprehended?

15             PROSPECTIVE JUROR:  Nope.

16             THE COURT:  Anyone else, first row?

17             Second row?

18             Ms. Seivwright?

19             PROSPECTIVE JUROR:  My cousin.

20             THE COURT:  What about your cousin?

21             PROSPECTIVE JUROR:  Somebody killed her in the

22       house.

23             THE COURT:  He was murdered?

24             PROSPECTIVE JUROR:  She.

25             THE COURT:  She was murdered?

Voir Dire

1        PROSPECTIVE JUROR:  Yes.

2        THE COURT:  It was a friend?

3        PROSPECTIVE JUROR:  My cousin.

4        THE COURT:  Cousin?

5        PROSPECTIVE JUROR:  Yes.

6        THE COURT:  Sorry, I didn't hear that.

7        How long ago was that?

8        PROSPECTIVE JUROR:  Six years now.

9        THE COURT:  And they ever apprehend the person

10   or persons?

11        PROSPECTIVE JUROR:  No.

12        THE COURT:  Was a weapon involved?

13        PROSPECTIVE JUROR:  Stabbed, knife.

14        THE COURT:  Stabbed?

15        PROSPECTIVE JUROR:  Yes.

16        THE COURT:  Who else?

17        Ms. Harris?

18        PROSPECTIVE JUROR:  Robbed.

19        THE COURT:  Was a weapon involved?

20        PROSPECTIVE JUROR:  No.

21        THE COURT:  What happened?

22        PROSPECTIVE JUROR:  My phone was snatched out

23   of my hand while I was on it.

24        THE COURT:  Your cellphone?

25        PROSPECTIVE JUROR:  Uh-huh.

mc

1          THE COURT:  Okay.  Okay.

2          Who else?

3          Mr. Lamont?

4          PROSPECTIVE JUROR:  Close friend was killed as

5     a result of fraternity hazing.

6          THE COURT:  How did she die?

7          PROSPECTIVE JUROR:  It was a he.  It was

8     liquor hazing.  They tied him to a chair and asked him

9     questions and every question he got wrong, he took a

10    shot, and he passed out.

11         THE COURT:  Okay.

12         It was a fraternity?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Okay.

15         Anyone else?

16         First row, any of you ladies and gentlemen

17    ever accused of or arrested or convicted of a crime or

18    someone close to you?

19         Anyone ever accused or convicted of a crime or

20    arrested, or someone close to you?

21         PROSPECTIVE JUROR:  Someone close to me.

22         THE COURT:  Mr. McNair?

23         PROSPECTIVE JUROR:  Friend of mine by the name

24    of Antonio --

25         THE COURT:  What happened?

Voir Dire

1          PROSPECTIVE JUROR:  He was convicted for drug

2     sales.

3          THE COURT:  Of what?

4          PROSPECTIVE JUROR:  Drug sales.

5          THE COURT:  Okay.

6          Federal, state court?

7          PROSPECTIVE JUROR:  It was in St. Louis.  I

8     believe it was federal.

9          THE COURT:  Anyone else, first row?

10          Second row?

11          Mr. Lamont?

12          PROSPECTIVE JUROR:  Cousin, for assault.

13          THE COURT:  Cousin was convicted of assault?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Did he go to jail?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  How long -- is he still in jail or

18     out of jail?

19          PROSPECTIVE JUROR:  I think maybe four years.

20          THE COURT:  What kind of weapon, or was there

21     a weapon?

22          PROSPECTIVE JUROR:  I think it was with his

23     hands.

24          THE COURT:  Anyone else?

25          Mr. Audige?

Voir Dire

1   PROSPECTIVE JUROR:  Yes.  Me, myself, as a
2   minor.
3   THE COURT:  What were you arrested for?
4   PROSPECTIVE JUROR:  Robbery.
5   THE COURT:  How old were you at the time?
6   PROSPECTIVE JUROR:  Seventeen.
7   THE COURT:  What happened to the case?
8   PROSPECTIVE JUROR:  It got sealed.
9   THE COURT:  You got a YO, youthful offender?
10  PROSPECTIVE JUROR:  I'm not sure what it was.
11  I know they sealed it.  When I got out of the military,
12  I had to come here and the case was reopened and
13  sealed.
14  THE COURT:  So you got arrested at seventeen
15  for robbery?
16  PROSPECTIVE JUROR:  Correct.
17  THE COURT:  Was there a trial or did you plead
18  guilty?
19  PROSPECTIVE JUROR:  I took a plea bargain.
20  THE COURT:  What?
21  PROSPECTIVE JUROR:  I took a plea bargain.
22  THE COURT:  You took a plea.
23  Was it a misdemeanor that you took?
24  PROSPECTIVE JUROR:  No, it was a felony.
25  THE COURT:  So did they give you youthful

Voir Dire

1    offender, which means you would be treated as a minor,

2    not as an adult?

3              PROSPECTIVE JUROR:  Correct.

4              THE COURT:  You got a YO?  That is what that

5    is, youthful offender.

6              That's sealed?

7              PROSPECTIVE JUROR:  Correct.

8              THE COURT:  Anyone else?

9              All right.

10             First row, any of you, ladies and gentlemen,

11    related to, friendly or interact with any law

12    enforcement agents or attorneys?

13             Ms. Chung?

14             PROSPECTIVE JUROR:  My nephew's a lieutenant.

15             THE COURT:  Where?

16             PROSPECTIVE JUROR:  73rd Precinct.

17             THE COURT:  70...

18             PROSPECTIVE JUROR:  73rd Precinct.

19             THE COURT:  He's a lieutenant, right?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Anybody else?

22             Mr. McNair?

23             PROSPECTIVE JUROR:  My sister practices family

24    law in California.  She's an attorney.

25             THE COURT:  Okay.

Voir Dire

1              Who else?

2              Mr. Lee?

3              PROSPECTIVE JUROR:  Brother-in-law's brother

4      is a retired lieutenant.

5              THE COURT:  Your brother-in-law is a retired

6      lieutenant?

7              PROSPECTIVE JUROR:  Brother-in-law's brother.

8              THE COURT:  Brother-in-law's brother?

9              PROSPECTIVE JUROR:  Yeah.

10             THE COURT:  Is a retired lieutenant N.Y.P.D.,

11     okay.

12             Who else?

13             Anyone else, first row?

14             Second row?

15             Ms. Harris?

16             PROSPECTIVE JUROR:  My uncle's a retired

17     police officer in Massachusetts.

18             THE COURT:  Anyone else?

19             Mr. McFarlane, can you be fair and impartial

20     in this case?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Mr. McNair?

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Mr. Lee?

25             PROSPECTIVE JUROR:  Yeah.

Voir Dire

```
1              THE COURT:  Ms. Laing?

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Mr. Nolberto?

4              PROSPECTIVE JUROR:  Yeah.

5              THE COURT:  Mr. Phillips?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Ms. Chung?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  Ms. Seivwright?

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  Mr. Audige?

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Ms. Harris?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Ms. Scott?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Ms. Roberts -- Mr. Roberts?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  And Mr. Lamont?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  And Ms. Larson?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  All right, it's almost the

24     luncheon hour so we are going to take a break for the

25     lunch hour.  Please do not discuss the case amongst
```

Voir Dire

1    yourselves or with anyone else.  Please do not visit the

2    place where the alleged crimes occurred.

3             Have no contact with any of the parties

4    involved in this matter.  If you see us, ignore us.

5             Do not resort to utilizing any digital

6    electronic devices for the purpose of obtaining any

7    information about this case or talking to anybody about

8    this case.

9             Return here at two o'clock.

10            Do not enter until the Court Officers direct

11   you to so enter.

12            Take all your belongings.  You will exit

13   first, then those in the audience will follow.

14            Have a very good lunch.  You are being excused

15   for lunch.

16            (Whereupon, the panel of prospective jurors

17   exited the courtroom.)

18            THE COURT:  All right, those in the audience,

19   same instructions and return at two o'clock outside.

20            Do not enter unless Court Officers direct you

21   to enter.

22            Take all your belongings.

23            Thank you.

24            COURT OFFICER:  Judge, what would you like me

25   to tell the jurors in the room?

Voir Dire

1    THE COURT:  They're excused till 2:15.

2    Okay, two o'clock.

3    (Whereupon, a lunch recess was held.)

4    *                    *                    *

5    A F T E R N O O N       S E S S I O N

6    *                    *                    *

7    THE CLERK:  Case on trial continues.  All

8    parties present.  Defendant is present with her

9    attorney.  We are missing Walensky.

10    (Whereupon, there was a brief pause in the

11    proceedings.)

12    THE COURT:  Here he comes.  Just get those who

13    are in the jury box first and then the rest.

14    COURT OFFICER:  Jury panel entering.

15    (Whereupon, the panel of prospective jurors

16    entered the courtroom.)

17    THE COURT:  Take your seats in the jury box,

18    please.

19    THE CLERK:  Was anybody else seated in the

20    jury box that are seated in the audience?

21    THE COURT:  Who's that, Phillips?  Is it Ms.

22    Phillips?

23    See if she's outside.

24    MS. CHU:  Marco Phillips.

25    THE COURT:  A male, right, Mr. Phillips.

Voir Dire - People/Ms. Chu

1      (Whereupon, there was a brief pause in the

2   proceedings.)

3      THE COURT:  There he is.

4      We'll proceed at this time.

5      Go ahead, Ms. Chu.

6      MS. CHU:  Thank you.

7      Good afternoon, ladies and gentlemen.

8      Oh, oh, you guys had a big lunch, huh?

9      Good afternoon, ladies and gentlemen.

10      My name is Phyllis Chu and I am the attorney

11   who will be prosecuting this case should you be selected

12   as jurors.

13      Now, one of the things that the Judge said is

14   that ninety-three percent of the cases that he's ever

15   tried, most of it has evidence that comes in the form of

16   testimony.  Now, you know what that means, right?

17      What does that mean, sir, testimony?

18      Can you accept that that's a form of evidence?

19      PROSPECTIVE JUROR:  Yes.

20      MS. CHU:  Anybody here?

21      Ms. Chung, how do you feel about that?

22      PROSPECTIVE JUROR:  Yes.

23      MS. CHU:  You okay with that?

24      PROSPECTIVE JUROR:  Yes.

25      MS. CHU:  What he said about C.S.I. and Law &

Voir Dire - People/Ms. Chu

1    Order, and they never show this jury selection part on

2    those things and they have little commercials and it's

3    tied up with a bow in an hour.  If you want, you can

4    watch a marathon for the whole day, right.  This is not

5    going to be it, okay.

6              You understand that the people that are going

7    to come before you to talk are not actors, they are not

8    paid, they don't have scripts?

9              Can you all understand that?

10             Now, how many, when you were selected, to just

11   call your name to come up here, felt nervous?

12             No one was nervous?

13             Come on, you gotta be nervous.

14             Well, do you think that everybody shows how

15   nervous they are in the same way?

16             Why not?

17             PROSPECTIVE JUROR:  Different individuals,

18   different people.

19             MS. CHU:  Some people might cry when they are

20   nervous, some people laugh when they are nervous.

21             Can you all accept and keep an open mind

22   when you're listening to whoever testifies to see

23   whether or not what they say makes sense first, before

24   you make a determination as to whether or not they're

25   telling the truth or not telling the truth?  Can you

mc

Voir Dire - People/Ms. Chu

1      all do that?

2             Now, if you're selected as a juror in this

3      case, I can tell you that this case involved just two

4      people, Mr. Wilson and the defendant, there were no

5      other eyewitnesses or anybody else present at the time

6      that the murder occurred and I wanted to let you know

7      that the majority of the evidence you are going to hear,

8      that goes -- that proves my case is going to actually

9      come from what the defendant said to different people,

10     all right.

11            Now, can any of you think of some things that

12     would affect -- let me ask you this.

13            The first thing I want to say is, how many of

14     you have ever had any interaction at all with police in

15     the city here?

16            Pretty much everybody, right?

17            And I would imagine that the range of your

18     experiences would go from either very bad to very good,

19     right?

20            Would you all say that you kind of fell within

21     that parameter?

22            PROSPECTIVE JUROR:  Yes.

23            MS. CHU:  Now, do you think that if someone is

24     speaking to the police about something that they're

25     suspected of doing, or just speaking to the police in

mc

Voir Dire - People/Ms. Chu

1    general, that they might want to talk to the police?  Do

2    you think that's a possibility?  Yes?

3              PROSPECTIVE JUROR:  Yes.

4              MS. CHU:  You said yes or no?

5              PROSPECTIVE JUROR:  Yes and no.

6              They might tailor what they say for gains.

7              MS. CHU:  You think when talking to the police

8    they would put things in a light that's most favorable

9    to them?

10             PROSPECTIVE JUROR:  Yes.

11             MS. CHU:  That's possible?

12             PROSPECTIVE JUROR:  Yes.

13             MS. CHU:  Did you think there's a possibility

14   there might be some half truths, some whole truths and

15   mix it up?  Do you think that's a possibility?

16             PROSPECTIVE JUROR:  That is a possibility.

17             MS. CHU:  Mr. Nolberto, too much lunch?

18             PROSPECTIVE JUROR:  I'm okay.

19             MS. CHU:  Now, what I want to ask you, do you

20   think that the relationship that the person has to who

21   they're talking to makes a difference in determining

22   whether or not they're telling the truth?

23             Why do you think that?

24             PROSPECTIVE JUROR:  I am more likely to tell

25   the truth to someone that I know really close than

Voir Dire - People/Ms. Chu

1     someone --

2          MS. CHU:  Than like law enforcement?

3          PROSPECTIVE JUROR:  Yeah.

4          MS. CHU:  Are you the kind of people, do you

5     think you guys are -- let me back up.

6          You ever -- whether or not you're telling the

7     truth, right, from the moment you get up to the moment

8     you to go sleep, you're interacting with different

9     people, right?

10          Remember, the Judge says you take your life

11    experiences, you bring them with you.

12          PROSPECTIVE JUROR:  Yes.

13          MS. CHU:  Now, how many of you think that you

14    are able to, if you were given or selected as a juror in

15    this case, take a statement that was given by the

16    defendant and compare it and contrast it to other

17    evidence that you are going to hear in this case to make

18    your own determination as to what parts she said that

19    might be true, what parts that might be false?

20          So, you're going to have to do a little work

21    if you're selected as jurors.

22          Does everyone think they are up for that

23    challenge?

24          Yes?

25          Yes?

Voir Dire - People/Ms. Chu

1          PROSPECTIVE JUROR:  Yes.

2          MS. CHU:  Ms. Chung, you okay with that?

3          PROSPECTIVE JUROR:  It's difficult because I'm

4     not sure.  I don't know how to put yourself to have

5     control of another person's thing.  That's difficult for

6     me.  So, it's -- I'm not sure.

7          MS. CHU:  You're not sure if you can be a

8     juror in this case, is that what you're saying?

9          PROSPECTIVE JUROR:  To keep going with the

10    evidence, to put your life experiences, because you're

11    not -- your life experience is not the same as the

12    defendant so what --

13         MS. CHU:  What I meant by life experiences is

14    that if someone tells you something, someone gets on the

15    stand and says I heard the defendant say this, and what

16    they say matches with other evidence that you are going

17    to hear in this case, can you say, you know what, that

18    was supported by other evidence so I know that part was

19    true?

20         PROSPECTIVE JUROR:  If it's supported by other

21    evidence, then you have to take it at face value.

22         MS. CHU:  You have to take it at face value?

23         PROSPECTIVE JUROR:  Uh-huh.

24         MS. CHU:  Do you think kind of every person

25    can do that, like kind of resolve what someone's saying,

Voir Dire - People/Ms. Chu

1    what might be true and what parts might be false?

2               PROSPECTIVE JUROR:  It -- I guess, yes.

3               MS. CHU:  How about you, Ms. Seivwright, how

4    do you feel about that?

5               PROSPECTIVE JUROR:  It all depends.

6               MS. CHU:  All depends on what they say, if it

7    makes sense with all the other evidence, then you can

8    accept it, right?

9               Would you be able to do that?

10              PROSPECTIVE JUROR:  Depends what the person

11   says, if it's true or not.

12              MS. CHU:  I don't understand what you mean.

13              PROSPECTIVE JUROR:  Depends on what the

14   witness says.

15              MS. CHU:  If the witness tells you something

16   and what you hear from another witness supports what

17   that person says that the defendant said, would you be

18   able to say, okay, I know that part's true, or you have

19   to pick apart what they say to see what is true or not

20   true?  Can you do that?

21              PROSPECTIVE JUROR:  Maybe.

22              MS. CHU:  Maybe.

23              Are you the kind of person that says I'm not

24   so good at that?

25              PROSPECTIVE JUROR:  Yeah.

Voir Dire - People/Ms. Chu

1          MS. CHU:  You're more like that?

2          PROSPECTIVE JUROR:  Yes.

3          MS. CHU:  Obviously there's no jury school,

4     you guys don't go away for six weeks and learn to be

5     perfect jurors.  You guys use the same things that you

6     use every day, that is what you need to use when you're

7     here.  There is no special ingredient.  Who could be

8     better a juror than another juror?

9          All you have to do is just keep an open mind.

10         Can you all promise me you can do that and not

11    make a decision before the person testifies, about

12    whether or not you believe them or not, just wait and

13    hear what they say, see if it makes sense and kind of

14    see the other evidence you are going to hear?  Can you

15    do that?

16         Now, the Judge told you that your job is to

17    be the determiners of the facts, meaning you have to

18    figure out what happened.  He's in charge of the law,

19    right.

20         Now, if the Judge tells you that the burden is

21    always on me, are you going to promise me that you are

22    going to hold me to my burden of proving what I have to

23    prove beyond a reasonable doubt?

24         Can you all promise me that?

25         Now, on the flip side of that, there's certain

mc

Voir Dire - People/Ms. Chu

1    things I don't have to prove, like I don't have to prove

2    what the weather was like for that period of time, I

3    don't have to tell you who won the lottery.

4             Are you all going to promise me that in

5    addition to holding me to my proving what I have to

6    prove, you will also not hold me to a burden of proving

7    something that I don't have to prove?

8             Do you understand what I'm asking you?

9             Is everybody okay with doing the same thing?

10            The last thing I want to talk about has to do

11   with sympathy.  We can't -- I'm sorry.

12            If you all would just look at the defendant.

13   She's a young woman.  Is there anyone here that thinks

14   that you wouldn't be able set aside how she appears in

15   your deliberations, in deciding what happened in this

16   case?

17            Everybody okay with, you know -- I mean,

18   somebody might say, you know what, she reminds me of my

19   sister, she reminds me of my daughter, whatever, that is

20   going to affect my ability to listen to the evidence in

21   this case?

22            Yes, Ms. Seivwright?

23            PROSPECTIVE JUROR:  Yes.

24            MS. CHU:  Would you have a problem with that?

25   You would not be able to separate that?

mc

Voir Dire - People/Ms. Chu

1          PROSPECTIVE JUROR:  No.

2          MS. CHU:  How about you, Ms. Chung?

3          PROSPECTIVE JUROR:  No, it's -- yes.

4          MS. CHU:  Yes, you would be able to

5     separate that?

6          PROSPECTIVE JUROR:  Uh-huh.

7          MS. CHU:  How about you, Ms. Scott?

8          PROSPECTIVE JUROR:  I will be able to.

9          MS. CHU:  Ms. Seivwright, thank you for being

10    so honest.

11          When we get to really talking, do you feel as

12    though you might be like Ms. Seivwright, you know, what

13    I don't know, if I can separate that?

14          Everybody else is okay?

15          THE COURT:  Thank you.

16          MS. CHU:  Thank you.

17          THE COURT:  Go ahead.

18          MR. WALENSKY:  Anybody here think I have to

19    prove anything, that I have to prove that my client is

20    innocent?

21          Now, you understand, Mr. McFarlane, that this

22    isn't about guilt or innocence?

23          PROSPECTIVE JUROR:  Yes.

24          MR. WALENSKY:  Really, it's just about what

25    Ms. Chu had said, that she has the burden of proof, it's

Voir Dire - Defendant/Mr. Walensky

1    really only about her ability to prove her case beyond a

2    reasonable doubt.

3            Do you have any problems with that, Ms. Laing?

4            PROSPECTIVE JUROR:  No, sir.

5            MR. WALENSKY:  Because if the People are

6    presenting their evidence, the Judge will tell you what

7    beyond a reasonable doubt is, what the criteria is.  If

8    they haven't proven the case, you would have to say not

9    guilty, wouldn't you, Ms. Harris?

10           PROSPECTIVE JUROR:  Yes.

11           MR. WALENSKY:  And Ms. Chu touched upon

12   police.  We all react differently.  Has anyone been

13   stopped and frisked?

14           Okay, Mr. Phillips.  You felt pretty helpless,

15   right?

16           PROSPECTIVE JUROR:  Pretty much.

17           MR. WALENSKY:  The police are holding all the

18   cards, so to peak?

19           PROSPECTIVE JUROR:  Pretty much.

20           MR. WALENSKY:  Did you feel nervous, like you

21   had to talk to them?

22           PROSPECTIVE JUROR:  Not really.  I mean, I

23   know like the procedures.  So I got stopped a few times,

24   I know the procedures.

25           MR. WALENSKY:  But you don't have to talk to

mc

Voir Dire - Defendant/Mr. Walensky

1      them if they ask you questions?

2              PROSPECTIVE JUROR:  Sometimes.  It depends.

3              MR. WALENSKY:  Now, but they were essentially

4      controlling that entire situation, right?

5              PROSPECTIVE JUROR:  Uh-huh.

6              MR. WALENSKY:  You are not going to resist

7      because it would be foolish?

8              PROSPECTIVE JUROR:  Exactly.

9              MR. WALENSKY:  Now, people have -- we talk

10     about witnesses and being able to speak and listen and

11     evaluate a witness.

12             Now, Ms. Larson -- well, withdrawn.

13             Everybody --

14             Anybody here know somebody who abuses drugs or

15     alcohol?

16             Okay, Ms. Harris.  Now, that person might be

17     abusing -- I'm not asking who or anything -- that person

18     who abuses drugs or alcohol, they are not always lucid,

19     would you agree?

20             PROSPECTIVE JUROR:  Correct.

21             MR. WALENSKY:  And the longer that somebody

22     abuses a substance, the less lucid they are about

23     everyday events?

24             MS. CHU:  Objection.

25             THE COURT:  Objection sustained.

mc

Voir Dire - Defendant/Mr. Walensky

1          MR. WALENSKY:  In your experience.

2          MS. CHU:  Objection.

3          THE COURT:  Sustained.

4          MR. WALENSKY:  All right.

5          THE COURT:  Sustained.

6          MR. WALENSKY:  Okay.

7          Now, there are -- you understand that in terms

8     of burden of proof, if I had to prove anything it would

9     change that burden.  Do you understand that concept, Mr.

10    Lamont?

11         PROSPECTIVE JUROR:  Yes.

12         MR. WALENSKY:  And the reason is you know we

13    are --

14         Where were you, Ms. Seivwright, three weeks

15    ago at 3:00 in the morning?  Don't know, right?

16         PROSPECTIVE JUROR:  Don't remember.

17         MR. WALENSKY:  Do you live alone?

18         PROSPECTIVE JUROR:  Yeah.

19         MR. WALENSKY:  So someone says, well, where

20    were you, you'd say I was home, I was a asleep.  Well,

21    prove it.

22         How can I prove it?

23         You understand?  Somebody is saying you're

24    guilty of something, that would change the burden.  You

25    see?

Voir Dire - Defendant/Mr. Walensky

1          THE COURT:  Let's get away from this.  Don't

2     go off on the burden.  Go on to something else, all

3     right.

4          MR. WALENSKY:  Anyone who has a problem

5     sitting on a case because of the subject matter?

6          PROSPECTIVE JUROR:  I probably would.

7          MR. WALENSKY:  You would, okay.

8          Because of the nature?

9          PROSPECTIVE JUROR:  This makes me really

10    uncomfortable.

11         THE COURT:  It makes you uncomfortable, but

12    can you sit if you're chosen and be fair and impartial?

13         PROSPECTIVE JUROR:  Yes, I can.

14         THE COURT:  A lot of things make people

15    uncomfortable.  That's life.

16         You understand that?

17         PROSPECTIVE JUROR:  Yeah.

18         THE COURT:  Proceed.

19         MR. WALENSKY:  Essentially, Mr. Lee, if you're

20    chosen will you be able to look at the evidence and if

21    called for give a verdict of guilty?

22         PROSPECTIVE JUROR:  Yes.

23         MR. WALENSKY:  If called for, to give a

24    verdict of not guilty?  Do you understand?

25         It's not a matter of a feeling.

Voir Dire - Defendant/Mr. Walensky

1          Ms. Scott, you might say, gee, I think that

2     the person is guilty but they haven't proven their case

3     beyond a reasonable doubt, you'd have to say not

4     guilty.

5          PROSPECTIVE JUROR:  Yes.

6          MR. WALENSKY:  They might not have proven the

7     case, I have all kinds of questions, if they haven't

8     proven their case beyond a reasonable doubt, you would

9     have to say not guilty, wouldn't you?

10          PROSPECTIVE JUROR:  No.

11          MR. WALENSKY:  I am going to --

12          There are no bosses here.  I ask you to take

13     the time, if you're selected, that would be necessary.

14     Is there anyone here who has a pressing schedule?

15          We all have things we have to do.  What I am

16     concerned about in the jury room, it's I can't sit here

17     any more, whether it's an eleven to one for conviction

18     or an eleven to one for acquittal, changing not because

19     of someone convincing you but because of time factors.

20     Is there anyone who wouldn't be able to sit on the jury

21     with the total commitment necessary?

22          PROSPECTIVE JUROR:  You mean the hours or

23     from --

24          MR. WALENSKY:  It could be days.  It takes

25     however long it takes, until the Judge --

mc

Voir Dire - Defendant/Mr. Walensky

1          THE COURT:  The fact is, ladies and

2    gentlemen --

3          The question really is, if you have a

4    particular view of the evidence and a particular view of

5    guilt or non-guilt of the defendant, are you going to

6    change your opinion merely because of time

7    considerations?  Are you going to say, oh, I gotta get

8    out of here, I gotta go somewhere, or are you going to

9    have those time constraints affect your judgment?

10         In other words, is that going to affect your

11   ability --

12         PROSPECTIVE JUROR:  My only thing is if -- I

13   take a class on Tuesday and Thursday from 6:00 to 9:30

14   at night.

15         THE COURT:  I forgot to tell you, we don't

16   have sequestration so you will not be kept overnight.

17         PROSPECTIVE JUROR:  Okay.

18         THE COURT:  But if you're in a situation, like

19   the attorney said, where it's -- you're the lone person

20   holdout whether for guilt or non-guilt and you just

21   change your mind because it's convenient or because it's

22   a time consideration, are you going to do that?

23         PROSPECTIVE JUROR:  No, no, no.

24         THE COURT:  All right, go ahead.

25         Anybody going to do that?

mc

Voir Dire - Defendant/Mr. Walensky

1    MR. WALENSKY:  Ms. Seivwright, you had some

2    question.  Were you going to raise your hand about

3    something?

4    PROSPECTIVE JUROR:  I think I don't feel

5    comfortable.

6    THE COURT:  You indicated that you are not

7    comfortable, right?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:  All right.  Let's continue.

10   MR. WALENSKY:  Thank you.

11   I have no further questions.  Thank you,

12   ladies and gentlemen.

13   THE COURT:  Ladies and gentlemen, I am going

14   to ask you to step outside.  Do not discuss the case

15   amongst yourselves or anyone else.  Do not visit the

16   place or premise.  You don't have to do that.  Just step

17   outside and do not engage in any conversation.  We'll

18   call you back in, in a few minutes.

19   (Whereupon, the panel of prospective jurors

20   exited the courtroom.)

21   THE COURT:  All right, those ladies and

22   gentlemen in the audience, same instruction, we'll ask

23   you to vacate your seats and we'll call you back in a

24   few minutes.

25   Do not disappear.

mc

Voir Dire

1          (Whereupon, the panel of prospective jurors

2     exited the courtroom.)

3               THE COURT:  All right, let's go.

4               First two, cause?

5               MS. CHU:  No.

6               THE COURT:  Cause?

7               MR. WALENSKY:  No.

8               THE COURT:  All right.

9               Perempt?

10              MS. CHU:  None.

11              THE COURT:  Perempt?

12              MR. WALENSKY:  No.

13              THE CLERK:  Kingsley McFarlane is juror number

14     eleven.

15              THE COURT:  And McNair is number twelve, all

16     right.

17              All right.

18              First alternate, Lee, cause?

19              MS. CHU:  No.

20              THE COURT:  Cause?

21              MR. WALENSKY:  No.

22              THE COURT:  Perempt?

23              MS. CHU:  No.

24              THE COURT:  Perempt?

25              MR. WALENSKY:  Yes.

Voir Dire

1              THE COURT:  Perempt defense.

2              Laing, cause?

3              MS. CHU:  No.

4              THE COURT:  Cause?

5              MR. WALENSKY:  No.

6              THE COURT:  Perempt?

7              MS. CHU:  No.

8              THE COURT:  Perempt?

9              MR. WALENSKY:  Yes.

10             THE COURT:  Then you're out.  I mean, you have

11     no further challenges except for --

12             THE CLERK:  You challenged Lee and Laing.

13             MR. WALENSKY:  Yes.

14             THE COURT:  Nolberto, cause?

15             MS. CHU:  No.

16             THE COURT:  Cause?

17             MR. WALENSKY:  No.

18             THE COURT:  Perempt?

19             MS. CHU:  Yes.

20             THE COURT:  That's it for the People.

21             MS. CHU:  Sorry, can you just give me one

22     moment?  My pen ran out of ink.

23             THE COURT:  Phillips, cause?

24             MS. CHU:  Phillips, no.

25             THE COURT:  Cause?

Voir Dire

1          MR. WALENSKY:  No.

2          THE COURT:  Perempt?

3          MS. CHU:  No.

4          THE COURT:  All right, that's alternate one.

5          All right, Larson, cause?

6          MS. CHU:  No.

7          THE COURT:  Cause?

8          MR. WALENSKY:  No.

9          THE COURT:  Perempt?

10         MS. CHU:  No.

11         THE COURT:  Perempt?

12         MR. WALENSKY:  No.

13         THE COURT:  All right, so she's alternate two.

14         I'll do one more.

15         Lamont, cause?

16         MR. WALENSKY:  No.

17         THE COURT:  Wait a minute.

18         People?

19         MS. CHU:  No.

20         THE COURT:  No, defense?

21         MR. WALENSKY:  No.

22         THE COURT:  Perempt?

23         MS. CHU:  No.

24         THE COURT:  Perempt?

25         MR. WALENSKY:  Yes.

Voir Dire

1          THE COURT:  Roberts, cause?

2          MS. CHU:  No.

3          THE COURT:  Cause?

4          MR. WALENSKY:  No.

5          THE COURT:  Perempt?

6          MS. CHU:  No.

7          THE COURT:  Cause?

8          MR. WALENSKY:  No.

9          THE COURT:  Roberts is selected.

10         Alternate two -- three.

11         MS. CHU:  You want to do a fourth one, just in

12    case?

13         THE COURT:  No.

14         MS. CHU:  We are going to have four days off.

15         THE COURT:  You want a fourth one?

16         MS. CHU:  We're going to be out four days.

17    Thursday, Friday, Saturday, Sunday, Monday, five days,

18    actually.

19         THE COURT:  Scott, cause?  Cause, yes or no?

20         MR. WALENSKY:  No.

21         MS. CHU:  No.

22         THE COURT:  Perempt?

23         MS. CHU:  I perempt her.

24         THE COURT:  Let's see.

25         People, Harris, cause?

Voir Dire

1        MS. CHU:  No.

2        THE COURT:  Cause?

3        MR. WALENSKY:  No.

4        THE COURT:  Perempt?

5        MS. CHU:  No.

6        THE COURT:  Perempt?

7        MR. WALENSKY:  No.

8        THE COURT:  That's alternate four.

9        All right, let's go.

10       MS. CHU:  Thank you.

11       THE COURT:  Get the panel, put them in the

12  front.

13       COURT OFFICER:  All the jurors?

14       THE COURT:  No, just the panel.

15       MR. WALENSKY:  Before we open I would like to

16  use the restroom.

17       THE COURT:  You don't have any witnesses

18  today?

19       MS. CHU:  I do.  I have a Crime Scene guy.

20       COURT OFFICER:  Jury panel entering.

21       (Whereupon, the panel of prospective jurors

22  entered the courtroom.)

23       THE COURT:  All right, let's go.

24       COURT OFFICER:  We're missing one.

25       (Whereupon, there was a brief pause in the

Voir Dire

1        proceedings.)

2                    COURT OFFICER:  He went to the restroom.

3                    THE COURT:  All right, let's go.

4                    THE CLERK:  All right, ladies and gentlemen,

5        if you hear your name called that means you have been

6        selected to serve as a juror.  If you do not hear your

7        name called, you're excused with the thanks of the

8        Court.  Go back to the second floor, Central Jury, if

9        you don't hear your name called.  If you hear your name

10       called, please say "here" or "present."

11                   Juror number eleven will be Kingsley

12       McFarlane.

13                   PROSPECTIVE JUROR:  Here.

14                   THE CLERK:  Juror number twelve, William

15       McNair.

16                   You have to say "here" or "present."

17                   PROSPECTIVE JUROR:  Here.

18                   THE CLERK:  Alternate one, Marco Phillips.

19                   Alternate two, Leslie Larson.

20                   PROSPECTIVE JUROR:  Here.

21                   THE CLERK:  Alternate three, Jerlanie

22       (phonetic) Roberts.

23                   PROSPECTIVE JUROR:  Here.

24                   THE CLERK:  And alternate four, Sarah Harris.

25                   PROSPECTIVE JUROR:  Here.

Proceeding

1          THE CLERK:  The rest of you can go back to

2     Central Jury, second floor.

3          THE COURT:  Line up the other jurors, please.

4          THE CLERK:  Will the six of you rise and raise

5     your right hand.

6          Do each of you sincerely and solemnly swear or

7     affirm that you will try this case in a just and

8     impartial manner to the best of your judgment and you

9     will render a verdict according to the law and evidence?

10         Your response?

11         (Whereupon, the jurors responded.)

12         THE CLERK:  Have a seat for right now.

13         The rest of the jurors can be excused.

14         COURT OFFICER:  Down to two?

15         THE CLERK:  Yes.

16         (Whereupon, there was a brief pause in the

17    proceedings.)

18         THE COURT:  All right, have the jurors seated.

19         COURT OFFICER:  One of them is using the

20    restroom.

21         THE COURT:  Okay.

22         (Whereupon, there was a brief pause in the

23    proceedings.)

24         COURT OFFICER:  Ready for the panel?

25         THE COURT:  They're lined up?

Proceeding

```
 1              COURT OFFICER:  Yes.

 2              THE COURT:  Bring them in.

 3              COURT OFFICER:  Jury entering.

 4              (Whereupon, the Jury entered the courtroom.)

 5              THE COURT:  All right, the rest of the jurors,

 6      fill the box.

 7              Come on guys, let's go.

 8              THE CLERK:  Juror number eleven is Kingsley

 9      McFarlane.

10              THE COURT:  Come on up, sir.  Come around.

11              THE CLERK:  Juror number twelve, William

12      McNair.

13              Alternate number one, Marco Phillips.

14              Alternate two, Leslie Larson.

15              Alternate three, Jerlanie Roberts.

16              And alternate four, Sarah Harris.

17              THE COURT:  Juror number one, your name?

18              PROSPECTIVE JUROR:  Avelon Ramnath.

19              THE COURT:  Ms. Ramnath, you are going to be

20      the foreperson of the jury.  In other words, you will

21      have no greater powers or less powers than any other

22      juror except at the close of the case you will read the

23      verdict.  You understand that's what your job will be,

24      okay?

25              PROSPECTIVE JUROR:  Okay.
```

Proceeding

1          THE COURT:  Okay.  Very good.

2          All right, madam forelady, ladies and

3    gentlemen of the jury, at this point I am required to

4    instruct you generally concerning your basic functions,

5    duties and conduct and to acquaint you in a general way

6    with the trial procedure and certain rules which apply

7    to every jury so that you will be better able to assess

8    and weigh the evidence as it is presented and reach a

9    proper verdict.

10          The trial commenced with the selection of the

11    jury.  The next step in the trial will be an opening

12    statement by the People, represented by the Assistant

13    District Attorney, during which she's required by law to

14    indicate to you what she intends to prove by way of

15    evidence to support the charges set forth against this

16    defendant.

17          Following that, defense counsel, if he

18    desires, may also make an opening statement, but what

19    counsel for either party says in an opening statement is

20    not evidence.  You may consider the opening statement as

21    merely a preview of what each side intends to show by

22    way of evidence in the case.

23          After the opening statement or statements, the

24    Assistant District Attorney will present a witness or

25    witnesses who will be questioned by her.  This is called

mc

Proceeding

1       direct examination.  After the Assistant District

2       Attorney completes her questions, defense counsel will

3       be given an opportunity to question the witness.  This

4       is called cross-examination.  After the People have

5       concluded the calling of their witnesses and

6       introduction of any exhibits which are admissible into

7       evidence, the defendant may offer evidence in his

8       defense.

9               After the defendant rests and People rest, the

10      defendant may make a closing argument following which

11      the People may make a closing argument, then I will

12      charge you on the law, then you will retire to

13      deliberate for purpose of reaching a verdict.  That is a

14      general outline of trial procedure.

15              For the most part, evidence consists of

16      testimony of witnesses under oath and exhibits which are

17      introduced into evidence.  Questions in and of

18      themselves are not evidence.  Therefore, you cannot

19      infer any facts from the mere asking of a question.  It

20      is the answer coupled with the question that constitutes

21      evidence.

22              For example, if a witness was asked a

23      question, do you own an automobile, and the witness

24      answered no, you cannot and you may not infer from his

25      answer that he in fact owns an automobile.

Proceeding

1        During the course of the trial either

2   attorney, Assistant District Attorney or the defense

3   counsel, may object to a question or an answer on the

4   ground that somehow it is legally improper or

5   inadmissible.  If I sustain the objection, this means

6   that I believe that the question and the answer is in

7   some manner improper, therefore in the first instance

8   the question may not be asked, in the second instance,

9   if an answer has been given, I will say "strike it out,"

10  therefore the answer is no longer evidence in the case.

11  If I overrule the objection, that means that the

12  question is proper and I will permit it to be answered,

13  or if already answered, I will permit the answer to

14  stand as evidence in the case.

15        Please do not resent the fact that either

16  attorney makes objections, this is their duty, and do

17  not hold it against either attorney if I rule against

18  them.

19        As I have explained to you in detail in my

20  charge, as jurors in this case you are the sole judges

21  of the facts and I am the sole judge of the law.  You

22  must accept the law as I give it to you without

23  hesitation or reservation, even if you privately

24  disagree with me.

25        You must keep an open mind, you must not speak

Proceeding

1    or talk among yourselves or with anyone else on any

2    subject connected with the trial.

3              You must not either offer nor express an

4    opinion as to the guilt or non-guilt of the defendant

5    until I finally give the case to you.

6              You must not read or listen to any account or

7    discussion of the case in the event that it's reported

8    in newspapers or other media.

9              Now, ladies and gentlemen, this admonition by

10   the Court that you are not to discuss the case amongst

11   yourselves or with anyone else is probably the most

12   difficult to comply with because it's counterintuitive,

13   it's counter to human nature.  When people are thrown

14   together for a short period of time, the natural thing

15   is if they hear or see something, one turns to the

16   other, did you hear that, did you see that, and they

17   start talking about it.  You are not to allowed to do

18   that while the case is in progress.  You are not allowed

19   to do that when you leave here.  You are not allowed to

20   do that when you go home.  And when you go home, it's

21   probably going to be even more difficult because

22   probably if you have somebody at home, they're going to

23   be saying, oh, you are on a trial, what kind of case is

24   it?  You say, I can't tell you.  Why?  Because the Judge

25   instructed us that we are not to discuss the matter till

Proceeding

1    the matter is over.  And the fact of the matter is,

2    ladies and gentlemen, I'm sure whoever is at home will

3    understand, you say this case is not going to be going

4    for a very long period of time, in fact we're only

5    meeting about three days this week, today and Tuesday

6    and Wednesday, then a couple of days maybe next week,

7    all right, after the holiday.  So, you gotta be

8    resolute, you say, listen, I will tell you all about it

9    once it's over with, all right.

10                You must not visit or view the premises or

11   places where the alleged crime was committed or any

12   other premise or places involved in the case.  Promptly

13   report any incident within your knowledge involving any

14   attempt by any person who seeks to improperly influence

15   any member of the jury.  Also, you are not to have any

16   contact with any of the parties involved in this matter.

17   You know, you come in the morning -- this, again, is

18   counterintuitive because people who are thrown together

19   for a period of time, they like to exchange normal civil

20   amenities, good morning, how are you, nice day, blah,

21   blah, you are on your way, right.  Let's assume Ms.

22   Ramnath comes in the morning and Ms. Chu is in the

23   hallway and she wants to say hello and, well, the fact

24   is that's not permitted.  Although her intentions are

25   very innocent, she just wants to be nice and friendly,

mc

Proceeding

1    she is not allowed to do that.  You're not allowed to

2    even, when you pass me or anybody else involved here, go

3    "hi," anything like that.  Don't arch your eyebrow.  You

4    are not allowed to do that, all right.  Because, in

5    effect, it's a violation of a rule that we call the

6    appearance of impropriety.  You're not doing anything

7    wrong, you're trying to be nice and you're not allowed

8    to do that also, and until you are discharged from

9    service, then you can speak to anybody you wish or you

10   can have anybody you wish speak to you, and that will

11   rest within your discretion, okay.

12           Another thing I'm always asked, if they may

13   take notes.  I am going to permit you to take notes.

14   You will be provided with pens and a notebook so that

15   you may take these notes.  You are not required to take

16   notes.  Whether you choose to take notes, it's entirely

17   up to you.  Each individual must decide for yourselves

18   whether taking notes assist you in refreshing your

19   recollection of the proceedings.  Now, some people may

20   find it difficult to take notes and also pay attention

21   to the trial.  You should not feel any pressure to take

22   notes because some fellow jurors may choose to do so.

23   If you are note taking and you feel because of the note

24   taking you will not be able to concentrate on the

25   proceedings, then feel free not to take notes.  If you

Proceeding

1    do decide to take notes, you must be careful not to let

2    your note taking become a distraction from the

3    proceedings.

4             You must bear in mind that notes are merely an

5    aide to your memory, they are for your personal use

6    alone, to help you refresh your recollection of the

7    evidence, but they are not superior to any juror's

8    independent recollection of what took place during the

9    proceedings.  Most importantly, they are not a

10   substitute for the official record of the proceedings

11   which is assembled by the Court Reporter, this young

12   lady right here.  If you remember what occurred during

13   the proceedings is different than what you have written

14   in your notes, you should request a readback of the

15   transcript.  If there is a difference between your notes

16   and the official transcript of the proceedings, you must

17   rely on the official transcript and not the notes.

18            This rules applies not only to evidence but

19   also to any differences that might exist between your

20   notes and the official record of my instructions on the

21   principles of law that govern the case.

22            If you do not take notes, you should rely on

23   your own recollection of the evidence and my

24   instructions on the law and you must not be swayed by

25   the fact that another juror may have notes indicating

Proceeding

1    that the evidence or the Court's charge on the law was

2    different than you recall.

3            If there is a dispute about the evidence or

4    the Court's instructions, jurors can request a readback

5    of the transcript to resolve the dispute.  You must

6    rely on the official transcript.  The notebooks will be

7    collected during the lunch breaks and at the end of

8    the day during the trial.  The notes will be stored in

9    a secure place for safekeeping and no one will read

10   them.

11           All right, you may proceed with your opening.

12           THE CLERK:  Judge.

13           (Whereupon, there was a brief pause in the

14   proceedings.)

15           THE COURT:  Before we proceed, raise your hand

16   if you want the notebooks, we will distribute them and

17   the pens and pencils.

18           (Whereupon, there was a brief pause in the

19   proceedings.)

20           THE COURT:  If you don't have a pencil or pen,

21   we will go get you one.

22           (Whereupon, there was a brief pause in the

23   proceedings.)

24           THE COURT:  Okay, you may proceed.

25           MS. CHU:  Thank you.

Opening - People/Ms. Chu

1              Good afternoon, ladies and gentlemen.

2              On January 3rd, 2012 the body of Anthony

3     Wilson was found dead inside of his apartment at 832

4     Bushwick Avenue.  Through the course of this trial

5     you're going to learn how the evidence will lead you to

6     come to the same conclusion, beyond a reasonable doubt,

7     that it was Atara Wisdom who was responsible for his

8     intentional murder.

9              Now, the way this all gets started is that

10    the police get called by Mr. Wilson's landlord, Donet

11    Robinson, and Mr. Robinson tries to -- he hadn't seen

12    the victim in a while, he gets the key that he has to

13    the apartment, he goes inside -- this is January 3rd.

14    When he enters, he finds Mr. Wilson on his bed, dead,

15    naked, there's a wreck in the house, the apartment is

16    ransacked, it's got blood smears on the floor, there's

17    clothing on the floor, there's feces on the floor.

18    So, he immediately calls 911 and the police arrive.

19             Now, you are going to learn that Police

20    Officers Marsden and Ortiz, they come from the 83rd

21    Precinct, they get called by the 911 operator to go to

22    the location to check it out.  When they get there,

23    they confirm that Mr. Wilson is definitely in need of

24    assistance, they call for an ambulance and an ambulance

25    confirms that he's dead and has been dead for sometime.

Opening - People/Ms. Chu

1          Now, the officers, Marsden and Ortiz, they
2     continue to secure the scene.  What this means, they
3     tried and preserve the apartment as close to how it was
4     when they initially got there, so they don't let anybody
5     go in and out.

6          Basically it's a studio apartment, there's a
7     bed in there, there's a TV, there's a kitchen area, then
8     there's a bathroom.  It's a very small apartment.  It's
9     about nineteen by fifteen, and that encompasses
10    everything.

11         So, what you will learn is that Detective
12    Markoski, along with his partner, are assigned from the
13    Crime Scene Unit.  When they first arrive, they'd seen
14    that everything has been secured by officers from the
15    83rd Precinct, they recover some of the clothing that
16    was on the floor inside the apartment next to where the
17    body was, they take photographs, they take measurements,
18    they actually take swabs of blood that's found
19    throughout the apartment and they arrange to have that
20    sent for testing.

21         Now, in the meantime, Mr. Wilson's body was
22    taken to the morgue.  He's pronounced by EMS people,
23    he's taken to the Medical Examiner's Office where Frede
24    Frederic, who used to be with the Medical Examiner's
25    Office, she's since retired, she actually conducted an

Opening - People/Ms. Chu

1   autopsy on Mr. Wilson's body.  What she finds is that he

2   has seven stab wounds to his body.  He's got six in the

3   front of him and one in the back, and the ones that

4   really did the most damage, because there is -- there

5   was one to the right chest that was maybe a half inch,

6   the one in the back went in about two inches but it

7   didn't puncture any of the major organs.  Mr. Wilson's

8   body, what you're going to learn, is that the five

9   wounds that were on the left side of Mr. Wilson's body

10  all went in about a depth of five to six inches.  What

11  it did was, all of those stab wounds, they perforated

12  one of the parts of his heart, they also perforated his

13  left lung, and that's what the cause of death was for

14  Mr. Wilson.

15      And they found various evidences that the body

16  had already started to decompose, had been there for

17  some time and that there was partial mummification of

18  parts of the body, and also there were like maggots and

19  stuff in the body, that shows how far along the

20  decomposition had taken place.

21      Now, from Detective Geoffrey Hernandez, he was

22  the assigned detective who was in charge of that

23  investigation, and he along with Detective Christopher

24  Scandole from Brooklyn North Homicide, began to

25  investigate to try to figure out what happened to Mr.

Opening - People/Ms. Chu

1    Wilson.  So one of the people that they spoke to was a

2    person by the name of Matthew Shepard.  And you are

3    going to learn that Matthew Shepard knew the victim but

4    he also knew the defendant, and he knew that she had

5    been staying with the victim.  When he got a phone call

6    from her around -- he didn't remember exactly the time,

7    it was a couple of weeks before, he wasn't really sure

8    of the time, but a couple of weeks before he actually --

9    I'm sorry -- they found the body of Mr. Wilson.  And he

10   said that sometime around Thanksgiving he had actually

11   met her and he had explained he was interested in her,

12   if she could get away from the guy, from Tony, who's the

13   victim, he was interested in dating her.  And what

14   happens is she calls him early in the morning and she

15   says, I'm in a -- I have a problem, I'm in a situation,

16   and she tells him, can I meet you.

17         And so he agrees to meet her and he meets her

18   in Bushwick.  When he meets her, she has four big bags

19   with her.

20         What are you, like a homeless lady, he goes?

21   What happened?  You with Anthony?

22         And she was like I was paying him rent and he

23   wanted to have sex with me and I wasn't having that so I

24   poked him.

25         What you'll learn, in street terms that means

Opening - People/Ms. Chu

1    she stabbed him.  And Mr. Shepard goes, well, you can't

2    stay with me but you can hang out in my house until you

3    get -- somebody gets you, and he said that is all he

4    talked about with her, he didn't want to have any

5    further conversations.  That was the last time that he

6    had seen her.

7            Now, Mr. Shepard had been spoken to around

8    the time that Mr. Wilson's body was recovered.  Now,

9    from Mr. Shepard they find out what Mr. Wilson's

10   cellphone number was.  They begin to get phone records

11   for that number.  What you'll learn, and you're actually

12   going to hear from a representative from Sprint Nextel

13   who will give you and show you, these are the records

14   that are kept there, it shows you all the call details.

15   What they learned from those call details is that on

16   November 29th, 2011, at approximately 12:37 A.M. Anthony

17   Wilson's number calls 911.  And you're going to actually

18   hear that 911 call that was made by Mr. Wilson.  What he

19   said was, I got this girl in my house, I don't know

20   what's wrong with her, she's acting crazy and I want her

21   out.

22           You are going to actually hear the final words

23   that were said by Mr. Wilson presumably before he is

24   murdered by the defendant.

25           In the meantime, the blood samples that had

Opening - People/Ms. Chu

1   been sent to the lab from -- remember, Detective

2   Markoski gets the swabs from throughout the apartment

3   and sends them to the lab and has them tested.  You are

4   going to learn from Sarah Philipps, who's a criminalist

5   at the Office of the Chief Medical Examiner, in their

6   DNA department, that she had tested those samples and

7   she found some of the samples belonged to Mr. Wilson but

8   two of the samples that came from the bathroom belonged

9   to a female unknown donor.  And what happened was

10  they're able to get take an unknown sample, they label

11  it, they term it female donor A.  They have an unknown

12  sample, they can't figure out who it is, they upload it

13  into the system and when they get that back it comes

14  back with a DNA hit to Atara Wisdom.

15          So, they begin to look for her, and in July

16  2012 -- this is now -- if the 911 call was November

17  29th, 2011, we are talking about more than six months

18  later, July of 2012, they locate Ms. Atara Wisdom at a

19  homeless shelter and they bring her back to the 83rd

20  Precinct for questioning.

21          Now, what you're going to learn is by now

22  Detective Geoffrey Hernandez, who was with the 83rd

23  Precinct, he's now with Brooklyn North Homicide, so his

24  case has gotten transferred to a new detective by the

25  name of Deborah Batanjani and they -- they bring the

Opening - People/Ms. Chu

1    defendant back to the precinct, they read her Miranda

2    rights.  After she agrees to speak with them, what she

3    told the detectives is that she had needed a place to

4    stay and had moved in.  Wisdom's doctor's office was

5    over on Broadway and he met over there, he would give

6    her money, and when he used crack, when he smoked, he

7    would become a different person.

8             She said one night when she was sleeping she

9    woke up, he was touching her under her shirt and she

10   told him it's not like that and that's not why she was

11   there.  She got into an argument and she had left.

12            She then tells the detectives, then around

13   Thanksgiving they got into another argument, it got very

14   heated and loud, so she left and went to her sister's

15   house for a couple of days.  She tells the detectives

16   she spoke with the victim on the phone a couple of times

17   and had gone back to the apartment to get clothes

18   because she had an interview set up for the following

19   day.

20            She said when she arrived he was acting okay,

21   like how he was when she first met him, and later that

22   night she was on the couch getting her clothes and he

23   tells her, oh, I am going to get some -- excuse the

24   word -- pussy tonight.

25            And she said, oh, well, then let me get out

Opening - People/Ms. Chu

1    the way.

2            She tries to get her stuff and get out.  What

3    he does, she says he stands in front of the exit of his

4    apartment and says, nah, nah, you're not going, and he

5    takes -- she says he takes something like a pink belt

6    and wrapped his hand.  He doesn't do anything with the

7    belt.  She then picks up a knife.  She says she puts it

8    under her sweater.  When he punches her in the face when

9    she stood up, he pulls the sweater up and starts

10   punching her on the shoulder and back, and over her

11   head, he started to push her head down to the floor.

12   She said she thought if it hits the floor, she's going

13   to be dead, so she takes out the knife and she stabbed

14   at him, then she ran into the bathroom, she saw she had

15   a big knot to her head, her shoulder was all bruised,

16   she got her stuff together and in a duffle bag and went

17   to Ebony's house.  That's the statement she initially

18   gives to the detectives.

19           After this she takes the statement -- the

20   detectives actually write what it is she said to them

21   and they read it to her, she then looks at it to make

22   sure it's accurate, then she signs it and the detective

23   signs.

24           You're actually going to see the written

25   statement that was written by the detective.

mc

Opening - People/Ms. Chu

1    The detective then arranges to have a lineup
2    with Atara Wisdom and contacts Mr. Shepard to come to
3    the precinct, and when Mr. Shepard views the lineup, he
4    identifies the defendant in position number two as the
5    person he knew as Renee.  Now, he didn't know --
6    actually, he said her name Renee.  He identifies Atara
7    Wisdom as the same woman who called him early in the
8    morning and met with him and told him she poked Anthony
9    because he wanted sex and rent.

10   Now, the defendant was then asked if she wants
11   to talk to the District Attorney's Office, which she
12   agrees to do.  You are going to hear A.D.A. Ed Purce
13   then responds to the precinct, he actually speaks to
14   her.  You are going to see on video the conversation
15   that was had between the defendant, Atara Wisdom, and
16   A.D.A. Ed Purce.  And in essence she says something
17   along the same lines that she told the detective, now
18   she is not mentioning Ebony, now there was a Tiffany
19   that she had stayed with, she told Tiffany what had
20   happened to her.

21   Now, she also tells the detectives that some
22   time after she stabbed him, when she came out of the
23   bathroom she saw him lying on the bed, she picked up his
24   phone, his keys and his wallet when she left because she
25   was using his phone and called someone but she was in a

mc

Opening - People/Ms. Chu

1     fog, she doesn't remember who it was she called.

2          She walked around for a while, she threw out

3     his keys, she kept his wallet but didn't use anything in

4     it and she had gone to Tiffany's house on Rutland and

5     East 93rd, stayed there for a couple of days and then

6     she kept using his phone but then threw it out, and she

7     said his benefits card, the Welfare benefits card, she

8     denied ever using it.

9          You are going to actually hear from the

10    Welfare, I guess it's Human Resources Administration

11    responsible for Welfare benefits cards, there actually

12    is activity on Mr. Wilson's benefit card after the

13    date of November 29th, 2011 and it shows consistent

14    areas with where the defendant used to use her benefits

15    card.

16         Now, that is what the case is all about,

17    ladies and gentlemen.  You are going to hear from

18    detectives and officers who responded and investigated

19    this case.  You are going to hear from the ME, or the ME

20    who's going to tell you what the injuries were to Mr.

21    Wilson and show what his cause of death was.  You're

22    going to hear from the crime scene detectives that

23    process the scene, see pictures of the actual apartment,

24    and after you hear all this evidence, I am going to come

25    back here before you and show you how the evidence

Opening - Defendant/Mr. Walensky

1    proves that the defendant, Atara Wisdom, intentionally

2    killed Anthony Wilson sometime between November 29th,

3    2011 and the day he was found, January 3rd, 2012, and

4    I'm going to ask you to return a verdict of guilty based

5    upon that evidence.

6              Thank you.

7              THE COURT:  Mr. Walensky.

8              MR. WALENSKY:  Thank you, your Honor.

9              Good afternoon, ladies and gentlemen.

10             The Grand Jury of the County of Kings by this

11   indictment accuses the defendant of the crime of murder

12   in the second degree committed as follows:  The

13   defendant, which would be Atara Wisdom, on or about

14   November 29th, 2011, in the County of Kings, with

15   intent to cause the death of Anthony Wilson, caused

16   the death of Anthony Wilson by means of stabbing him

17   thereby inflicting various wounds and injuries upon

18   Anthony Wilson and thereafter, and on or about November

19   29th, 2011, Anthony Wilson died of the wounds and

20   injuries.

21             Ms. Chu has just made a promise to you that

22   she will prove that charge.

23             I have to use a litany here, because as the

24   Judge told you, what we say here isn't evidence.  She

25   has recited what she plans to try to prove.

mc

Opening - Defendant/Mr. Walensky

1        I submit to you that the evidence will show

2   People have a theory here, they're trying to fit it to

3   the fact that Anthony Wilson is dead.

4        Now, Anthony Wilson was not a bad man.  I will

5   show that he had problems with drugs, alcohol, generally

6   pretty decent, but that when he got drunk or smoked

7   crack, and he smoked crack, that he would change, as

8   some people do, would become abusive, he would become

9   forward, he would become somewhat other than the Anthony

10  Wilson that was sober Anthony Wilson.

11       You will discover, at the time of his death

12  Mr. Wilson had an alcohol content of above .2 in his

13  system.  He was intoxicated almost three times over the

14  legal limit of intoxication.

15       The evidence will also show that he had

16  residue of cocaine, that is, the byproduct of cocaine in

17  his system at the time of his death.  The expert will

18  tell you that, in fact, when someone dies, your body

19  ceases metabolizing the substance.  At the time of his

20  actual death that's what he had, and I submit to you,

21  the evidence will show that he did not immediately die.

22  You are going to see crime scene photos and you will

23  have to make up your mind, and what I submit to you,

24  it's not going to really show you exactly what happened,

25  it's not going to show you when he died, so that when

Opening - Defendant/Mr. Walensky

1    this assault upon Ms. Wisdom happened, he was that much

2    drunker and that much more stoned.

3            Now, Ms. Wisdom -- the evidence will show that

4    Ms. Wisdom was not his girlfriend, she would stay there,

5    she paid him money, sometimes one hundred bucks here, a

6    hundred bucks there.

7            She had recently become, quote, unquote,

8    homeless, but that she had actually had lost another

9    place recently, and she would sleep on -- you're going

10   to hear a statement it was a couch, but it was more like

11   a recliner, almost a futon that folded down.

12           She was not having sex with Anthony Wilson.

13   The evidence will show that in fact he previously had

14   tried to have sex with her but he hadn't been

15   particularly forceful, it's like get away from me or,

16   come on, knock it off, Tony, because he was known as

17   Tony and people in the neighborhood who knew Atara as

18   Renee.  And he would knock it off.  But this night he

19   said, I'm going to get me some pussy and he was pretty

20   drunk and he was pretty stoned, and when she wanted to

21   leave -- you will see a diagram of the apartment, if you

22   can call it that, really a room without a window in it,

23   and the entrance -- the exit was blocked.  And when he

24   wrapped a belt around his hand and Atara got nervous and

25   took out a knife, not holding it in -- but the testimony

Opening - Defendant/Mr. Walensky

1  will show she had a sweater kind of like with big

2  pockets -- the name escapes me, eludes me at the present

3  time -- but she put it in the pocket of the sweater, not

4  holding it here, not hidden in the folds, and that when

5  she got up -- you're going to see a diagram, and as

6  she's walking toward her stuff, she had a duffle bag,

7  she had clothing because she was going to leave the next

8  morning for a job interview, he punched her in the head

9  and she started going down.  And I submit to you, when

10  she said if I went down I was dead, it wasn't literally

11  thinking he was going to murder her, she was dead

12  because if she went on the ground he'd be able to get on

13  top of her and rape her.  That is really what "I was

14  dead" means.  We have to look at things within the

15  context.

16           MS. CHU:  Objection, your Honor.

17           THE COURT:  Sustained.

18           MR. WALENSKY:  I submit to you, look at the

19  evidence, and what you're going to hear are

20  circumstances that can be looked at two or -- two or

21  three different versions of the fact.

22           Now, when this occurred, she fought Mr. Wilson

23  and you're going to see there aren't defensive wounds on

24  his hand as though she was coming at him with a knife

25  and swatting at him and there's something on his arms or

Opening - Defendant/Mr. Walensky

1   hands.  What you're going to see are straight-on wounds.

2   I submit to you, the reason for this is because he was

3   on top of her, she took her knife and she started to

4   just stab him.

5        Now, the Judge at the end of the trial will

6   tell you what is justified, and I submit that when you

7   hear the charge of justification, when the Judge gives

8   that to you, you will find that you will have to acquit

9   Atara Wisdom.

10       But getting back to what had happened, there

11  are no defensive wounds.  She is stabbing him, he let's

12  her go, she gets up, runs into the bathroom and locks

13  herself in.

14       The evidence will show she said that he was at

15  least partially clothed, had his pants on, but you will

16  see --

17       MS. CHU:  Objection.  That's not -- he is

18  making argument to the jury.

19       MR. WALENSKY:  The evidence will show that he

20  was partially clothed.

21       THE COURT:  It's okay.

22       MR. WALENSKY:  And that when the police come

23  in, his landlord comes in and the police come in and

24  secure the scene, he is on the bed naked.

25       The evidence will show there's blood and feces

mc

Opening - Defendant/Mr. Walensky

1    on the floor next to the bed.  You will see photos of

2    this.  There is blood in the bathroom in the sink,

3    there's some blood spatter.  The evidence will show

4    that -- and Ms. Wilson (phonetic) left the apartment

5    saying that he was on the bed when she left.

6          I submit to you, the evidence, the physical

7    evidence you are going to see will show that Anthony

8    Wilson wasn't dead when she left that apartment.  She

9    left, she scooped everything off the dresser, not just

10   his stuff, her stuff, just basically the telephones and,

11   you know, a wallet and her own stuff, just like scooping

12   something right off, everything left.  And she was very

13   upset.

14         The evidence will show that in fact Tony, Mr.

15   Wilson, didn't lay on that bed and die when she left.

16   You will see from the physical evidence that there is

17   blood all around and that he took his clothing off.  He

18   emptied himself, because at that point he was dying,

19   that's where the feces and the blood, I submit to you,

20   we will show, came on the floor, and he collapsed naked

21   on the bed.  He was trying to help himself and reach for

22   things and then he collapsed and died.

23         The evidence is also going to show that Atara

24   was very upset.  She called Matthew Shepard.

25         Now, he wasn't a close friend or a buddy.

Opening - Defendant/Mr. Walensky

1    You'll hear that they'd met perhaps twice before.   And

2    when she calls, Matthew Shepard will say when she called

3    she sounded upset, wanted to see him.   The evidence will

4    show that Matthew Shepard saw her and when she saw him

5    and met her in the early morning hours she told him what

6    happened, he tried to rape me, he tried to --

7              MS. CHU:   Objection.

8              MR. WALENSKY:   -- have sex with me.

9              MS. CHU:   Objection.

10             THE COURT:   Excuse me.

11             I'll overrule it.

12             MR. WALENSKY:   The evidence will show, right,

13   she said I am paying him rent, he tried to have sex with

14   me, I poked him, in the shorthand kind of thing.

15             I submit to you that she ultimately makes a

16   statement saying in terms of the shorthand, the man was

17   trying to rape her.

18             THE COURT:   Sustained.

19             MR. WALENSKY:   And --

20             THE COURT:   This is not the summation.

21             MR. WALENSKY:   I understand.

22             THE COURT:   This is the evidence.

23             MR. WALENSKY:   This is what the evidence will

24   show, your Honor.

25             THE COURT:   Show what?

mc

Opening - Defendant/Mr. Walensky

1      MR. WALENSKY:  It will show that she in fact

2  said that she -- that the decedent tried to rape her.

3  That's what she said to the police.

4      THE COURT:  Go ahead.

5      MR. WALENSKY:  But regarding Matthew Shepard,

6  she asked Matthew Shepard -- she told him what happened,

7  come back with me, she wanted to go back there because

8  she didn't know, but she didn't want to go back alone.

9  And he said, no, no, I'm not.  With that -- and Matthew

10  Shepard's basically going to tell you he was essentially

11  seeing if he can have sex with Atara right at that point

12  and he didn't want to go back, and he left and that was

13  pretty much it.

14      So that Atara went to this, the -- her

15  friend's, she was in a bad state, she was upset, she

16  went to a friend's house, left -- was there for a while,

17  left Mr. Wilson's wallet there.

18      You'll find there is one store in the area --

19  I mean, if the benefit card is used, it could be used by

20  her, by someone else, but the evidence -- it's not just

21  the evidence -- the indictment doesn't contain any sort

22  of charge for larceny, robbery, anything like that.

23  This is -- she is just charged with one count of

24  intentionally wanting to murder Tony Wilson.

25      The evidence will show that she did not intend

mc

Opening - Defendant/Mr. Walensky

1    to murder Anthony Wilson.

2              Ladies and gentlemen, you are going to have a

3    difficult task.  Look at the evidence, look at the

4    witnesses.  What the evidence will show is there are no

5    eyewitnesses to this.  The evidence will show that it is

6    circumstantial evidence and the evidence will also show

7    that it is circumstance by which several different

8    theories of what happened can be applied, and at the end

9    the evidence will show that you will not have an answer

10   as to what actually happened.  No amount of wishing and

11   hoping can make that.  So, I ask you to take this task

12   very seriously and at the end of this endeavor come back

13   with a not guilty verdict.

14              Thank you.

15              THE COURT:  Come on up, please.

16              (Whereupon, a sidebar conference was held off

17   the record.)

18              (Whereupon, subsequent trial testimony was

19   stenographically recorded and transcribed separately.)

20

21

22

23

24

25

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS:  CRIMINAL TERM:  PART 2
 2   -----------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,
 3                                           Indictment No.:
                  -against-                  6615/2012
 4                                           (Trial)
     ATARA WISDOM,
 5
                       Defendant.
 6   -----------------------------------------X

 7
                            Supreme Courthouse
 8                          320 Jay Street
                            Brooklyn, New York 11201
 9                          June 30, 2014

10
     B E F O R E:
11
                  THE HONORABLE ALBERT TOMEI, JUSTICE
12                (And a Jury)

13   A P P E A R A N C E S:

14           HON. KENNETH P. THOMPSON, ESQ.
                  District Attorney - Kings County
15                350 Jay Street
                  Brooklyn, New York  11201
16           BY:  PHYLLIS CHU, ESQ.
                  Assistant District Attorney
17

18           DAVID WALENSKY, ESQ.
                  Attorney for Defendant
19                910 Stuart Avenue
                  Mamaroneck, New York
20           BY:  DAVID WALENSKY, ESQ.
                       - and -
21                JOSHUA POVILL, ESQ.

22

23

24
                            MARLIN CASSIDY
25                          Senior Court Reporter
```

2

Det. Markoski - People - Direct/Ms. Chu

1          (Whereupon, the following took place in open

2     court:)

3          THE COURT:  All right, call your first witness

4     please.

5          MS. CHU:  The People call Detective Stephen

6     Markoski.

7          (Whereupon, there was a brief pause in the

8     proceedings.)

9          COURT OFFICER:  Witness entering.

10          (Whereupon, Detective Stephen Markoski entered

11     the courtroom and took the witness stand.)

12          THE CLERK:  Raise your right hand.

13          Do you solemnly swear or affirm the testimony

14     that you're about to give will be the truth, the whole

15     truth and nothing but the truth, so help you God?

16          THE WITNESS:  Yes, I do.

17          THE CLERK:  Can you state your name for the

18     record?

19          THE WITNESS:  Detective Stephen Markoski.

20          THE CLERK:  Spell your first and last name.

21          THE WITNESS:  S-T-E-P-H-E-N, M-A-R-K-O-S-K-I.

22          THE CLERK:  Give your shield number.

23          THE WITNESS:  66842.

24          THE CLERK:  And your command?

25          THE WITNESS:  Crime Scene Unit, New York City

mc

3

1       Police Department.

2                      THE CLERK:  Thank you.

3                      THE COURT:  You may have a seat.

4                      Pull your chair up to the microphone.  Place

5       your lips close to the microphone when responding to any

6       question.

7                      Proceed.

8                      MS. CHU:  Thank you.

9    S T E P H E N        M A R K O S K I, Detective, Shield No.

10                66842, Crime Scene Unit, New York City Police

11                Department, called as a witness by and on behalf of

12                the People of the State of New York, after having

13                been first duly sworn, was examined and testified

14                as follows:

15   DIRECT EXAMINATION

16   BY MS. CHU:

17       Q    Good afternoon, Detective.

18       A    Good afternoon.

19       Q    How long have you been with the New York City

20   Police Department?

21       A    Twenty-two years.

22       Q    You said you're currently assigned to the Crime

23   Scene Unit.  Can you tell me how long you have been with

24   them?

25       A    I have been with the Crime Scene Unit for six

mc

Det. Markoski - People - Direct/Ms. Chu

1    years.

2        Q    Can you tell us about your career with the N.Y.P.D.

3    starting from when you got out of the Academy?

4        A    After the Academy I was assigned to the 84th

5    Precinct in downtown Brooklyn for twelve years.  After that I

6    went to Brooklyn North Evidence Collection for four years and

7    the last six years with Crime Scene Unit.

8        Q    Did you receive special training to become a member

9    of the Evidence Collection Team as well as the Crime Scene

10   Unit?

11       A    Most of the training that I received was on-the-job

12   training, such as photography, fingerprints, DNA extraction,

13   sketching.

14       Q    Now, what does the Crime Scene Unit do?  What are

15   your duties and responsibilities as a member of that unit?

16       A    The Crime Scene Unit's responsibility is to assist

17   the precinct detective squads in gathering evidence to assist

18   them in their investigations.

19       Q    What type of crimes are you responsible to respond

20   to as a member of the Crime Scene Unit?

21       A    Any major crime in the City of New York, such as

22   homicides, police involved shootings, rapes, sexual crimes.

23       Q    Now I want to direct your attention to January 3rd,

24   2012.  Were you working as a crime scene detective on that

25   date?

mc

5

Det. Markoski - People - Direct/Ms. Chu

1     A   Yes, I was.

2     Q   Can you tell the members of the jury what your

3 hours were?

4     A   That day I believe I was working 7:00 in the

5 morning till 3:00 in the afternoon.

6     Q   Were you assigned to a partner?

7     A   Yes, I was.

8     Q   Who was that?

9     A   Detective Streichert.

10    Q   Now, on that date did you respond to 832 Bushwick

11 Avenue here in Brooklyn?

12    A   I did.

13    Q   Can you tell me approximately what time you

14 arrived?

15          THE WITNESS:  Do you mind if I look at my

16    notes, Judge?

17          THE COURT:  No, go ahead.

18    A   We arrived at 2:42 in the afternoon.

19    Q   Okay.

20          When you arrived, were there other police personnel

21 present?

22          THE COURT:  What date was this, January what?

23          MS. CHU:  January 3rd.

24          THE COURT:  What time did you arrive?

25          THE WITNESS:  2:42 P.M.

Det. Markoski - People - Direct/Ms. Chu

1   Q   Now, when were you notified about this case?

2   A   Two o'clock P.M.

3   Q   Okay.

4       And were police personnel present when you arrived?

5   A   Yes.

6   Q   And can you tell me, was a crime scene established?

7   A   It was.

8   Q   What does that mean, to have a crime scene

9   established?

10  A   Crime scene established means you place -- the

11  location where the crime occurred was roped off with crime

12  scene tape and there was patrol there safeguarding the crime

13  scene to prevent anybody from entering.

14  Q   Okay.

15      Can you tell me, once you arrived, what did you

16  do?

17  A   First thing I did was I conferred with the precinct

18  detective, Hernandez, from the 83rd Precinct, find out the

19  information that he knew at that time and conferred with him

20  as to what kind of evidence he had and what he wanted

21  processed.

22  Q   Okay.

23      Did you then do something called a walkthrough?

24  A   I did.

25  Q   What is that?

Det. Markoski - People - Direct/Ms. Chu

1    A    Basically, it's to walk through the scene with the

2 detective, have him pointing out things that he's found out

3 about the investigation up until that point, and like I said,

4 he will dictate to me what he wants processed as far as the

5 crime scene.

6    Q    Can you tell me, how did the scene appear when you

7 arrived?

8    A    The scene was in disarray.  It was a cold apartment

9 and it was bloody, and there was a deceased gentleman on a

10 bed.

11    Q    Can you tell me, what was the condition of the --

12 I'm sorry, withdrawn.

13         Did you take photographs of the scene?

14    A    I did.

15    Q    Did you also take measurements?

16    A    I did.

17    Q    What is the purpose for measurements?

18    A    The measurement is just to give an idea of how big

19 the crime scene was, the apartment.

20    Q    Did you do a sketch of the actual crime scene?

21    A    Yes, I did.

22    Q    For what purpose is that?

23    A    It's to give a layout, a general layout for court

24 purposes, to show what the crime scene looked like as far as

25 an overhead view.

Det. Markoski - People - Direct/Ms. Chu

1    Q    You said you also took photos of the scene.  Did

2  you take photos of the actual victim?

3    A    I did.

4    Q    Did you have occasion to examine the body of the

5  victim with the medical-legal investigator?

6    A    Yes, I did.

7    Q    What was the state of the body?

8    A    The body was in a state of advanced decomposition,

9  the skin was peeling off, there were maggots throughout most

10  of the body.

11    Q    Now, can you tell me, could you see any obvious

12  injuries on the victim's body when you were there?

13    A    I was with the medical examiner and he's trained in

14  that type of thing more than I am, I'm led by his lead, and

15  we saw some injuries, but because of the advanced state of

16  the decomposition he could not make any determination what

17  injuries were at that time.

18    Q    Okay.

19         Now, was there any sign of forced entry into the

20  apartment itself?

21    A    Not that I saw.

22    Q    What kind of apartment was this?

23    A    It was a ground floor apartment, extremely small.

24  Basically, I guess you would call it a studio.

25    Q    Okay.

mc

Det. Markoski - People - Direct/Ms. Chu

1      There was a place to sleep, a bathroom and a

2  kitchen?

3      A    That's about it, yeah.

4      Q    Okay.

5      Now, what type of evidence did you begin to collect

6  from the scene?

7      A    Well, when we first arrived, we weren't sure if a

8  crime had occurred.  The evidence that we took was just stuff

9  that would be sent to the Property Clerk for possibly future

10  recall.  So, it was basically some clothing, some soiled

11  clothing, and what appeared to be possible traces of blood at

12  various points of the apartment.

13      Q    Did you take what are known as DNA samples from the

14  areas where you saw blood in the apartment?

15      A    Yes.

16      Q    Can you tell me, did you -- I'm sorry, withdrawn.

17          MS. CHU:  At this time, your Honor, if I can

18      have this deemed marked People's Number 1 for

19      identification.

20              (Whereupon, the exhibit was shown to counsel.)

21              (Whereupon, the exhibit was shown to the

22      witness.)

23      Q    Detective Markoski, do you see what is being shown

24  to you as People's 1 for identification?

25      A    Yes, I do.

mc

Det. Markoski - People - Direct/Ms. Chu

1    Q    What do you recognize -- I'm sorry.

2         Do you recognize what is deemed marked People's 1

3    for identification?

4    A    Yes.

5    Q    What do you recognize that to be?

6    A    That is a sketch I prepared on January 3rd, 2012,

7    of the -- an overhead view of the crime scene at 832

8    Bushwick.

9    Q    Is this diagram to scale?

10   A    No, it's not.

11   Q    What does that mean, that it's not to scale?

12   A    It means that the -- obviously this picture right

13   here is not the identical size of the apartment, it's just to

14   give an illustration about what it looked like.

15   Q    Where things are in relation to others?

16   A    Exactly.

17   Q    Did you make any markings on this with regards to

18   the evidence that you recovered in this case?

19   A    Yes, I did.

20        MS. CHU:   Now, at this time I'd like to offer

21        into evidence as -- I'm sorry.

22   Q    Is this diagram a fair and accurate depiction of

23   the scene and the evidence that you recovered as you

24   processed it on January 3rd, 2012?

25   A    Yes, it is.

mc

Det. Markoski - People - Direct/Ms. Chu

1          MS. CHU:  At this time, your Honor, I would

2     offer it into evidence as People's 1.

3          THE COURT:  Any objection?

4          MR. WALENSKY:  No.

5          THE COURT:  In evidence.

6          (Whereupon, the diagram was marked as People's

7     Exhibit 1 in evidence.)

8     Q    Now, Detective, how many things did you recover

9     from this apartment?

10    A    I recovered eleven pieces of evidence.

11    Q    Okay.

12         Can you tell us what they were?

13    A    Yes.

14         THE WITNESS:  May I refer to my notes again,

15    Judge?

16         THE COURT:  Go ahead.

17         What are you referring to?

18         THE WITNESS:  Excuse me?

19         THE COURT:  What are you referring to?

20         THE WITNESS:  These are my scene photos that I

21    took on the day of the crime.

22         THE COURT:  Okay, go ahead.

23    A    Okay.  The first piece of evidence I recovered was

24    a black sock with possible bloodstains.

25         THE COURT:  A black sock?

mc

Det. Markoski - People - Direct/Ms. Chu

1          THE WITNESS:  Yes, sir.

2          THE COURT:  Okay.

3     A    The second piece of evidence was a pair of blue

4  jeans with a black belt.

5          THE COURT:  Go ahead.

6     A    Third piece was a brown long-sleeved shirt with

7  possible bloodstains.

8          THE COURT:  Brown long-sleeved shirt?

9          THE WITNESS:  Yeah.

10    A    The jeans also had possible bloodstains, I'm sorry.

11         Fourth piece was a white towel with possible

12  bloodstains.

13         THE COURT:  Go ahead.

14    A    Number five and six were prescription pill bottles.

15         THE COURT:  Prescription...

16         THE WITNESS:  From the drugstore, the pill

17  bottles, the brown ones.

18         THE COURT:  Oh, pill bottles.

19         THE WITNESS:  Yeah.

20    A    Number seven was a washcloth with possible

21  bloodstains.

22         And numbers eight through eleven were swabs of

23  possible blood.

24    Q    Where were those swabs taken from?

25    A    Number eight was taken from a nightstand on the

mc

Det. Markoski - People - Direct/Ms. Chu

1    west side of the bed.

2              Number nine was taken from a kitchen cabinet.

3              Number ten was taken inside the tub in the

4    bathroom.

5              And number eleven was taken from the eastern

6    bathroom wall.

7         Q    Now, did you indicate -- I'm sorry.

8              Did you label any of these items with any specific

9    label?

10        A    Yes, each item was labeled one through eleven, with

11   my initials in front of each number.

12        Q    So your initials are what?

13        A    S-M.

14        Q    Each of those pieces of items of evidence that you

15   just mentioned were SM1, SM2?

16        A    Through eleven, yes.

17        Q    Now, can you tell me, on the diagram that you

18   looked at, People's 1 in evidence, does it depict the areas

19   where you recovered each of those pieces of evidence, SM1

20   through 11?

21        A    Yes, it does.

22             MS. CHU:  At this time, your Honor, if I can

23        just have it posted.

24             THE COURT:  Post it.

25             (Whereupon, the exhibit was posted.)

mc

14

Det. Markoski - People - Direct/Ms. Chu

1      THE COURT:  Put it up higher.

2    Q    Detective, --

3          MS. CHU:  Your Honor, may the witness step

4    down?

5          THE COURT:  You may step down.

6    Q    Walk us through, Detective, if you may.

7          THE COURT:  Go to the area where the Officer

8    is, okay.  Proceed.

9          (Whereupon, the witness stepped down from the

10   witness stand and approached the exhibit.)

11   Q    Just walk us through this scene that you have the

12   diagram for.

13   A    Sure.  This is the front door (indicating), the

14   front entrance door, the only door in the whole apartment

15   entering and exiting.

16          This is where the body was (indicating).

17          THE COURT:  Just move back a little.

18          Go ahead.

19   Q    Go ahead.

20   A    This is where the victim's body was, it's on top of

21   the bed here (indicating).

22          This is the living area, right here (indicating),

23   basically this whole area, with the kitchen located right

24   here (indicating).  And then through this doorway here

25   (indicating) is the bathroom.

Det. Markoski - People - Direct/Ms. Chu

1          Over here is the legend which tells you SM Number 1

2   was the sock, each piece of evidence, number 2 right here

3   (indicating) is the blue jeans, number 3 is the brown shirt,

4   number 4, is the towel.  Number 4 is here (indicating).

5          Number 5 and 6 are under the bed, the pill bottles.

6          Number 7 is the washcloth, which we found right

7   here (indicating) in the bathroom sink.

8          And numbers 8 through 11 were swabs of possible

9   blood, which were -- let's see, number 8 is here (indicating)

10  on the end table, number 9 is the kitchen cabinet, number

11  10 is in the tub, and number 11 is on the wall of the

12  bathroom.

13      Q     Now, as a detective from Crime Scene would you be

14  able to determine when that blood got on these articles that

15  you took swabs from?

16      A     No.

17      Q     Now you can have seat.

18            (Whereupon, the witness resumed the witness

19      stand.)

20      Q     What did you do with the actual pieces of

21  evidence?

22      A     I packaged -- well, I initially photographed

23  them, I measured them, as to where they were recovered, I

24  then packaged them and then I hand delivered them to a

25  police officer from the 83rd Precinct, Police Officer

16

Det. Markoski - People - Direct/Ms. Chu

1  Ortiz -- I'm sorry, Police Officer Carlin -- for vouchering

2  purposes.

3             THE COURT:  Police officer who?

4             THE WITNESS:  Carlin.

5             MS. CHU:  Christian Carlin.

6             THE COURT:  Okay.

7  Q    Now, did you --

8        How did you package each of the items?

9  A    Each of the items of clothing, any type of clothing

10 has to be packaged in paper, and the swabs are packaged in, I

11 guess we can say it's like a tube, it's a secure tube that is

12 taped up so it can be sent for DNA testing.

13 Q    Is that like a plastic tube?

14 A    Plastic, yeah.

15 Q    Now, did you process the scene at all for latent

16 prints?

17 A    No.

18 Q    Now, I want to show --

19      You said you had taken photos of the scene?

20 A    Yes.

21           MS. CHU:  Your Honor, I have People's -- I'd

22      like these deemed People's 1 through 41.

23           THE CLERK:  Two.

24           MS. CHU:  Two through 41 for identification.

25           THE COURT:  Two to 41?

mc

Det. Markoski - People - Direct/Ms. Chu

1        MS. CHU:  Yes.

2        MR. WALENSKY:  I have no objection, your

3    Honor, to them being entered into evidence.

4        THE COURT:  All right.  You are offering them

5    into evidence?

6        MS. CHU:  Yes.

7        THE COURT:  They're in evidence.

8        (Whereupon, the photographs were marked as

9    People's Exhibits 2 through 41 in evidence.)

10       MR. WALENSKY:  Your Honor, if I can have --

11       THE COURT:  Bring down the screen.

12       (Whereupon, an exhibit was displayed.)

13   Q    Detective, can you just tell us, looking at

14   People's 2 in evidence, what is this a photograph of?

15   A    That's a photograph of the Crime Scene Unit

16   envelope, that is the cover sheet.

17   Q    Okay.

18        And did you prepare this?

19   A    I did.

20   Q    Is this your handwriting?

21   A    It is.

22   Q    Thank you.

23        (Whereupon, the exhibit was displayed.)

24   Q    People's 3 in evidence, what are we looking at

25   here?

Det. Markoski - People - Direct/Ms. Chu

1    A    That's the entrance door to the apartment.

2    Q    Okay.

3         Looking at People's 4 in evidence.

4           (Whereupon, the exhibit was displayed.)

5    Q    What is this?

6    A    It's the same apartment door, just a closer view

7 into the kitchen.

8    Q    Where would the kitchen be, if you were looking at

9 this photograph?

10    A    Straight ahead.

11    Q    Straight ahead?

12    A    Uh-huh.

13    Q    Take a look at People's 5 in evidence.

14          (Whereupon, the exhibit was displayed.)

15    A    That's from the doorway towards the kitchen.

16    Q    Can you tell me, I see there's some things on the

17 floor.  What was that?

18    A    It appeared to be blood and it appeared to be human

19 feces on the floor, also looked like someone tried to wipe it

20 with some sort of piece of cloth of some sort.

21    Q    People's Number 6.

22          (Whereupon, the exhibit was displayed.)

23    Q    What is this a picture of?

24    A    That's from the kitchen into the living area.  I'm

25 sorry.  That is from the living area into the kitchen.  I'm

mc

19

Det. Markoski - People - Direct/Ms. Chu

1    sorry.

2         Q    So where would the front door be in this

3    photograph?

4         A    To the right of the photo.

5         Q    So this door right here (indicating) is the front

6    door?

7         A    Yes, it is.

8         Q    Taking a look at People's 7 in evidence.

9                   (Whereupon, the exhibit was displayed.)

10        Q    What is this a picture of?

11        A    That's just an opposite view of the previous photo.

12   It shows the victim laying on the bed.

13        Q    Do you see the entrance door to this apartment in

14   the photograph?

15        A    I think you can see a little bit of it on the

16   bottom left.

17        Q    This is it here (indicating)?

18        A    Yes.

19        Q    If you could, which way would you turn to get this

20   view if you're --

21        A    If you walk into the apartment, you'd have to look

22   to your left.

23                  THE COURT:  He's facedown or face up in that

24        picture?

25                  THE WITNESS:  I believe he's face up.

                                                              mc

Det. Markoski - People - Direct/Ms. Chu

1    Q    Okay.

2         That was People's 7, right.

3         Taking a look at People's 8 in evidence.

4              (Whereupon, the exhibit was displayed.)

5    Q    What is this a picture of?

6    A    That's the floor of the living area between the

7    kitchen and the living area, I should say, and on the left

8    side is the blue jeans that I vouchered.

9    Q    Okay.

10        You had mentioned there was feces that was smeared

11   on the floor.  Do you see that in this picture?

12   A    Yes, it's more toward the end of the photo.

13   Q    Right next to this shirt here (indicating)?

14   A    Yes.

15   Q    Or this article of clothing?

16   A    Yes.

17   Q    Now, would the kitchen be --

18        Do you see the cabinets of the kitchen in that

19   photograph?

20   A    I believe they are to the top, top right.

21   Q    So this right here (indicating)?

22   A    Yes.

23   Q    That would be where the kitchen cabinets are?

24   A    Yes.

25   Q    Thank you.

Det. Markoski - People - Direct/Ms. Chu

1          Taking a look at People's 9 in evidence.

2                    (Whereupon, the exhibit was displayed.)

3     Q     What is this a picture of?

4     A     That is a photo of the victim laying on the bed in

5  a northbound photo.  The kitchen would be on the left-hand

6  side and the front door on the left top portion.

7                    THE COURT:  He is facedown, isn't he?

8                    THE WITNESS:  I believe that's face up.  He

9     was badly decomposed.

10    Q     Okay.

11         Taking a look at People's 10 in evidence.

12                   (Whereupon, the exhibit was displayed.)

13    A     That's another view of the victim from the left

14 side of the bed.  That's kind of from the doorway area

15 towards the victim.

16    Q     Okay.

17         At this point, had you touched the victim at all?

18    A     Not yet, no.

19    Q     Taking a look at People's 11 in evidence, can you

20 tell me, what is this a picture of?

21    A     It's a close-up photo of his chest.  The right-hand

22 portion of the picture would be his neck.

23    Q     You were unable to make a determination based upon

24 the decomposition as to whether or not he had any injuries or

25 fresh injuries?

mc

Det. Markoski - People - Direct/Ms. Chu

1    A    It's usually the medical examiner's call but we

2  didn't make a determination at that time, no.

3    Q    Okay.

4         Taking a look at People's 12 in evidence.

5              (Whereupon, the exhibit was displayed.)

6    A    That is a photo of the bathroom from the living

7  area.

8    Q    Okay.

9         Where would the bed be if I were standing here

10 taking this picture?

11   A    It would be to your right.

12   Q    To the right of me?

13   A    Yes.

14   Q    Taking a look at People's 13 in evidence.

15             (Whereupon, the exhibit was displayed.)

16   A    Just an opposite view of the previous photograph.

17 It's the bathroom looking out into the living area.

18   Q    And this item right here, can you see

19 (indicating)?

20   A    No, not really.

21             MS. CHU:  That doesn't make it any better,

22    okay.

23   Q    Taking a look at People's 14 in evidence, what is

24 this a picture of?

25   A    That's the bathroom floor.

Det. Markoski - People - Direct/Ms. Chu

1      Q      And this area to the right top of the photograph,
2    what is that (indicating)?

3      A      That would be the tub.

4      Q      The tub?

5      A      Yeah.

6      Q      Where would the toilet be in relation to the tub?

7      A      Same side as the tub, just a little bit down in the
8    photograph.

9      Q      So off the picture?

10     A      Right.

11     Q      So on like the -- right on the bottom left?

12     A      Correct.

13     Q      Taking a look at People's 15 in evidence, what is
14   this a picture of?

15            (Whereupon, the exhibit was displayed.)

16     A      That's a photo of the sink with the washcloth in
17   the basin.

18     Q      Okay.

19            Taking a look at People's 16 in evidence.

20            (Whereupon, the exhibit was displayed.)

21     A      That's a view of the bathroom wall with the
22   possible bloodstains.

23     Q      If you can just -- there's --

24            There should be a remote control right in front.

25   If you push the red button, you will see it's a laser

mc

Det. Markoski - People - Direct/Ms. Chu

1    pointer.

2         A    Right here (indicating).

3                   THE COURT:   Possible what stains?

4                   THE WITNESS:   Blood.

5         Q    So they were on the wall?   There are speckles on

6    the tile?

7         A    Yes.

8         Q    Okay.

9              Taking a look at People's 17 in evidence.

10             (Whereupon, the exhibit was displayed.)

11        A    That's also some possible bloodstains that were

12   located on the bathroom wall.

13        Q    Where --

14             Which wall would this be closest to in the

15   bathroom?

16        A    That would be the wall closest to the toilet.

17   That's the toilet on the bottom of the photo.   It would be

18   the right-hand side of the toilet.   If you were sitting on

19   the toilet, it would be the right-hand side right wall.

20        Q    So if you're sitting on the toilet, this bloodstain

21   (indicating) would be on your right-hand side?

22        A    Correct.

23        Q    Okay.

24             Taking a look at People's 18.

25             (Whereupon, the exhibit was displayed.)

Det. Markoski - People - Direct/Ms. Chu

1   A    That would be possible bloodstains on the wall from

2   the bathroom near the doorway.

3   Q    So that would be on the left side of the toilet, if

4   you're sitting down?

5   A    That -- yes, I believe so.

6   Q    So that's -- I'm sorry.

7        This right here (indicating) on the photograph, is

8   that the tub?

9   A    Yes, it is.  It's hard to see.

10       That is the tub and that is the left side of the

11  toilet wall, yes.

12  Q    Taking a look at People's 18 in evidence.

13            (Whereupon, the exhibit was displayed.)

14            THE COURT:  I thought you did 18.

15            MR. WALENSKY:  That was 18.  This is 19.

16            MS. CHU:  Nineteen, I'm sorry.

17  Q    What is this a picture of?

18  A    That's a photograph of the end table to, I guess

19  you'd say, the left side of the bed.  If you were looking

20  from the bottom of the bed, that would be to the left

21  side.

22            THE COURT:  What are those stains?

23            THE WITNESS:  We took a swab thinking it might

24      possibly be some bloodstains.  It also appears it's like

25      fecal matter as well.

mc

Det. Markoski - People - Direct/Ms. Chu

1      Q    This is where you had taken one of the samples from

2  blood that you had mentioned earlier?

3      A    Yes.

4      Q    Taking a look at People's 20 in evidence.

5                (Whereupon, the exhibit was displayed.)

6      A    Those markers indicate the pieces of evidence which

7  were recovered, if you're looking at the bed from the bottom,

8  the left side, and the same evidence which I previously

9  mentioned on the sketch.

10     Q    Who put those markers there?

11     A    I did.

12     Q    Did those correspond with the items of evidence

13  that you had recovered and processed?

14     A    Yes, they do.

15     Q    Can you walk us through?  It's 1 through 6, right?

16     A    Yes.

17              THE WITNESS:  Judge, I am going to refer to my

18       notes again.

19              THE COURT:  Go ahead.

20     A    Number 1 is the sock.

21          Number 2 is the blue jeans.

22              THE COURT:  Hold on.

23     A    Sorry.

24              THE COURT:  Go ahead.

25     A    Number 3 is the shirt.

mc

Det. Markoski - People - Direct/Ms. Chu

1                THE COURT:  Brown shirt?

2                THE WITNESS:  Yes.

3     A     Number 4 is the white towel.

4           Numbers 5 and 6 are the pill bottles.

5     Q     Okay.

6           Looking at People's 21 in evidence, what is this?

7                (Whereupon, the exhibit was displayed.)

8     A     Number 5 and 6 are depicting the pill bottles which

9  are located underneath the bed.

10    Q     And these smears that are on the floor, is that the

11 fecal matter and blood that you had referred to earlier?

12    A     It appeared to be a mixture, yes.

13    Q     Taking a look at People's 22.

14               (Whereupon, the exhibit was displayed.)

15    Q     What is this?

16    A     It's a close-up view of number 1, which was the

17 sock.

18    Q     Okay.

19          Taking a look at People's Number 23.

20               (Whereupon, the exhibit was displayed.)

21    A     That is a close-up -- excuse me -- close-up view of

22 the jeans.

23    Q     Now, were you able to determine what size the jeans

24 were?

25    A     I think so.

Det. Markoski - People - Direct/Ms. Chu

1          They were size 36, 32.  Thirty-six waist, 32

2     length.

3          Q     Taking a look at People's 24.

4                (Whereupon, the exhibit was displayed.)

5          A     It is a close-up view of the brown shirt.

6          Q     And that was what you had labeled SM3?

7          A     Yes.

8          Q     Taking a look at People's 25.

9                (Whereupon, the exhibit was displayed.)

10         A     That's a close-up view of number 4, which is the

11    towel, SM4.

12         Q     Okay.

13               Taking a look at People's 26.

14               (Whereupon, the exhibit was displayed.)

15         A     That's a close-up view of the washcloth in the

16    basin, which was SM7.

17         Q     Taking a look at People's Number 27.

18               (Whereupon, the exhibit was displayed.)

19         A     That's the same photo as the previous photograph

20    with a crime scene scale.

21         Q     What do you mean, a crime scene scale?

22         A     It's six inches long and gives a general idea how

23    long a piece of evidence was.

24         Q     So you can get perspective?

25         A     Yes.

Det. Markoski - People - Direct/Ms. Chu

1    Q    People's 28 in evidence.

2              (Whereupon, the exhibit was displayed.)

3    A    That's the two pill bottles that were recovered

4  from under the bed, close-up view, with the scales.

5    Q    Okay.

6         People's 29.

7              (Whereupon, the exhibit was displayed.)

8    A    That's number 5, close-up view of SM5 with a

9  scale.

10   Q    Okay.

11        Number 6 -- I'm sorry.

12        Number 30, I'm sorry.

13             (Whereupon, the exhibit was displayed.)

14   A    Close-up view of number 6 with a scale.

15   Q    Taking a look at People's 31.

16   A    That's the end table next to the bed where I

17  recovered the swab.  The scale indicates the area where I

18  took the swab from.

19   Q    This blue marker right here (indicating)?

20   A    Yes.

21   Q    Okay.

22        People's 32.

23             (Whereupon, the exhibit was displayed.)

24   A    That's just a close-up view of the previous

25  photograph.

Det. Markoski - People - Direct/Ms. Chu

1    Q    Okay.

2         People's 33 in evidence, what is this?

3              (Whereupon, the exhibit was displayed.)

4    A    That is a view of the kitchen cabinets with the

5    possible bloodstains on them.

6    Q    This would be in the kitchen area of the

7    apartment?

8    A    Yes.

9    Q    Okay.

10        Now, can you tell me, what is People's 34?

11             (Whereupon, the exhibit was displayed.)

12   A    That's the same photo as the previous photo.  The

13   scale is depicting the area where I recovered the blood swab,

14   the possible blood swab.

15   Q    Okay.

16        People's 35.

17             (Whereupon, the exhibit was displayed.)

18   A    Just a closer view of the previous photograph,

19   SM9.

20   Q    Do you know what this is on the left-hand side

21   (indicating)?

22   A    At first we didn't but then I think we thought it

23   might be just someone had thrown food around the apartment.

24   It appeared to be some sort of tomato sauce or something like

25   that.

mc

31

Det. Markoski - People - Direct/Ms. Chu

1    Q    Okay.  That was 35.  Now we are on to 36.

2              (Whereupon, the exhibit was displayed.)

3    A    That's the bathroom wall with the possible

4 bloodstains.

5    Q    Exhibit 37.

6              (Whereupon, the exhibit was displayed.)

7    A    That's also a bathroom wall with the possible

8 bloodstains.

9    Q    People's 38.

10              (Whereupon, the exhibit was displayed.)

11    A    That's the bathroom wall with the possible

12 bloodstains.  The scale is depicting the area where the swab

13 was recovered.

14    Q    So that's the actual sample that you took it from?

15    A    Yes.

16              (Whereupon, the exhibit was displayed.)

17    Q    Taking a look at People's 39.

18    A    That's a view of the tub.

19    Q    Okay.

20         Taking a look at 40.

21              (Whereupon, the exhibit was displayed.)

22    A    That's a view of the tub with the scale indicating

23 the area where the swab was recovered.

24    Q    Okay.

25         And People's 41.

mc

Det. Markoski - People - Direct/Ms. Chu

1          (Whereupon, the exhibit was displayed.)

2     A    Close-up view of the previous photograph, SM Number

3  10.

4     Q    Okay.

5          Thank you very much, Detective.

6          MS. CHU:  If I can have one moment, your

7     Honor.

8          (Whereupon, there was a brief pause in the

9     proceedings.)

10    Q    How long were you at the scene?

11    A    I was at the scene for about five-and-a-half hours.

12    Q    And you said that the apartment was cold when you

13 got there.  What did you mean by that?

14    A    Well, it was -- it was January and it didn't appear

15 that there was any heat in the apartment and I think the

16 temperature that we took when we were there was 28 degrees.

17 The medical examiner took that temperature while we were

18 examining the body.

19    Q    The room temperature was 28 degrees?

20    A    Yes.

21         MS. CHU:  Thank you very much.

22         I have nothing further.

23         THE COURT:  Cross.

24 CROSS-EXAMINATION

25 BY MR. WALENSKY:

mc

Det. Markoski - People - Cross/Mr. Walensky

1    Q    Detective, did anybody move the body while you were

2  there to take photos?

3    A    Yes.

4    Q    Did you move it or did another officer?

5    A    My partner and the medical examiner moved it while

6  I took the photographs.

7    Q    And the body actually was not north -- not north to

8  south on the bed, wasn't it on an angle or sideways?

9    A    No, the body was in a north to south direction as

10  you can see on the sketch here.

11    Q    Is that how the body was when you came in?  That's

12  what I mean.

13    A    Yes.

14    Q    Prior to moving?

15    A    Yes.

16    Q    You weren't a witness to this crime, were you?

17    A    No, sir.

18    Q    Did you take a swab of the blood spattering on the

19  doorway of the bathroom?  There was some on the wall and then

20  some on the doorframe.

21    A    The only swabs I took are the ones I testified to.

22         MR. WALENSKY:  Where are the pictures?  Can I

23    have the photos?  Can I have 18, 16, 17 and 18?

24         (Whereupon, the exhibits were handed to

25    counsel.)

mc

Det. Markoski - People - Cross/Mr. Walensky

1      THE COURT:  Lights.

2           (Whereupon, the exhibit was displayed.)

3      Q    Did you take a swab from this area (indicating),

4  either the doorframe --

5           THE COURT:  It's not a doorframe.  It's -- I

6      don't know if -- what is your view of this?

7           THE WITNESS:  To be honest with you, I am kind

8      of having trouble recognizing that photograph.

9      Q    I'd like you to take a look at the photograph

10 directly, then.  I think it actually shows it better.

11          MS. CHU:  What number was that?

12          MR. WALENSKY:  This is, I believe, photo 18.

13          (Whereupon, the exhibit was handed to the

14     witness.)

15          MS. CHU:  I have the photograph number written

16     small along the edge.

17          THE WITNESS:  Okay.

18     Q    That is from the inside of the bathroom?

19     A    Yes.

20          Okay, that picture is depicting the possible

21 bloodstains, they are to the left side of the wall -- I'm

22 sorry -- left side of the toilet along the wall.

23     Q    That is the one you took bloodstains from, you took

24 swabs?

25     A    I took actually from the opposite side.

35

Det. Markoski - People - Cross/Mr. Walensky

1    Q    You didn't take any swab from --

2    A    From the left side of the toilet?

3    Q    Yeah.

4    A    No, I took it from the right side of the toilet.

5    Q    Can you show that photo to the jury over there?

6              THE COURT:  Is that the right side?

7              THE WITNESS:  There was bloodstains on both

8    sides of the toilet.

9              THE COURT:  Is this photo of the right side of

10   the toilet?

11             THE WITNESS:  No, sir, that's the left.

12             THE COURT:  Possible bloodstains from the left

13   side of the toilet?

14             THE WITNESS:  Yes, sir.

15             THE COURT:  Wall, right?

16             THE WITNESS:  Yes.

17   Q    Is the bathtub in here?

18   A    Yes.

19   Q    And the toilet is here (indicating)?

20             (Whereupon, the exhibit was displayed.)

21   A    That is a bucket.

22   Q    You can't see it?

23   A    Yes.

24   Q    There were no --

25        There is no swab there?

mc

Det. Markoski - People - Cross/Mr. Walensky

1          No swabs were taken from these stains here

2     (indicating), where my thumb is?

3          A     No, I took it from the other side of the toilet.

4                THE COURT:  I don't understand.

5                Those little specks there?

6                THE WITNESS:  Yes.

7                THE COURT:  Are those possible bloodstains?

8                THE WITNESS:  Possible, yes.

9                THE COURT:  You took the photo of this?  You

10    took the photo of them?

11               THE WITNESS:  Yes.

12               THE COURT:  Were any possible bloodstains on

13    the wooden frame?

14               THE WITNESS:  On the wooden frame,

15    possibility, yes.

16               THE COURT:  Did you swab it?

17               THE WITNESS:  No, sir.  I swabbed the other

18    side of the toilet.

19               THE COURT:  Okay.

20               (Whereupon, the exhibit was displayed.)

21         Q     I'm pointing down here (indicating).  This is the

22    other side of the toilet, right, the right side?  You took

23    your swab from that side (indicating)?

24         A     Yes.

25         Q     You didn't take it from what would be this side

mc

37

Det. Markoski - People - Cross/Mr. Walensky

1   (indicating).  I just want to get it clear.

2           All right, thank you.

3           And after you --

4           When was the last time prior to coming in today,

5   last time you reviewed this file?

6       A   I had a preparation with the District Attorney a

7   couple of months ago.

8       Q   So you came in today and looked at your notes and

9   testified, right?

10      A   Yes, sir.

11      Q   And, really, your job is really collecting evidence

12  and photographing or trying to preserve a scene?

13      A   Correct.

14          MR. WALENSKY:  Thank you.

15          I have no further questions.

16          THE COURT:  You may step down.  Thank you very

17      much.

18          THE WITNESS:  Thank you.

19          (Whereupon, Detective Markoski stepped down

20      from the witness stand and exited the courtroom.)

21          THE COURT:  Come on up.

22          (Whereupon, a sidebar conference was held off

23      the record.)

24          THE COURT:  Ladies and gentlemen, at this time

25      we are going to adjourn for the evening.

38

Proceeding

1      Do not discuss the case amongst yourselves or
2  with anyone else.  Do not visit the place where the
3  alleged crimes occurred.  Have no contact with any of
4  the parties involved in this matter, including the
5  Court.
6      Again, do not resort to utilizing any digital
7  or electronic device for the purpose of obtaining any
8  information or contacting anyone about this case.  That
9  proscription against the use of your digital, electronic
10 devices is based on the fact that the courtroom is the
11 place to determine the truth of what occurred, in other
12 words, and you do that or that's done in this setting
13 because the attorneys have the opportunity to examine
14 and question the witnesses.  If you go outside of the
15 courtroom to seek information about this matter, you
16 will not have that examination, you will not have that
17 ability to hear anything about the retrieval of that
18 evidence or the value of that evidence, et cetera.
19     This is the testing ground, the courtroom,
20 nowhere else, so that's why you're told not to use any
21 outside sources.
22     All right.
23     So, we are going to adjourn till tomorrow ten
24 o'clock.  And again, have a very good evening.  See you
25 tomorrow at 10:00.

39

Proceeding

1          SERGEANT:  Ladies and gentlemen, just leave

2     your booklets on the seat and the pens.

3          THE COURT:  You have to be here at ten

4     o'clock.

5          What is the problem you have?  You had your

6     hand up?

7          JUROR:  How long do I advise my job I will be

8     away from work?

9          THE COURT:  I just said that we are not going

10    to be meeting on Thursday and Friday and we'll be back

11    on Tuesday of next week, okay.

12         SERGEANT:  Just put your juror number on the

13    booklet.

14         (Whereupon, the Jury exited the courtroom.)

15         THE COURT:  Mr. Walensky, what do you have?

16         MR. WALENSKY:  Yes, your Honor.

17         In my opening I made reference of the fact

18    that Ms. Wisdom wasn't charged with any larcenies, any

19    robberies.  The Court -- it appeared the People had not

20    made a Molineux application.

21         THE COURT:  That's true.

22         MR. WALENSKY:  And the Court had indicated

23    that, sua sponte, they were going to give --

24         THE COURT:  I am -- not sua sponte.  The truth

25    of the matter is, you know, I'm not sure I should give a

mc

Proceeding

1      Molineux.

2              MR. WALENSKY:  That was my --

3              THE COURT:  A Molineux ruling.

4              MR. WALENSKY:  I think it would be error

5      because it's not for the Court to try the People's case,

6      of course, and --

7              THE COURT:  I am not trying the People's case.

8      All I'm saying is that it wasn't made, the Molineux

9      application wasn't made, and I don't believe the

10     reference to -- well, there's some question now as to

11     the reference to the wallet being taken and benefits,

12     Welfare benefits being utilized by the defendant; isn't

13     that true?

14             MS. CHU:  No, there is no allegation as to

15     that.  What happens, she in her own statement says, I

16     take his Welfare card.  She admits that in her statement

17     to the police officers, that she took the card but she

18     denies using it.  So what I was planning on doing was

19     submitting the EBT records for Mr. Wilson's card to show

20     that after the date of November 29th, 2011 her phone

21     use, her phone numbers and EBT where she frequented was

22     being used.

23             THE COURT:  Frequented?  She goes to Welfare?

24             MS. CHU:  To different places to use her EBT

25     card than the victim would go.  So the victim --

41

Proceeding

1        THE COURT:  But the EBT card was used post?

2        MS. CHU:  I am not making an allegation that

3    she was the one that did it.  After he died, that EBT

4    card was not used at his usual locations, it was now

5    being used in areas where she used to frequent.

6        MR. WALENSKY:  It's prejudicial.  It's the

7    only stores in the neighborhood.  She said she went to

8    the woman's house and left the wallet and the woman very

9    well --

10        THE COURT:  Then what I would suggest is that

11    if you want me to give a curative charge to the jury, I

12    will, regarding those items.

13        If you will have one tomorrow, I'll look at it

14    and I will indicate to the jury she's not being charged

15    with any crime other than this crime and they are not to

16    take into consideration that, the testimony regarding

17    those items, all right, have no bearing on her guilt or

18    innocence.

19        All right, tomorrow.

20        (Whereupon, the trial was adjourned to July 1,

21    2014.)
        **********************************

22    CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF
      THE ORIGINAL STENOGRAPHIC MINUTES TAKEN OF THIS

23    PROCEEDING.

24

25    MARLIN CASSIDY
      Senior Court Reporter

mc